1  James R. Touchstone, SBN 184584
       jrt@jones-mayer.com
2  Denise L. Rocawich, SBN 232792
       dlr@jones-mayer.com
3  Scott Wm. Davenport, SBN 159432
       swd@jones-mayer.com
4  JONES MAYER
   3777 North Harbor Boulevard
5  Fullerton, CA 92835
   Telephone:  (714) 446-1400
6  Facsimile:  (714) 446-1448

7  Attorneys for Defendants,
   CITY OF REDLANDS and OFFICER KOAHOU

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  JUSTIN CODY HARPER,            | Case No.:  5:23-CV-00695-SSS (KK)

13              Plaintiff,         | *Judge:*  Hon. Sunshine S. Sykes

14       v.                        | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES**
15  CITY OF REDLANDS, REDLANDS     |
    POLICE DEPARTMENT, POLICE      |
16  OFFICER KOAHOU, and DOES 1     |
    through 10, inclusive,         |
17                                 |
              Defendants.          | **[Reserved]**
18                                 |
19                                 | Date:    February 28, 2025
                                   | Time:    2:00 p.m.
20                                 | Ctrm:    2

21  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22       PLEASE TAKE NOTICE that on February 7, 2025, at 2:00 p.m., in

23  Courtroom 2 of the above-entitled court, located at 3470 Twelfth Street, Riverside,

24  California 92501, or as soon thereafter as the matter may be heard, Defendants

25  CITY OF REDLANDS[1] and OFFICER KOAHOU will and hereby do move for

26

27  _____
    [1] Plaintiff also erroneously sued the "Redlands Police Department" as a named
    defendant; however, under California law, a police department is not a separate
28  legal entity but rather a department of the City not amenable to suit.  See *Alcala v.
    City of Corcoran*, 147 Cal. App. 4th 666, 669-670 (2007).

                                   -1-

summary judgment and/or partial summary judgment on Plaintiff JUSTIN
HARPER's complaint as follows:

1.    Plaintiff has failed to carry his burden of demonstrating that he is
entitled to relief on his first cause of action for excessive force;

2.    Plaintiff has failed to carry his burden of demonstrating that he is
entitled to relief on his second cause of action for battery;

3.    Plaintiff has failed to carry his burden of demonstrating that he is
entitled to relief on his third cause of action for negligence;

4.    Plaintiff has failed to carry his burden of demonstrating that he is
entitled to relief on his fourth cause of action for negligent infliction
of emotional distress; and

5.    Plaintiff has failed to carry his burden of demonstrating that he is
entitled to relief on his fifth cause of action for Violation of California
*Civil Code* § 52.1 [Bane Act].

The Motion is based on this Notice of Motion and Motion and attached
Memorandum of Points and Authorities, the Declarations and Exhibits filed
Concurrently Herewith, the [Proposed] Statement of Uncontroverted Facts and
Conclusions of Law filed concurrently herewith, the file and records in this case,
and any further argument or evidence the Court deems fit to receive at the hearing.

Prior to bringing this motion, Defendants attempted to meet and confer
regarding the issues presented herein as required by Local Rule 7-3.  Pursuant to
this Court's Standing Order, the details of this meet and confer conference are as
follows:

1.    Names of Attorneys Present:  Renee Valentine Masongsong, James
Terrell and Sharon Brunner for Plaintiff and Scott Wm. Davenport for
Defendants;

2.    Date Conference Held:  December 12, 2024, at 2:00 p.m.;

3.    Conference Length:  30 minutes [2:00 p.m. to 2:30 p.m.];

4.    Manner in Which Conference Held:  Via Zoom;

5.    Issues Discussed: (a) Sufficiency of Plaintiff's Excessive Force Claim; (b) Qualified Immunity; (c) Sufficiency of Administrative Tort Claim; (d) California Statutory Immunities [GC 821.6, 820.2, 815.2, etc.]; (e) Sufficiency of Plaintiff's Battery Claim; (f) Sufficiency of Plaintiff's Negligence Claim; (g) Sufficiency of Plaintiff's Negligent Infliction of Emotional Distress Claim; (h) Sufficiency of Plaintiff's Claim for Violation of the Bane Act; and (i) Potential *Heck v. Humphrey* Bar.

6.    What Issues Were Resolved:  Plaintiffs agreed not to go forward on an independent cause of action for Negligent Infliction of Emotional Distress (*Catsouras v. CHP,* 17 Cap.App.5th 766 (2017); Defendants agreed not to seek summary judgment based on either the insufficiency of the Administrative Tort Claim or based on *Heck v. Humphrey* [unless supplemental analysis reveals that plaintiff was convicted of delaying, resisting arrest, or battery on a police officer]. The parties further agreed to work together on a revised briefing schedule so as not to impact Holiday or vacation plans by both counsel.

See also Declaration of Scott Wm. Davenport at ¶ 10-11 and *Exhibit* "J" attached hereto.

Dated: December 19, 2024              JONES MAYER


                                      */s/ Scott Wm. Davenport*

By: _____
     JAMES R. TOUCHSTONE
     DENISE L. ROCAWICH
     SCOTT WM. DAVENPORT

Attorneys for Defendants,
CITY OF CITY OF REDLANDS and
OFFICER KOAHOU

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

TABLE OF CONTENTS ................................................................................4

TABLE OF AUTHORITES .........................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES.................................7

1.    INTRODUCTION ........................................................................7

2.    STATEMENT OF FACTS ..........................................................9

        Background Facts.........................................................................9

        Grand Theft Auto, Felony Evading, and Hit and Run....................10

        The Carjacking ............................................................................10

        Office Koahou's Use of Force ......................................................11

        Post-Force Events .......................................................................12

3.    SUMMARY JUDGMENT IS PROPER WHEN A PLAINTIFF CANNOT DEMONSTRATE GENUINE ISSUES OF FACT ........................................................................13

