James R. Touchstone, SBN 184584
  jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
  dlr@jones-mayer.com
Scott Wm. Davenport, SBN 159432
  swd@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone:  (714) 446-1400
Facsimile:  (714) 446-1448

Attorneys for Defendants,
CITY OF REDLANDS and OFFICER KOAHOU

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN CODY HARPER, | Case No.:  5:23-CV-00695-SSS (KK) |
| Plaintiff, | *Judge:*  Hon. Sunshine S. Sykes |
| v. | **DEFENDANTS' STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** |
| CITY OF REDLANDS, REDLANDS POLICE DEPARTMENT, POLICE OFFICER KOAHOU, and DOES 1 through 10, inclusive, | Date:    February 28, 2025<br>Time:    2:00 p.m.<br>Ctrm:    2 |
| Defendants. | |

**TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Defendants CITY OF REDLANDS and OFFICER KOAHOU respectfully submit the following Statement of Uncontroverted Facts and Conclusions of Law, in support of their Motion for Summary Judgment and/or Partial Summary Judgment of Issues.  As set forth herein, Defendants submit that Plaintiff has not – and cannot – carry his burden of demonstrating a genuine issue of material fact and, accordingly, the motion should be granted.

/ / /

/ / /

-1-

| UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 1.   On September 9, 2021, at approximately 4:00 a.m., Plaintiff Justin Harper smoked methamphetamine, taking approximately "10 hits." | 1.   Harper Depo at 23-24. |
| 2.   Ever since he was 18, Harper had smoked methamphetamine every few hours, conduct which would cause him to become "irritated" and which had caused him to get into approximately 10 to 15 physical fights. | 2.   Harper Depo at 25. |
| 3.   Harper has a criminal history which was so extensive that he had trouble recalling it during his deposition, but he did admit that he had a prior "strike" prior, another prior for felony evading, and was on "PTRS" (a cross between parole and probation) at the time of these events. | 3.   Harper Depo at 21-22. |
| 4.   Harper also admitted that he had been expelled from school in the Fourth Grade, he never went to high school, he had never had a "real job" and he never obtained a driver's license. | 4.   Harper Depo at 16-18, 26. |

| | |
|---|---|
| 5.  Approximately 8 hours later, Harper and his passenger, a woman named Lia Moore, were driving in a stolen Toyota Tundra pickup truck. | 5.  Harper Depo at 22-24, 28, 31. |
| 6.  As Harper was driving, he became aware that Officer Koahou was behind him and tried to get away from him by running red lights and driving at speeds of 85 to 90 mph. | 6.  Harper Depo at 32-33. |
| 7.  Harper failed to stop at a stop sign, struck a curb, lost control, and struck a work vehicle driven by Joseph Garcia and in which Corey Guerra was a passenger. | 7.  Harper Depo at 34; Garcia Depo at 12, 19-20; Guerra Depo at 9, 11-12. |
| 8.  After striking the work vehicle, Harper did not stop but instead fled the scene in the stolen Toyota. | 8.  Harper Depo at 34; Garcia Depo at 21-22; Guerra Depo at 13. |
| 9.  However, the stolen Toyota was damaged to the point that it could no longer be driven. | 9.  Harper Depo at 34-35. |
| 10.  Harper abandoned the stolen Toyota and both he and Moore fled on the scene on foot. | 10.  Harper Depo at 35-37. |
| 11.  Meanwhile, Garcia and Guerra were driving around and attempting to locate Harper after he had hit their work vehicle. | 11.  Garcia Depo at 33; Guerra Depo at 15. |

| | |
|---|---|
| 12.  As Garcia and Guerra were searching for Harper, Harper approached them and asked for a ride, but once again fled on foot when he saw they were the two men he had struck with the stolen Toyota. | 12.  Garcia Depo at 27; Guerra Depo at 16-17. |
| 13.  Harper ran through multiple yards attempting to evade Officer Koahou as well as Garcia and Guerra. | 13.  Koahou Depo at 14. |
| 14.  Meanwhile, Martin Salazar was in the driveway of his home detailing his aunt's black Honda Accord and had the car running to allow the air conditioner to cool the inside of the car. | 14.  Salazar Depo at 15-16. |
| 15.  Harper approached the black Honda, jumped in, and attempted to drive off. | 15.  Harper Depo at 38-39; Salazar Depo at 21-22. |
| 16.  When Salazar yelled at Harper to get out and tried to prevent him from driving off, Harper used force to try shake Salazar from the car causing him to lose his balance and get dragged by the car. | 16.  Salazar Depo at 23, 27-28. Garcia Depo at 38. |
| 17.  At this moment, Garcia and Guerra arrived on scene and saw the struggle between Salazar and Harper. | 17.  Garcia Depo at 34-35, 38; Guerra Depo at 20-21. |