4.    NO GENUINE ISSUE OF FACT EXISTS WITH RESPECT TO PLAINTIFF'S CLAIMS FOR EXCESSIVE FORCE .............14

        A.    Applicable Law.........................................................14

        B.    No Issues of Fact Exist ............................................19

5.    DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ...............................................................................20

6.    PLAINTIFF'S STATE LAW CLAIMS ......................................23

        A.    Plaintiff's State Claims Are Barred on the Merits .................23

                1.    Battery ................................................23

                2.    Negligence..........................................24

                3.    Negligent Infliction of Emotional Distress .................25

                4.    Violation of the Bane Act..................25

        B.    State Immunities ......................................................26

7.    CONCLUSION ........................................................................27

CERTIFICATE OF COMPLIANCE .............................................................28

# TABLE OF AUTHORITIES

**Page**

## CASES

*Alcala v. City of Corcoran, 147 Cal. App. 4th 666, 669-670 (2007)* ..................... 1

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .................................................. 13

*Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009) ............................................. 23

*Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343 (1988) ........................................ 9

*Catsouras v. CHP,* 181 Cal.App.4th 856 (2010) ........................................... 3, 25

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .................................................... 13

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994) ...................................................... 19

*Cornell v. San Francisco,* 17 Cal.App.5th 766 (2017) ........................................ 26

*Davis v. Scherer*, 468 U.S. 183 (1984) ............................................................... 21

*Edson v. City of Anaheim*, 63 Cal.App.4th 1269 (1998) ................................ 23, 24

*Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) ............................... 20

*Glenn v. Washington County*, 673 F.3d 864 (9th Cir. 2011) ................................ 20

*Graham v. Connor*, 490 U.S. 386 (1989) .................................................... *passim*

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................... 9, 21

*Hayes v. County of San Diego,* 57 Cal.4th 622 (2013) ........................................ 24

*Hernandez v. City of Pomona,* 46 Cal.4th 501, 518 (2009) ................................. 25

*Jackson v. County of Bremerton*, 268 F.3d 646 (9th Cir 2001) .................... 21, 22

*Johnson v. City of Pacifica*, 4 Cal.App.3d 82 (1970) .......................................... 26

*Johnson v. Contra Costa*, 2010 U.S. Dist. LEXIS 92020 (ND CA 2010) .......... 26

*Jones v. Cnty. of Los Angeles*, 2009 U.S. Dist. LEXIS 110900 (CD CA 2009) ..26

*Malley v. Briggs*, 475 U.S. 335 (1986) ............................................................... 21

*Matsushita Elec. v. Zenith Radio*, 475 U.S. 574 (1986) ...................................... 13

*Miller v. Clark Cty.,* 340 F.3d 959 (9th Cir. 2003) ............................................. 14

*Miller v. Hoagland*, 247 Cal.App.2d 57 (1966) ................................................. 26

*Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020) ........................ *passim*

*Munoz v. Olin,* 24 Cal.3d 629 (1979) ........................................................24

*Nelson v. City of Davis,* 685 F.3d 867 (2012) .........................................20

*Pearson v. Callahan*, 555 U.S. 223, 230 (2009) .................................21, 23

*Plumhoff v. Rickard,* 572 U.S. 765 (2014) ......................................*passim*

*Price v. County of San Diego*, 990 F. Supp. 1230 (SD CA 1998) .........27

*Ryburn v. Huff*, 565 U.S. 469 (2012) .................................................14, 20

*Satey v. JP Morgan,* 521 F.3d 1087 (9th Cir. 2008) ...............................9

*Scott v. Harris,* 550 U.S. 372 (2007) .......................................................7

*Smith v. City of Hemet*, 394 F.3d 689 (9th 2005) .................................14

*Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959 (9th Cir. 1990) .......13

*United States v. Aceves-Rosales*, 832 F.2d 1155 (9th Cir. 1987) .........16

*Villanueva v. California,* 986 F.3d 1158 (9th Cir. 2021) ......................18

*Ward v. San Diego County*, 791 F.2d 1329 (9th Cir. 1986) ................22

*White v. Pauly*, 580 U.S. 73 (2017) ........................................9, 21, 22

*Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6th Cir. 2007) ....17, 18, 22

**STATUTES**

42 U.S.C. § 1983........................................................................14, 24

California *Civil Code* § 52.1...............................................23, 25, 26

California *Government Code*
    § 815.2............................................................................................27
    § 820.2.....................................................................................26, 27
    § 821.6.....................................................................................26, 27

California *Penal Code* § 835a ................................................24, 25

*Fed.R.Civ.P.*
    Rule 50..........................................................................................13
    Rule 56..........................................................................................13

Federal Rules of Evidence,
    Rule 404 .......................................................................................15
    Rule 406 .......................................................................................15

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## 1.   <u>INTRODUCTION</u>

On September 9, 2021, Plaintiff Justin Harper went on a violent crime spree which resulted in his arrest and conviction for grand theft auto, hit and run with damage, possession of a shotgun by a felon, and carjacking.  This was no isolated incident for Harper as he admitted to smoking methamphetamine every few hours since he was 18, conduct which had caused him to get into approximately 10 to 15 physical fights.  Harper also acknowledged having a criminal history which was so extensive that he could not recall it all during his deposition, but did admit to a prior felony evading and being on "PTRS" (a cross between parole and probation) at the time of these events.

These facts underlying this case are clear and undisputed.  At approximately 8 a.m., Harper smoked "10 hits" of methamphetamine.  Approximately 8 hours later, he was observed driving a stolen Toyota Tacoma pickup truck while in possession of a shotgun.  When Officer Nicholas Koahou began following Harper, Harper, spontaneously and without activation of emergency lights, attempted to flee, became involved in a high-speed chase, and was involved in a hit-and-run accident which left the Toyota undrivable.  Rather than surrender, Harper continued to attempt to evade arrest by running through various backyards and eventually carjacking a black Honda Accord.