| | |
|---|---|
| 18.   When Salazar yelled for help, his neighbor Greg Gallo and Garcia attempted to assist in forcing Harper from the car while Guerra called 911. | 18.   Harper Depo at 40-42; Garcia Depo at 39-40, 44-47; Guerra Depo at 25-28; Salazar Depo at 26; Gallo Depo 21-23. |
| 19.   The struggle between the men became physical with the men attempting to subdue and strike Harper and pull him from the car. | 19.   Harper Depo 40-42, 49; Garcia Depo at 39-40, 44-46; Guerra Depo at 25-28; Salazar Depo at 26, 31-32; Gallo Depo 21-23. |
| 20.   When Officer Koahou arrived on scene, he observed the men struggling with Harper and ordered them to move away so they would not be shot. | 20.   Harper Depo at 47; Koahou Depo at 17; Salazar Depo at 35. |
| 21.   In response to this order, Garcia and Gallo moved away from the car as Officer Koahou approached the vehicle. | 21.   Koahou Depo at 18. |
| 22.   Officer Koahou's subsequent interactions with Harper were recorded on his belt-worn audio-recording device. | 22.   Koahou Depo at 19; Belt-Worn Audio. |
| 23.   Officer Koahou ordered Harper to get out of the car multiple times; however, Harper refused to do so. | 23.   Harper Depo at 50; Koahou Depo at 19. |
| 24.   The stolen Honda was still running and Officer Koahou was concerned that Harper would attempt to flee again. | 24.   Koahou Depo at 20; Belt-Worn Audio at 4:34-4:44. |

| | |
|---|---|
| 25.  When Harper refused multiple orders to get out of the vehicle, Officer Koahou deployed his taser for a period of 5 seconds. | 25.  Koahou Depo at 23; Belt-Worn Audio at 4:50; Belt with Video at 4:40-4:50. |
| 26.  After the taser was deployed, Harper started to reach for the gear shift of the vehicle. | 26.  Koahou Depo at 23-24; Salazar Depo at 42. |
| 27.  Officer Koahou attempted to pull Harper's hand from the gear shift and attempted to put the car in park. | 27.  Koahou Depo at 23-24. |
| 28.  Officer Koahou yelled, "Don't do it!  Don't do it!  I'll shoot you!  Stop! Stop!" | 28.  Belt-Worn Audio at 4:52.; Bystander Video at 0:09-0:14; Belt with Video at 4:40-4:50.. |
| 29.  After this command, Harper hit the accelerator, causing the car to move. | 29.  Harper Depo at 54-55; Bystander Video at 0:09-0:14; Belt with Video at 4:40-4:50.. |
| 30.  Officer Koahou was reaching inside the car when the vehicle started to move. | 30.  Salazar Depo at 65. |
| 31.  Officer Koahou attempted to pull back away, but his arm was trapped on Harper's chest. | 31.  Koahou Depo at 25. |
| 32.  As the car started to move forward, Officer Koahou fired two defensive blank shots without aiming. | 32.  Koahou Depo at 11; Belt-Worn Audio at 4:54; Belt with Video at 4:40-4:50.. |
| 33.  As the vehicle continued to move forward, the car's momentum slammed | 33.  Koahou Depo at 30. |

| | |
|---|---|
| the door on Officer Koahou. | |
| 34.  Both shots were fired within a mere 5 seconds of the deployment of the taser and before the car door struck him. | 34.  Koahou Depo at 36-37; Belt-Worn Audio at 4:50-4:54; Bystander Video at 0:09-0:14; Belt with Video at 4:40-4:50.. |
| 35.  Officer Koahou did not fire at Harper based solely on the fact that Harper was driving away; more urgently, he felt that he was facing an imminent threat of being struck and/or crushed by the vehicle and was attempting to stop the threat. | 35.  Koahou Depo at 43 |
| 36.  After the shots were fired, the car continued to accelerate jumped over the curb at the end of the cul-de-sac and drove for another few hundred feet before crashing. | 36.  Harper Depo at 59;Koahou Depo at 31-32, 47; Salazar Depo at 49. |
| 37.  After the car came to rest, Harper got out of the car on his own. | 37.  Harper Depo at 60; Koahou Depo at 32. |
| 38.  Harper was subsequently handcuffed, a tourniquet was applied to his leg, and he was transported to Loma Linda Medical Center. | 38.  Harper Depo at 61, 63; Koahou Depo at 33; Belt-Worn Audio at 5:40-5:46. |
| 39.  Following these events, a shotgun was recovered from inside the stolen Toyota. | 39.  Harper Depo at 35. |