Officer Koahou eventually approached and confronted Harper, events which are captured on both Officer Koahou's belt-worn audio recorder and a bystander video,[2] rendering them undisputed for the purposes of this motion.  *Scott v. Harris,* 550 U.S. 372, 380 (2007). At that time, Harper refused *multiple* demands to exit

---

[2] In conjunction with this motion, Defendants have lodged this audio and video clip with the Court concurrently with the filing of this motion.  In addition, hypertext links to this media is being included for the convenience of the Court.  The parties have stipulated to the authenticity of the media.  See *Exhibit* "I".

the still-running stolen Honda.  Concerned that Harper would attempt to resume his
flight, Officer Koahou deployed his taser for a full five-second activation.  Harper
overcame the taser and reached for the gear shift and causing Officer Koahou to
attempt to remove Harper's hand from the gear shift.  Officer Koahou yelled,
"Don't do it.  Don't do!  I'll shoot you!  Stop!  Stop!"

However, despite these repeated warnings, Harper pressed the accelerator,
causing the car to move.  Officer Koahou attempted to pull away, but his arm was
trapped on Harper's chest by Harper's arm.  As the car started to move forward,
Officer Koahou, believing Harper to be an imminent threat to himself, and
potentially several civilian bystanders in the immediate vicinity of the car, fired
two defensive shots without aiming, striking Harper in the leg and the finger.  Both
shots were fired within a mere 5 seconds of the deployment of the taser.  The
number of shots Officer Koahou fired was very controlled and only what was
required for him to be able to separate from Harper and the carjacked vehicle.

Officer Koahou's actions trying to control Harper and to stop the community
danger he had created, and would continue to cause if permitted to escape, caused
the officer to be exposed to great risk.  However, nothing about what the officer
did unnecessarily contributed to the jeopardy he faced.  Officer Koahou took the
only opportunity he had to try and prevent Harper from victimizing anyone else in
the community if permitted to escape in the carjacked vehicle.

Notwithstanding his multiple convictions arising out of these events, Harper
filed a complaint *while in custody* against the City of Redlands and Officer Koahou
alleging a single federal cause of action for excessive force and multiple state law
claims.  However, the uncontroverted facts of this case demonstrate that Officer
Koahou's actions were reasonable under the totality of the circumstances.  *Graham
v. Connor*, 490 U.S. 386, 394-397 (1989).  Indeed, this case bears a striking
similarity to both *Plumhoff v. Rickard,* 572 U.S. 765 (2014), and *Monzon v. City of
Murrieta*, 978 F.3d 1150 (9th Cir. 2020), both of which found that no Fourth

Amendment violation had occurred on facts where the officers may have faced danger in less proximity than what Officer Koahou endured and applied greater force than he utilized.

In addition, given that there is no clearly established law demonstrating that Officer Koahou's actions were unconstitutional, Officer Koahou would be entitled to qualified immunity on the excessive force claim. *White v. Pauly*, 580 U.S. 73, 79 (2017); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Finally, Harper's derivative state law claims are equally unavailing both on the merits and based on numerous statutory immunities set forth in the California *Government Code.* And, to the extent this Court concludes that Harper has failed to carry his burden with respect to the federal claims but an issue of fact exists with respect to a state claim, this Court should decline to exercise supplemental jurisdiction over these claims and remand them to state court. *Satey v. JPMorgan,* 521 F.3d 1087, 1091 (9th Cir. 2008) (where all federal claims are eliminated before trial, a district court should decline to exercise jurisdiction over the remaining state law claims); see also *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 351 (1988).

Accordingly, because Officer Koahou acted reasonably in self-defense, in defense of civilians standing mere feet from the carjacked vehicle, in defense of drivers on the immediately adjoining roadway, and in defense of his community at large, and properly acted to prevent a fleeing felon from escaping apprehension pursuant to *Plumhoff*, there can be no civil rights violation. Defendants, therefore, are entitled to summary judgment, as a matter of law.

## 2.    **STATEMENT OF FACTS**

### **Background Facts**

On September 9, 2021, at approximately 4:00 a.m., Plaintiff Justin Harper smoked methamphetamine, taking approximately "10 hits." U.F. 1. Ever since he was 18, Harper had smoked methamphetamine every few hours, conduct which would cause him to become "irritated" and which had caused him to get into

approximately 10 to 15 physical fights.  U.F. 2.  Harper has a criminal history which was so extensive that he had trouble recalling it during his deposition, but he did admit that he had a prior "strike" prior, another prior for felony evading, and was on "PTRS" (a cross between parole and probation) at the time of these events.  U.F. 3.  Harper also admitted that he had been expelled from school in the Fourth Grade, he never went to high school, he had never had a "real job" and he never obtained a driver's license.  U.F. 4.

### Grand Theft Auto, Felony Evading and Hit and Run

Approximately 8 hours later, Harper and his passenger, a woman named Lia More, were driving in a stolen Toyota Tundra pickup truck.  U.F. 5.  As Harper was driving, he became aware that Officer Koahou was behind him and tried to get away from him by running red lights and driving at speeds of 85 to 90 mph.  U.F. 6.  Harper failed to stop at a stop sign, struck a curb, lost control, and struck a work vehicle driven by Joseph Garcia and in which Corey Guerra was a passenger.  U.F. 7.

After striking the work vehicle, Harper did not stop but instead fled the scene in the stolen Toyota.  U.F. 8.  However, the stolen Toyota was damaged to the point that it could no longer be driven.  U.F. 9.  Harper abandoned the stolen Toyota and both he and Moore fled the scene on foot.  U.F. 10.

Meanwhile, Garcia and Guerra were driving around and attempting to locate Harper after he had hit their work vehicle.  U.F. 11.  As Garcia and Guerra were searching for Harper, Harper approached them and asked for a ride, but once again fled on foot when he saw they were the two men he had struck with the stolen Toyota.  U.F. 12.  Harper ran through multiple yards attempting to evade Officer Koahou as well as Garcia and Guerra. U.F. 13.

### The Carjacking

Meanwhile, Martin Salazar was in the driveway of his home detailing his aunt's black Honda Accord and had the car running to allow the air conditioner to

cool the inside of the car.  U.F. 14.  Harper approached the black Honda, jumped in, and attempted to drive off.  U.F. 15.  When Salazar yelled at Harper to get out and tried to prevent him from driving off, Harper used force to try shake Salazar from the car causing him to lose his balance and get dragged by the car.  U.F. 16.