| | |
|---|---|
| 40.  As a result of these actions, Harper was convicted of theft of the Toyota, hit and run with damage on Garcia's work truck, possession of the shotgun, and carjacking of the black Honda. | 40.  Harper Depo at 31, 34, 35, 38-39. |
| 41.  After he was sentenced to State Prison for these offenses, Harper continued to have problems including approximately 10 disciplinary write-ups, with four or five being for battery. | 41.  Harper Depo at 13-16. |
| 42.  Harper currently expects to be released from prison in 2026. | 42.  Harper Depo at 12. |
| 43.  During the course of meet and confer, Harper's counsel stipulated that Harper would not go forward on the claim for negligent infliction of emotional distress. | 43.  *Exhibit* "I". |

## **CONCLUSIONS OF LAW**

1.      A Motion for Summary Judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L. Ed. 2d 202 (1986).

2.      It is the moving party's burden to show it is entitled to summary judgment — that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511; see also *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998); *Retail Clerks Union*

*Local 648 v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir. 1983).

  3. The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial.  *Anderson,* 477 U.S. at 252.

  5. Even though evidence on summary judgment must be viewed in light most favorable to the non-moving party, plaintiffs must do more than simply make allegations that defendants acted improperly in order to survive summary judgment. Fed. R. Civ. P. 56(e)(2); *Jeffers v. Gomez,* 267 F.3d 895, 907 (9th Cir. 2001). The non-moving party must make this showing with admissible evidence. *See Celotex,* 477 U.S. at 324.

  6. In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court held that an excessive force claim is properly analyzed under the Fourth Amendment's objective reasonableness standard.  *Id*. at 388.  The Graham court set forth a non-exhaustive list of factors to be considered in evaluating whether the force used to effect a particular seizure is reasonable: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect actively resists detention or attempts to escape. *Id*. at 394-395.  The test is an objective one, viewed from the vantage of a reasonable officer at the scene, and is highly deferential to the police officer's need to protect himself or others.  *Id*. at 396-397.

  7. Probable cause exists where the facts and circumstances within an officer's knowledge of which they had reasonably trustworthy information are sufficient in themselves to warrant a mean of reasonable caution in the belie3e that an offense has been or is being committed.  *Carrol v. United States,* 267 U.S. 132, 162 (1925).  Probable cause means less than evidence that would justify a

1   conviction. *Brinegar v. United States,* 338 U.S. 160, 175 (1949). Even an

2   acquittal would not be evidence of a lack of probable cause. *Id.* Thus, the mere

3   fact that a prosecution was unsuccessful does not mean that it was not supported by

4   probable cause. *Freeman v. City of Santa Ana,* 68 F.3d 1180, 1189 (9th Cir. 1995).

5       8.    Qualified immunity protects government officials from suit under

6   federal law claims if "their conduct does not violate clearly established statutory or

7   constitutional rights of which a reasonable person would have known." *Harlow v.*

8   *Fitzgerald*, 457 U.S. 800, 818 (1982). "The protection of qualified immunity

9   applies regardless of whether the government official's error is 'a mistake of law, a

10  mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*

11  *v. Callahan*, 555 U.S. at 230.

12      9.    To evaluate qualified immunity, a court must first decide whether the

13  facts show that the governmental official's conduct violated a constitutional right.

14  *Jackson v. County of Bremerton*, 268 F.3d 646 (9th Cir 2001). Second, a court

15  decides whether the governmental official could nevertheless have reasonably but

16  mistakenly believed that his or her conduct did not violate a clearly established

17  right. *Id.* However, the court may skip the first step and proceed to the second.

18  *Pearson v. Callahan*, 555 U.S. at 227.