At this moment, Garcia and Guerra arrived on scene and saw the struggle between Salazar and Harper.  U.F. 17.  When Salazar yelled for help, his neighbor Greg Gallo and Garcia attempted to assist in forcing Harper from the car while Guerra called 911.  U.F. 18.  The struggle between the men became physical with the men attempting to subdue and strike Harper and pull him from the car.    U.F. 19.

When Officer Koahou arrived on scene, he observed the men struggling with Harper and ordered them to move away so they would not be shot.  U.F. 20.  In response to this order, Garcia and Gallo moved away from the car as Officer Koahou approached the vehicle.  U.F. 21.

**Officer Koahou's Use of Force**

Officer Koahou's subsequent interactions with Harper were recorded on his belt-worn audio recording device.  U.F. 22.  Officer Koahou ordered Harper to get out of the car multiple times; however, Harper refused to do so.  U.F. 23.  The stolen Honda was still running and Officer Koahou was concerned that Harper would attempt to flee again.  U.F. 24.  When Harper refused multiple orders to get out of the vehicle, Officer Koahou deployed his taser for a period of 5 seconds.  U.F. 25.

After the taser was deployed, Harper started to reach for the gear shift of the vehicle.  U.F. 26.  Officer Koahou attempted to pull Harper's hand from the gear shift and attempted to put the car in park.  U.F. 27.

Officer Koahou yelled, "Don't do it!  Don't do it!  I'll shoot you!  Stop! Stop!"  U.F. 28; see also Belt-Worn Audio at 4:50-4:54; Bystander Video at 0:09-0:14.  After this command, Harper hit the accelerator, causing the car to move.

U.F. 29. Officer Koahou was reaching inside the car when the vehicle started to move. U.F. 30.

Officer Koahou attempted to pull back away, but his arm was trapped on Harper's chest. U.F. 31. As the car started to move forward, Officer Koahou fired two defensive shots without aiming. U.F. 32; see also Bystander Video at 0:09-0:14. As the vehicle continued to move forward, the car's momentum slammed the door on Officer Koahou. U.F. 33. Both shots were fired within a mere 5 seconds of the deployment of the taser and before the car door struck him. U.F. 34; see also Belt-Worn Audio at 4:50-4:54; Bystander Video at 0:09-0:14. Officer Koahou did not fire at Harper based solely on the fact that Harper was driving away; more urgently, he felt that he was facing an imminent threat of being struck and/or crushed by the vehicle and was attempting to stop the threat. U.F. 35.

**Post-Force Events**

After the shots were fired, the car continued to accelerate jumped over the curb at the end of the cul-de-sac and drove for another few hundred feet before crashing. U.F. 36. After the car came to rest, Harper got out of the car on his own. U.F. 37. Harper was subsequently handcuffed, a tourniquet was applied to his leg, and he was transported to Loma Linda Medical Center. U.F. 38. A shotgun was subsequently recovered from inside the stolen Toyota. U.F. 39.

As a result of these actions, Harper was convicted of theft of the Toyota, hit and run with damage on Garcia's work truck, possession of the shotgun, and carjacking of the black Honda. U.F. 40. After he was sentenced to State Prison for these offenses, Harper continued to have problems including approximately 10 disciplinary write-ups, with four or five being for battery. U.F. 41. Harper currently expects to be released from prison in 2026. U.F. 42.

Finally, during the course of meet and confer, Harper's counsel stipulated that Harper would not go forward on the claim for negligent infliction of emotional distress. U.F. 43.

3.     **SUMMARY JUDGMENT IS PROPER WHEN A PLAINTIFF
CANNOT DEMONSTRATE GENUINE ISSUES OF FACT**

Summary judgment is proper if the moving party demonstrates "that there is no genuine issue as to any material fact . . . " *Fed.R.Civ.P.* 56(c). In a trilogy of cases, the United States Supreme Court clarified the burden of proof of each party with regard to the resolution of summary judgment motions. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Matsushita Elec. v. Zenith Radio*, 475 U.S. 574 (1986).

In *Celotex,* the Court rejected the contention that the moving party must support its summary judgment motion with evidence proving the non-existence of an essential element of plaintiff's cause of action. Rather, the Court held that "the moving party bears the burden of informing the court of the basis for its motion, and identifying parts of the file which it believes indicated an absence of a general issue of material fact." *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the respondent to set forth affirmative evidence showing that there is a genuine issue of material fact for trial. *Anderson*, 477 U.S. at 248.

The Supreme Court also made it clear that the party who bears the burden of proof at trial also bears the burden of producing sufficient evidence in opposition to the summary judgment motion to enable reasonable jurors to find for that party. The standard is the same as that for judgment as a matter of law under *Fed.R.Civ.P.* 50(a). *Anderson*, 477 at 249.

In opposing a motion for summary judgment, it is insufficient to merely show that there is some "metaphysical doubt as to material facts." *Matsushita Elec*., 475 U.S. at 576. The plaintiff must show the existence of a genuine issue and "produce at least some 'significant probative evidence tending to support the complaint.'" *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990) (citations omitted). The responding party cannot merely rest upon the allegations and the pleadings. *Hansen v. Black*, 885 F.2d 642, 644 (9th Cir. 1989).

**4.    NO GENUINE ISSUE OF FACT EXISTS WITH RESPECT TO
PLAINTIFF'S CLAIM FOR EXCESSIVE FORCE**

Turning to the merits of the case, Harper has asserted a single federal claim
under 42 U.S.C. § 1983 for excessive force.  However, as set forth below, Harper
has failed to carry his burden on any of these claims.