19      10.   The U.S. Supreme Court has recently clarified that a governmental

20  official is entitled to qualified immunity from suit/liability where, at the time of the

21  conduct, there was no prior precedent or case law with facts specifically and

22  substantially identical to the facts of the incident at issue which would have put the

23  defendant on notice that his or her conduct was unconstitutional. *White v. Pauly*,

24  580 U.S. 73, 79 (2017) ("clearly established law" should not be defined "at a high

25  level of generality" but must be "particularized" to the facts of the case).

26      11.   Under the doctrine of qualified immunity, if a government official's

27  mistake as to what the law requires is reasonable, the government official is

28

1    entitled to qualified immunity. *Davis v. Scherer*, 468 U.S. 183, 205 (1984).

2    Moreover, this doctrine is sweeping in scope and designed to protect "all but the

3    plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*,

4    475 U.S. 335, 341 (1986).

5        12.    To prevail on a battery claim against a peace officer, a plaintiff must

6    prove the officer used unreasonable force. *Brown v. Ransweiler*, 171 Cal.App.4th

7    516, 526-28 (2009); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272 (1998).

8    An officer is not similarly situated to the ordinary battery defendant and need not

9    be treated the same, rather, he is entitled to use even greater force than might be in

10   the same circumstances required for self-defense. *Brown*, 171 Cal.App.4th at 527.

11       13.    An officer is not liable for battery if his actions were objectively

12   reasonable based on the facts and circumstances confronting the officer, a test

13   highly deferential to the officer's need to protect himself and others. *Id*. The

14   reasonableness of a particular use of force must be judged from the perspective of

15   a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.

16   *Id*. In calculating whether the amount of force was excessive, a trier of fact must

17   recognize that officers are often forced to make split-second judgments, in tense

18   circumstances, concerning the amount of force required. *Id*. at 528.

19       14.    The Supreme Court has recognized that peace officers have a duty to

20   act reasonably when using deadly force. *Munoz v. Olin,* 24 Cal.3d 629 (1979).

21   This notion was revised in *Hayes v. County of San Diego,* 57 Cal.4th 622 (2013).

22       15.    California law is clear that no independent cause of action for

23   negligent infliction of emotional distress exists as it is merged into a general

24   negligence claim. *Catsouras v. CHP,* 181 Cal.App.4th 856 (2010).

25       16.    While a finding of a constitutional violation in an excessive force

26   claim is sufficient to satisfy the "intimidation or coercion" element of *Civil Code* §

27   52.1, the Bane Act imposes an additional requirement beyond finding a

28                                                        -11-

constitutional violation (i.e., plaintiff must show officer had the *specific intent* to violate the suspect's rights). *Cornell v. San Francisco,* 17 Cal.App.5ᵗʰ 766 (2017).

17.    California *Government Code* § 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." California *Government Code* § 821.6. The immunity has been utilized to shield public employees from the specific causes of action at issue in this case. Specifically, California courts have repeatedly approved the use of *Government Code* § 821.6 to immunize public employees against claims of negligence, battery and assault. *Jones v. Cnty. of Los Angeles*, 2009 U.S. Dist. LEXIS 110900, *16-18 (CD CA 2009) (immunizing against claims for violation of *Civil Code* § 52.1, battery, negligence, and intentional infliction of emotional distress); *Johnson v. City of Pacifica*, 4 Cal.App.3d 82, 86-87 (1970); *Johnson v. Contra Costa*, 2010 U.S. Dist. LEXIS 92020, *52-54 (ND CA 2010) (immunizing against claims for negligence); *Miller v. Hoagland*, 247 Cal.App.2d 57, 62 (1966) (immunizing against intentional torts).

18.    Furthermore, the peace officers are entitled to immunity under California *Government Code* § 820.2, which provides, in relevant part, that a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused. As they did not use unreasonable force, they are immune. *Government Code* § 820.2; *Price v. County of San Diego*, 990 F. Supp. 1230, 1244 (SD CA 1998).

19.    Similarly, the defendants are immune from plaintiff's claims of negligence, battery, and assault pursuant to § 821.6 as the acts complained of by plaintiff were incidental to an investigation of assaults or other violent actions. As the individual defendants are immune, so too are the municipal defendants. See

1    *Government Code* § 815.2(b).

2    Dated: December 19, 2024       JONES MAYER

3

4                        */s/ Scott Wm. Davenport*

5    By: _____
          JAMES R. TOUCHSTONE

6           DENISE L. ROCAWICH
          SCOTT WM. DAVENPORT

7    Attorneys for Defendants,
    CITY OF REDLANDS and OFFICER

8    KOAHOU

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28