**A.    Applicable Law**

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that an
excessive force claim is properly analyzed under the Fourth Amendment's
objective reasonableness standard.  *Id*. at 388.  The *Graham* court set forth a non-
exhaustive list of factors to be considered in evaluating whether the force used to
affect a particular seizure is reasonable: (1) the severity of the crime at issue; (2)
whether the suspect poses an immediate threat to the safety of the officers or
others; and (3) whether the suspect actively resists detention or attempts to escape.
*Id*. at 394-395.  The test is an objective one, viewed from the vantage of a
reasonable officer at the scene, and is highly deferential to the police officer's need
to protect himself or others.  *Id*. at 396-397.

The Supreme Court has indicated that "judges should be cautious about
second-guessing a police officer's assessment, made on the scene, of the danger
presented by a particular situation."  *Ryburn v. Huff*, 565 U.S. 469, 477 (2012).
Moreover, the most important single element of the three specified factors is
whether the suspect poses an immediate threat to the safety of the officers or
others.  *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th 2005).

"The government has an undeniable legitimate interest in apprehending
criminal suspects, . . . and that interest is even stronger when the criminal is . . .
suspected of a felony." *Miller v. Clark Cty.,* 340 F.3d 959, 964 (9th Cir. 2003)
[citations omitted]. When dealing with a felony suspect, the "severity of the crime"
factor "strongly favors the government." *Id.*

In *Plumhoff,* the United States Supreme Court addressed a situation in which a driver sped away from a traffic stop and a high-speed pursuit ensued. The pursuit came to a temporary halt when Rickard spun out into a parking lot, resumed maneuvering his car, and as he continued to use the accelerator even though his bumper was flush against a patrol car, an officer fired three shots into the car. Rickard managed to get away, almost hitting an officer in the process, and then officers fired 12 more shots as Rickard fled, fatally wounding him and his passenger. Applying *Graham v. Connor,* the *Plumhoff* court concluded that the officers' conduct did not violate the Fourth Amendment under the totality of the circumstances from the perspective of a reasonable officer on scene. *Plumhoff,* 572 U.S. at 766. Indeed, given Harper's repeated attempts to evade arrest this day – as well as his prior conviction for felony evading, an action which shows a pattern and practice pursuant to Federal Rules of Evidence 406 – the fact that Harper might attempt to continue to evade arrest if not stopped is not just a possibility, it was an absolute certainty. Similarly, Harper was an experienced criminal offender and readily would have understood his sentencing exposure for his actions. Under Rule 404, his past convictions are relevant on the issue of notice, lack of mistake, and showing his state of mind and his commitment to trying to get away without regard to potential harm to others.

Here, the danger to Officer Koahou was even more immediate than the danger justifying deadly force in *Plumhoff*. In *Plumhoff*, in the seconds before the first shots were fired, Rickard was accelerating but pushed against a police cruiser. *Id.* Then, "at the moment [the second volley of] shots were fired….Rickard was intent on resuming his flight and that, if he was allowed to do so, he would once again pose a deadly threat for others on the road." *Id*. at 777. In other words, the mere possibility of that deadly threat to the public posed by Rickard permitted the use of deadly force.

Here, Harper was not simply "resuming flight" and the threat he posed to Officer Koahou – who was tangled up with Harper – was concrete and immediate. In the seconds before the shots were fired and as the shots were fired, Harper had begun to accelerate, placing Officer Koahou in extreme risk. The threat posed by Harper was a clear and immediate threat to the life of Officer Koahou who was mere inches away from being crushed by the vehicle driven by Harper. "*It is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon*." *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) (per curiam).

Moreover, even if this Court does not find that Officer Koahou was in immediate danger, deadly force was nonetheless reasonable under *Plumhoff* as Harper was a fleeing felon who posed a sufficient threat to the public at large. Nearly identical to Rickard in *Plumhoff*, Harper's actions during the pursuit amounted to felony evading as he repeatedly endangered lives during the course of the pursuit. Also, nearly identical to Rickard in *Plumhoff*, Harper demonstrated that he was "intent on resuming his flight" when he repeatedly attempted to resume his flight. Had he been "allowed to do so, he would once again pose a deadly threat for others on the road." *See Plumhoff*. As a further point of consideration, Harper began his dangerous driving spontaneously, indicative of an even greater level of volatility. In sum, whether due to the threat posed to Officer Koahou or due to the threat posed to the public, the conclusion that deadly force was reasonable here is inescapable.

Further support for this conclusion is found in the Ninth Circuit case *Monzon*, 978 F.3d 1150. In *Monzon*, after leading police officers on a high-speed chase, Monzon turned down a dead-end street. He stopped at the end of the road, and the police officers parked and exited their cruisers behind him. Monzon turned the van around, pointing it generally toward the officers. As the van accelerated in an arc toward and eventually between the officers, they commanded Monzon to

stop and fired on him when the van moved in their direction and in the direction of their fellow officers. Monzon crashed into a police cruiser, pushing that cruiser into one of the officers, and the officers continued to fire.  Monzon sustained multiple gunshot wounds and was pronounced dead at the scene.  *Id.* at 1158.  The court found that the officers' use of deadly force was objectively reasonable "in this dynamic and urgent situation, where officers were faced with the immediate threat of significant physical harm." *Id.* at 1154.

This was true even with respect to the officers who fired ***after*** Monzon's vehicle was no longer moving.  The court found: "Even though [Monzon's van] was no longer moving, . . . these officers could hear the engine revving, exactly the same in this case, and they were now situated on all sides of a van containing a driver desperate to escape—so desperate, from their perspective, that he crashed his van, first into a fencepost, and then into one of their cars.  It was not unreasonable for the officers in that situation to believe that Monzon, who had just seconds before crashed the van into a fence post yet continued on, had to be stopped after this second impact before he drove the van into one of them." *Id.* at 1158 (internal citations and quotation marks omitted).

The parallels between *Monzon* and the case at hand are striking.  Indeed, rarely is a use of force case as directly on point with another as between *Monzon* and this incident.  Like *Monzon*, Officer Koahou's use of deadly force was objectively reasonable "in this dynamic and urgent situation, where officers were faced with the immediate threat of significant physical harm."  Further, this is true even if Officer Koahou fired upon Harper before the car resumed its flight. *Monzon*, even more so than *Plumhoff*, compels the conclusion that the force here was reasonable. Also illuminating and nearly directly on point is the Sixth Circuit's decision in *Williams v. City of Grosse Pointe Park*, 496 F.3d 482 (6th Cir. 2007). There, officers fired at a fleeing suspect who had attempted to "reverse [his vehicle] in an apparent effort to flee but found his egress blocked by" an officer's

cruiser, before he accelerated and tried to weave his vehicle between the officers

and the street curb, knocking down an officer who had attempted to reach his hand

into the vehicle to stop the suspect's progress. *Id.* at 484. In affirming the district

court's grant of qualified immunity, the court found:

> At the point [the officer] fired his weapon, he was faced with a difficult choice: (1) use deadly force to apprehend a suspect who had demonstrated a willingness to risk the injury of others in order to escape; or (2) allow [the suspect] to flee, give chase, and take the chance that [the suspect] would further injure [the officer] or an innocent civilian in his efforts to avoid capture. Moreover, [the officer] had only an instant in which to settle on a course of action. Under the circumstances, we cannot say that [the officer] acted unreasonably, nor do we believe that a rational juror could conclude otherwise. *Id.* at 486.

Like the officer in *Williams*, Officer Koahou had only a split second, as

Harper was accelerating while he was in a vulnerable position.  Though Officer

Koahou remained on his feet, unlike the officer in *Williams*, the threat to his life

was no less significant. Officer Koahou can be seen stumbling along side the

vehicle as Harper drove away, pulling Officer Koahou off balance and nearly

causing him to fall, potentially under the rear wheels of the vehicle.  See U.F. 32 –

33, Bystander Video at 0:09-0:14; Belt with Video at 4:40-5:00.

Finally, in *Villanueva v. California,* 986 F.3d 1158 (9th Cir. 2021), the Ninth

Circuit considered whether two officers were entitled to summary judgment where

they used deadly force against a slow-moving vehicle following a high speed

chase.  *Id.* at 1162.  In affirming the denial of summary judgment, the Ninth Circuit

placed great weight on the speed of the vehicle as the shots were fired, noting that

deadly force was not reasonable to stop a slow-moving vehicle when the officers

could have easily stepped out of the vehicle's path to avoid danger.  *Id.* at 1170.

In contrast to *Villanueva,* this case involved an extremely dangerous

situation.  All lay witnesses and Harper himself testified that he accelerated and

was attempting to escape.  This is confirmed in the video and audio evidence.

Officer Koahou was in a frighteningly dangerous position.

**B.     No Issues of Fact Exist**

Turning to the issue of force, as stated above, in analyzing the conduct of Officer Koahou, the Courts look to the factors listed in *Graham v. Connor*:  (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape.  *Graham v. Connor,* 490 U.S. at 394-395.  The test is an objective one, viewed from the vantage of a reasonable officer at the scene, and is highly deferential to the police officer's need to protect himself or others. *Id*. at 396-397.

Again, while this matter started off with Officer Koahou merely following Harper, Harper quickly escalated the situation dramatically.  What resulted was a high-speed chase involving extremely dangerous circumstances.  Officer Koahou had no idea whether Harper was going to run, surrender, or drive off again.  And, when confronted with being apprehended, Harper made the worst possible decision and attempted to flee again, placing Officer Koahou at serious risk of being dragged and seriously injured.  Indeed, it is remarkable that Officer Koahou was not killed or seriously injured during this incident. The severity of this crime – assault with a deadly upon a police officer, and conceivably attempted murder – weighs heavily in favor of Defendants.

The second *Graham* factor, "whether the suspect pose[d] an immediate threat to the safety of the officers or others," is "the most important single element of the three specified factors." *Chew v. Gates*, 27 F.3d 1432, 1441 (9th Cir. 1994). When viewing the facts from the perspective of the officers, Harper constituted a potential danger, a danger so real and immediate that he could have easily killed Officer Koahou, not to mention the fact that Harper had already been involved in a hit and run accident and a violent carjacking all while being a felon in possession of a firearm.  This was more than just a mere "threat" of danger; Harper *was* an imminent danger.

Finally, the third factor of whether Harper was resisting or attempting to evade arrest, also weighs heavily in Defendants' favor. Here, not only did Harper refuse to yield to Officer Koahou, but he also physically resisted and assaulted him. Another telling fact was that Harper's vehicle continued rolling forward even after the shots were fired at him, evidencing an intent to further evade arrest.

The Ninth Circuit also considers whether there were less intrusive means of force that might have been used before officers resorted to force. *Glenn v. Washington County*, 673 F.3d 864, 876 (9th Cir. 2011). "Officers 'are not required to use the least intrusive degree of force possible.'" *Nelson v. City of Davis,* 685 F.3d 867, 882 (2012) *quoting Forrester v. City of San Diego*, 25 F.3d 804, 807 (9th Cir. 1994). In this case, given Harper's impulsive actions, there was simply no time to undertake any other course of action. Officer Koahou had issued multiple commands and warnings as well as deployed a less-lethal taser to no avail.

In sum, the facts of this case are extremely similar to, and involved a lesser use of force than, those in *Plumhoff* and *Monzon*. Given the rapidly evolving events in this case, this Court recognizes it should be careful of second-guessing the police officers' assessment regarding the amount of force necessary to obtain compliance on this suspect who was resisting arrest, which was minimal, as depicted in the video footage in this case. *Ryburn v. Huff*, 565 U.S. at 477. Summary judgment, therefore, is appropriate on these claims.

## 5. <u>DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY</u>

Although Defendants stand by their position that the uncontroverted evidence demonstrates that their actions were reasonable, even if this Court were to disagree, Defendants would nonetheless be entitled to summary judgment under the doctrine of qualified immunity.

It is well-settled that qualified immunity protects government officials from suit under federal law claims if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

1   *Harlow v. Fitzgerald*, 457 U.S. at 818.  "The protection of qualified immunity

2   applies regardless of whether the government official's error is 'a mistake of law, a

3   mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Pearson*

4   *v. Callahan*, 555 U.S. 223, 230 (2009).

5        To evaluate qualified immunity, a court must first decide whether the facts

6   show that the governmental official's conduct violated a constitutional right.

7   *Jackson v. County of Bremerton*, 268 F.3d 646 (9th Cir 2001).  Second, a court

8   decides whether the governmental official could nevertheless have reasonably but

9   mistakenly believed that his or her conduct did not violate a clearly established

10  right.  *Id*.  However, the court may skip the first step and proceed to the second.

11  *Pearson v. Callahan*, 555 U.S. at 227.

12       The U.S. Supreme Court has recently clarified that a governmental official is

13  entitled to qualified immunity from suit/liability where, at the time of the conduct,

14  there was no prior precedent or case law with facts specifically and substantially

15  identical to the facts of the incident at issue which would have put the defendant on

16  notice that his or her conduct was unconstitutional.  *White v. Pauly*, 580 U.S. at 79

17  ("clearly established law" should not be defined "at a high level of generality" but

18  must be "particularized" to the facts of the case).  The Supreme Court has

19  emphasized this point again and again because qualified immunity is important to

20  society as a whole and because the immunity from suit is effectively lost if a case

21  is erroneously permitted to go to trial.  *Id*. at 551-555.

22       Under the doctrine of qualified immunity, if a government official's mistake

23  as to what the law requires is reasonable, the government official is entitled to

24  qualified immunity.  *Davis v. Scherer*, 468 U.S. 183, 205 (1984).  Qualified

25  immunity gives officer "breathing room" to make reasonable but mistaken

26  judgments about open legal questions.  *Ashcroft v. al-Kidd,* 563 U.S. 731, 743

27  (2011).  Moreover, this doctrine is sweeping in scope and designed to protect "all

28  but the plainly incompetent or those who knowingly violate the law."  *Malley v.*

*Briggs*, 475 U.S. 335, 341 (1986).  Finally, although law enforcement officers must
be aware of constitutional developments, they are not expected to do so to the same
extent as law professors.  Indeed, a "reasonable person" standard applies.  *Ward v.
San Diego County*, 791 F.2d 1329, 1332 (9th Cir. 1986).

Applying the two-pronged qualified immunity analysis, this Court must first
look to whether defendants' conduct violated a constitutional right.  *Jackson v.
County of Bremerton*, 268 F.3d at 646.  While plaintiff may attempt to argue that
the law is clearly established that excessive force cannot be used, such a "high
level of generality" is contrary to the Supreme Court's repeated admonitions that
this analysis must be "particularized" to the facts of the case.  *White v. Pauly*, 580
U.S. at 79.

As discussed at length above, Harper suffered no constitutional violation of
any sort. However, assuming arguendo this Court were to find that a constitutional
violation *had* occurred, Officer Koahou would nonetheless be entitled to summary
judgment on the grounds of qualified immunity because the rights alleged by
Harper were anything but clearly established at the time of the incident. In fact, not
only is there a lack of law prohibiting Officer Koahua's conduct, but there are also
a significant number of cases *supporting* and authorizing Officer Koahou's
conduct.

As discussed at length above, *Plumhoff, Monzon, Williams* and *Vasquez* are
all, and in some cases extremely, factually similar to the situation faced by Officer
Koahua. In each, the firing officer or officers were found to have acted reasonably.
Notably, *Monzon* was decided just a few months *prior to* this incident involving
Officer Koahua nullifying any argument that the state of the law at the time of the
incident did not permit Officer Koahua to fire at a vehicle accelerating toward him.

Simply stated, since these cases hold that officers can fire upon an individual
during a high-speed chase for fear of a suspect hurting the drivers in the vicinity
and the general citizenry, how can Harper credibly argue that the law clearly

1  establishes that deadly force cannot be used when an officer is sandwiched

2  between a car and the door frame and a less lethal option had already been

3  attempted?

4      Finally, even if this Court were to conclude that such relevant authority did

5  exist at the time of this incident (which it clearly does not), Officer Koahua would

6  still be entitled to qualified immunity under the second prong of the qualified

7  immunity analysis as any mistakes which arguably may have been made were

8  reasonable.  *Pearson v. Callahan*, 555 U.S. at 230.   Specifically, even if Officer

9  Koahua was incorrect in his assessment that he was at great personal risk, given

10  Harper's actions displayed in the video, this perception would constitute, at a

11  minimum, a reasonable mistake of fact which would not preclude a grant of

12  summary judgment.

13  **6.**   **PLAINTIFF'S STATE LAW CLAIMS**

14      In addition to his Federal Claims, Harper has also set forth state causes of

15  action for: (1) battery; (2) negligence; (3) negligent infliction of emotional distress;

16  and violation of the Bane Act (California *Civil Code* § 52.1).  However, as

17  discussed herein, each of these claims fail for multiple reasons.

18      **A.**   **Plaintiff's State Claims Are Barred on the Merits**

19         **1.**   **Battery**

20      To prevail on a battery claim against a peace officer, a plaintiff must prove

21  the officer used unreasonable force.  *Brown v. Ransweiler*, 171 Cal.App.4th 516,

22  526-528 (2009); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998).  An

23  officer is not similarly situated to the ordinary battery defendant and need not be

24  treated the same, rather, he is entitled to use even greater force than might be in the

25  same circumstances required for self-defense.  *Brown*, 171 Cal.App.4th at 527.

26      An officer is not liable for battery if his actions were objectively reasonable

27  based on the facts and circumstances confronting the officer, a test highly

28  deferential to the officer's need to protect himself and others.  *Id*.  The

reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id*.  In calculating whether the amount of force was excessive, a trier of fact must recognize that officers are often forced to make split-second judgments, in tense circumstances, concerning the amount of force required.  *Id*. at 528.

A police officer in California may use reasonable force to make an arrest, prevent escape or overcome resistance, and need not desist in the face of resistance.  California *Penal Code* §835a.  Importantly, Section 1983 Fourth Amendment excessive force actions are the federal counterpart of state battery actions.  *Edson*, 63 Cal.App.4th at 1274.

In sum, as discussed above, defendants' use of force was reasonable under *Graham*, 490 U.S. 386.  As such, to the extent that Harper's derivative state law claims are based on this same quantum of force, defendants are also entitled to summary judgment on this claim, whether it sounds in assault, battery, or the deprivation of any federal or state civil rights claim.

## 2. Negligence

The Supreme Court has recognized that peace officers have a duty to act reasonably when using deadly force. *Munoz v. Olin,* 24 Cal.3d 629 (1979).  This notion was revised in *Hayes v. County of San Diego,* 57 Cal.4th 622, 329 (2013) when the California Supreme Court noted that in order to prove negligence, a plaintiff must show the defendant had a duty to use due care, he breached that duty, and the breach was the proximate cause of the injury.  Because officers have a degree of discretion as to how they choose to address a situation, there is no requirement that the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, to avoid liability for negligence.  *Id*. at 632.

Moreover, California Penal Code § 835a provides that "[a]ny peace officer who has reasonable cause to believe that the person to be arrested has committed a

public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance."  Under Penal Code § 835a, "[a] peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested," and the "officer [shall not] be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance." Thus, an officer with probable cause to make an arrest is not bound to put off the arrest until a more favorable time and is under no obligation to retire to avoid a conflict.  *Hernandez v. City of Pomona*, 46 Cal.4th 501, 518 (2009).

In this case, there was no conduct on the part of Officer Koahou that made the use of force unreasonable.  Officer Koahou had reason to detain Harper as well as probable cause to arrest him immediately upon contact.  Moreover, the only force that was used was employed to counter Harper's own violent conduct and attempts to escape as a fleeing felon.  Because Harper has failed to carry his burden of demonstrating a triable issue of fact in this regard, his claim for common law negligence as fails as a matter of law.

### 3.    Negligent Infliction of Emotional Distress

California law is clear that no independent cause of action for negligent infliction of emotional distress exists as it is merged into a general negligence claim.  *Catsouras v. CHP,* 181 Cal.App.4th 856 (2010).

When this issue was brought to the attention of Harper's counsel during meet and confer, Harper's counsel agreed to withdraw this claim.[3]  See *Exhibit* "I". Accordingly, this Court should grant summary judgment on this claim.

### 4.    Violation of the Bane Act

While a finding of a constitutional violation in an excessive force claim is sufficient to satisfy the "intimidation or coercion" element of *Civil Code* § 52.1,

---

[3] Plaintiff's counsel reserved the right to seek damages for emotional injuries with respect to the general negligence claim.  See *Exhibit* "I".

the Bane Act imposes an additional requirement beyond finding a constitutional violation (i.e., plaintiff must show officer had the *specific intent* to violate the suspect's rights).  *Cornell v. San Francisco,* 17 Cal.App.5th 766 (2017).

In this case, however, there is no such evidence on the part of Officer Koahou.  Indeed, the evidence indicates that he acted in self-defense when he became entangled with Harper and Harper attempt to resume his flight in the carjacked vehicle.  Indeed, Officer Koahou can be repeatedly directly Harper not to attempt to resume his flight prior to the shots being fired.  Belt-Worn Audio at 4:50-4:54; Bystander Video at 0:09-0:14.  There is simply no evidence of any intent to violate Harper's rights.

### B.    State Immunities

California *Government Code* § 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."  California *Government Code* § 821.6. The immunity has been utilized to shield public employees from the specific causes of action at issue in this case.  Specifically, California courts have repeatedly approved the use of *Government Code* § 821.6 to immunize public employees against claims of negligence, battery and assault.  *Jones v. Cnty. of Los Angeles*, 2009 U.S. Dist. LEXIS 110900, *16-18 (CD CA 2009) (immunizing against claims for violation of *Civil Code* § 52.1, battery, negligence, and intentional infliction of emotional distress); *Johnson v. City of Pacifica*, 4 Cal.App.3d 82, 86-87 (1970); *Johnson v. Contra Costa*, 2010 U.S. Dist. LEXIS 92020, *52-54 (ND CA 2010) (immunizing against claims for negligence); *Miller v. Hoagland*, 247 Cal.App.2d 57, 62 (1966) (immunizing against intentional torts).

Furthermore, peace officers are entitled to immunity under California *Government Code* § 820.2, which provides, in relevant part, that a public employee is not liable for an injury resulting from his act or omission where the act or

-26-

omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.  As Officer Koahou did not use unreasonable force, he is immune.  *Government Code* § 820.2; *Price v. County of San Diego*, 990 F. Supp. 1230, 1244 (SD CA 1998).

Similarly, the defendants are immune from Harper's claims of negligence, battery, and assault pursuant to § 821.6 as the acts complained of by Harper were incidental to an investigation of assaults or other violent actions.  As Officer Koahou was immune, so too is the City of Redlands.  See *Government Code* § 815.2(b) (public entity not liable for any act or omission of a public employee where the employee is immune from liability).

## 7.    **CONCLUSION**

Based on the foregoing, the Court should grant Defendants' Motion for Summary Judgment and/or Partial Summary Judgment and enter judgment in their favor and against Plaintiff Justin Harper.

Dated: December 19, 2024          JONES MAYER

*/s/ Scott Wm. Davenport*

By: _____
        JAMES R. TOUCHSTONE
        DENISE L. ROCAWICH
        SCOTT WM. DAVENPORT

Attorneys for Defendants,
CITY OF REDLANDS and OFFICER KOAHOU

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for CITY OF REDLANDS and OFFICER KOAHOU, certifies that this brief contains 8,318 words, which complies with the word limit of Local Rule 11-6.1.

Dated: December 20, 2024                    JONES MAYER

*/s/ Scott Wm. Davenport*

By: _____
SCOTT WM. DAVENPORT

Attorneys for Defendants,
CITY OF REDLANDS and OFFICER KOAHOU