LAW OFFICES OF DALE K. GALIPO
Dale K. Galipo, Esq. (SBN 144074)
Renee Masongsong, Esq. (SBN 281819)
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118
E-mail: dalekgalipo@yahoo.com, rvalentine@galipolaw.com

JAMES S. TERRELL (SBN: 170409)
15411 Anacapa Road
Victorville, CA 92392
Tel: 760-951-5850| Fax: 760-952-1085
E-mail: jim@talktoterrell.com

SHARON J. BRUNNER, (SBN: 229931)
LAW OFFICE OF SHARON J. BRUNNER
14393 Park Avenue, Suite 100
Victorville, CA 92392
Telephone: 760-243-9997
Fax: 760-843-8155
E-mail: sharonjbrunner@yahoo.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN CODY HARPER,<br><br>    Plaintiff,<br><br>    vs.<br><br>CITY OF REDLANDS; NICHOLAS KOAHOU<br><br>    Defendants. | Case No. 5:23-cv-00695-SSS-DTB<br><br>*Assigned to*:<br>Hon. District Judge Sunshine S. Sykes<br>Hon. Mag. Judge David T. Bristow<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:    February 28, 2025<br>Time:    2:00 p.m.<br>Crtrm:    Courtroom 2<br>           3470 Twelfth St.<br>           Riverside, CA 92501<br><br>[*Filed concurrently with Plaintiff's Response to Defendants' Separate Statement of Facts; and Declaration of Renee V. Masongsong and Exhibits thereto; Declaration of Scott DeFoe*] |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................................... 1

II.   FACTS ....................................................................................................... 3

    A.    The Incident ................................................................................... 3

    B.    Pre-Shooting Negligence ............................................................... 4

    C.    Police Officer Standards and Training ........................................... 5

III.  LEGAL STANDARD ............................................................................... 7

IV.  ARGUMENT ............................................................................................ 7

    A.    Plaintiff's Fourth Amendment Claim Survives ............................. 7

        1.    The Shooting Was Excessive and Unreasonable ................ 7

        2.    The Fleeing Felon Theory Does Not Apply ..................... 10

        3.    Plumhoff and Monzon are Distinguishable ..................... 11

    B.    Koahou is Not Entitled to Qualified Immunity ........................... 12

        1.    Disputed Issues of Material Fact Preclude Granting Summary Judgment ....................................................... 12

        2.    The Law Was Clearly Established at the Time of the Shooting ......................................................................... 13

        3.    Koahou's Training Placed Him on Notice ....................... 16

    C.    Plaintiff's State Law Claims Survive Because the Use of Deadly Force Was Unreasonable .................................................. 17

        1.    Battery .......................................................................... 17

        2.    Negligence .................................................................... 18

        3.    Bane Act ....................................................................... 19

        4.    Defendants Are Not Entitled to Immunity on Plaintiff's State Law Claims ............................................................ 19

V.   CONCLUSION ...................................................................................... 20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

## Cases

*A.D. v. California Highway Patrol*,
712 F.3d 446 (9th Cir. 2013)................................................................2, 13, 15

*Acosta v. City & Cnty. of S. F.*,
83 F.3d 1143 (9th Cir. 1996)..................................................................2, 13

*Adams v. Speers*,
473 F.3d 989 (9th Cir. 2007)..................................................................2, 13

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)......................................................................................7

*Blankenhorn v. City of Orange*,
485 F.3d 463 (9th Cir. 2007)......................................................................19

*Brosseau v. Haugen*,
543 U.S. 194 (2004).....................................................................................12

*Bryan v. McPherson*,
630 F.3d 805 (9th Cir. 2010)........................................................................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................7

*Cowan ex rel. Estate of Cooper v. Breen*,
352 F.3d 756 (2d Cir. 2003).......................................................................14

*Curnow v. Ridgecrest Police*,
952 F.2d 321 (9th Cir. 1991)......................................................................11

*Deorle v. Rutherford*,
272 F.3d 1272 (9th Cir. 2001)......................................................................8

*Drummond v. City of Anaheim*,
343 F.3d 1052 (9th Cir. 2003)....................................................................16

*Espinosa v. City & Cnty. of S.F.*,
598 F.3d 528 (9th Cir. 2010)..................................................................7, 11

*Figueroa v. Gates*,
207 F. Supp. 2d 1085 (C.D. Cal. 2002).....................................................10

*Garcia v. City of Merced*,
637 F. Supp.2d 731 (E.D. Cal. 2008).........................................................20

*Glenn v. Washington Cnty.*,
673 F.3d 864 (9th Cir. 2011)....................................................................7, 8

*Godawa v. Byrd*,
798 F.3d 457 (6th Cir. 2015)......................................................................13

*Graham v. Connor*,
   490 U.S. 386 (1989) ................................................................7, 8, 9, 17

*Harris v. Roderick*,
   126 F.3d 1189 (9th Cir. 1997) ................................................................11

*Hayes v. Cnty. of San Diego*,
   57 Cal. 4th 622 (2013) ................................................................18

*Hope v. Pelzer*,
   536 U.S. 730 (2002) ................................................................16

*Johnson v. Bay Area Rapid Transit Dist.*,
   724 F.3d 1159 (9th Cir. 2013) ................................................................17

*Johnson v. Jones*,
   515 U.S. 304 (1995) ................................................................12

*Kirby v. Duva*,
   530 F.3d 475 (6th Cir. 2008) ................................................................10, 13

*Knapps v. City of Oakland*,
   2009 WL 2390262 (N.D. Cal. 2009) ................................................................19

*Kosakoff v. City of San Diego*,
   2010 WL 1759455 (S.D. Cal. Apr. 29, 2010) ................................................................14

*Lytle v. Bexar Cnty., Tex.*,
   560 F.3d 404 (5th Cir. 2009) ................................................................10

*Medina v. Cram*,
   252 F.3d 1124 (10th Cir. 2001) ................................................................10

*Meredith v. Erath*,
   342 F.3d 1057 (9th Cir. 2003) ................................................................8

*Monzon v. City of Murrieta*,
   978 F.3d 1150 (9th Cir. 2020) ................................................................11

*Munoz v. City of Union City*,
   120 Cal. App. 4th 1077 (2004) ................................................................17

*N.S. v. Kan. City Bd. of Police Comm'rs*,
   143 S.Ct. 2422 (2023) ................................................................16

*Orn v. City of Tacoma*,
   949 F.3d 1167 (9th Cir. 2020) ................................................................2, 13, 14

*Plumhoff v. Rickard*,
   572 U.S. 765 (2014) ................................................................11

*Price v. County of San Diego*,
   990 F. Supp. 1230 (S.D. Cal. 1998) ................................................................20

-iii-

*Reese v. County of Sacramento,*
    888 F.3d 1030, 1045 (9th Cir. 2018) ................................................. 19

*Robinson v. Solano Cnty.,*
    278 F.3d 1007 (9th Cir. 2002) ......................................................... 19

*S.R. Nehad v. Browder,*
    929 F.3d 1125 (9th Cir. 2019) ......................................................... 12

*Scott v. Edinburg,*
    346 F.3d 752 (7th Cir. 2003) .......................................................... 14

*Scott v. Harris,*
    550 U.S. 372 (2007) ................................................................. 7, 13

*Scott v. Smith,*
    109 F.4th 1215 (9th Cir. 2024) ........................................................ 16

*Sharp v. County of Orange,*
    871 F.3d 901 (9th Cir. 2017) .......................................................... 19

*Smith v. Cupp,*
    430 F.3d 766 (6th Cir. 2005) .......................................................... 14

*Tabares v. City of Huntington Beach,*
    988 F.3d 1119 (9th Cir. 2021) ......................................................... 18

*Tennessee v. Garner,*
    471 U.S. 1 (1985) ................................................................. 10, 11

*Ting v. United States,*
    927 F.2d 1504 (9th Cir. 1991) ......................................................... 11

*Tolan v. Cotton,*
    572 U.S. 650 (2014) .................................................................... 7

*Torres v. City of Madera,*
    648 F.3d 1119 (9th Cir. 2011) .......................................................... 8

*United States v. One Parcel of Real Prop.,*
    904 F.2d 487 (9th Cir. 1990) ........................................................... 7

*United States v. Reese,*
    2 F.3d 870, 855 (9th Cir. 1993) ....................................................... 19

*Villanueva v. State of California,*
    986 F.3d 1158 (9th Cir. 2021) ............................................... 2, 12, 13, 15

*Vos. v. City of Newport Beach,*
    892 F.3d 1024 (9th Cir. 2018) .......................................................... 9

*Warren v. Marcus,*
    78 F. Supp. 3d 1228 (N.D. Cal. 2015) ................................................. 19

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017) ..........................................................................16

<u>Statutes</u>

42 U.S.C. § 1983.................................................................................1, 7

California Government Code § 820.4....................................................20

California Government Code § 821.6....................................................20

California Government Code § 845.8....................................................20

California Government Code §821.6.....................................................19

California Government Code 7286(b).....................................................5

California Penal Code § 835(a) .............................................................8

Federal Rule of Civil Procedure 56 .......................................................7

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# I.    INTRODUCTION

This Court should deny Defendants' motion for summary judgment with respect to Plaintiff Justin Harper's claim for excessive force under 42 U.S.C. § 1983 the Fourth Amendment and Plaintiff's claims for battery, negligence, and violation of the Bane Act under California law.  Viewing the facts in the light most favorable to Plaintiff, which this Court is required to do on a motion for summary judgment, Harper posed no immediate threat of death or serious bodily injury to any person at the time of Officer Koahou's two lethal shots, including because no person was about to be struck by the Honda with no opportunity to get out of the way at the time of either shot.  Under basic police training and standards, a police officer can only use deadly force based on an objectively reasonably belief that the person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury.  That was not the case here, where Koahou and the civilians were to the side of the Honda, out of its path, at the time of the shooting. Additionally, as articulated by Plaintiff's police practices expert, Scott DeFoe, in his declaration filed concurrently herewith, under the facts of this case, it would not have been appropriate for Koahou to shoot Harper for attempting to flee in the Honda, which it appears Koahou did.  Therefore, the shooting violated Harper's rights to be free from excessive and unreasonable force under federal and state law.

Koahou is not entitled to qualified immunity, which only applies to Plaintiff's federal claim. With respect to the first prong of qualified immunity, a reasonable jury could find that a reasonable police officer in Koahou's position would not have used deadly force under the facts of this case. Where the facts are disputed, only a jury can decide, and summary judgment and qualified immunity must be denied. As to the second prong of qualified immunity, Koahou was on notice at the time of this incident that shooting the driver of a slow-moving vehicle with no person in the vehicle's path is a Fourth Amendment violation.

When considering which legal opinions are factually analogous enough to put the officer on notice, this Court must resolve all disputed issues of material fact in Plaintiff's favor, view the facts in the light most favorable to Plaintiff, and take all reasonable inferences therefrom.  Legal precedent such as *Villanueva v. State of California*, 986 F.3d 1158 (9th Cir. 2021); *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *A.D. v. California Highway Patrol*, 712 F.3d 446, 458 (9th Cir. 2013); *Adams v. Speers*, 473 F.3d 989, 994 (9th Cir. 2007); and *Acosta v. City & Cnty. of S. F.*, 83 F.3d 1143, 1146 (9th Cir. 1996) clearly establish Harper's rights when the following facts are taken as true: (1) Koahou escalated the situation when he Tased Harper in the chest without warning while Harper was operating a motor vehicle; (2) at the time of the shooting, no person was in front of the Honda, or about to be struck by the Honda with no opportunity to get out of the way; rather, Koahou and the civilian witnesses were all to the side of the Honda, out of its path and some distance away from the Honda; (3) Harper never drove the Honda toward any person; (4) at the time of the shots, the Honda was moving slowly, about 5mph; (5) the Honda's speed only increased after the shooting, when Harper lost control of the Honda as a result of being struck by shots.  It is undisputed that Harper did not brandish a gun or knife, Harper made no verbal threats to physically harm anyone, no person was struck by the Honda, and no person other than Harper was injured during this incident.

In addition to the clearly established law, basic police officer training and the Redlands Police Department Policy, which both discourage shooting at vehicles and drivers, placed Koahou on notice prior to the shooting that using deadly force against Harper under these circumstances would violate Harper's constitutional rights.  Officers are trained to move out of the path of a moving vehicle rather than shooting at the vehicle or its driver and trained that if a driver is wounded or killed when operating a vehicle, it prevents their ability to effectively operate the vehicle.  Police training and standards also instructs that officers can only shoot a "fleeing

felon" where the person committed a felony involving the infliction of serious bodily harm or death *and* where the person poses an immediate threat of death or serious bodily injury.  Neither of these factors were met in this case.  For these reasons and the reasons set forth in detail below, this Court should deny Defendants' motion for summary judgment in its entirety and allow a jury to determine whether Harper really posed an immediate threat of death or serious bodily injury to any person at the time of the shots.

## II.    FACTS

### A.    The Incident

At the time of this incident, Koahou knew nothing about Harper, including whether Harper had a criminal history. (PAMF-44). Koahou had no information that Harper was armed with a gun, and he never saw a gun, knife, or other weapon on Harper or in the Honda. (PAMF-45-46). Koahou did not have any specific information that Harper was under the influence of drugs or alcohol. (PAMF-47). Prior to shooting, Koahou commanded witnesses Garcia, Gallo, Guerra, and Salazar to move, and they complied by moving away from the Honda. (PAMF-49). When Harper reversed the Honda into the cul-de-sac, the Honda's emergency brakes were engaged, and the Honda was moving slowly. (PAMF-51-52).

Koahou reached into the Honda and grabbed Harper's right hand. (PAMF-54). When Koahou Tased Harper, he was aiming for his chest. (PAMF-55). The Taser probes struck Harper. (PAMF-56). Koahou did not warn Harper before he Tased him. (PAMF-57). Before Harper was Tased, he tried to surrender, including by stating that he was ready to get out of the Honda, letting go of the steering wheel, and putting his hands up. (PAMF-58). When Harper was being Tased, his hands were up and the Honda was stationary. (PAMF-59-60). Harper screamed in pain when he was Tased. (PAMF-61).

The Honda moved forward as a result of Harper being shocked by the Taser. (PAMF-63). When the Honda started moving forward prior to the shots, no person

1  was standing in front of the Honda, and no person had to jump out of the way to

2  avoid being struck by the Honda. (PAMF-64-65). No person was in front of the

3  Honda or in its path at the time of the shots. (PAMF-66). Prior to the Honda moving

4  forward, witness Gallo moved out of the path of the Honda and witness Guerra

5  moved to the side of the Honda. (PAMF-67-68). When the vehicle moved forward

6  prior to the shooting, witness Garcia was about 8-10 feet off to the side of the

7  Honda. (PAMF-69). Prior to the shooting, witness Salazar moved approximately 15

8  to 20 feet away from the Honda, on the driver's side. (PAMF-69). When Koahou

9  fired his two shots, he was standing approximately two to six feet away from the

10  Honda, on the driver's side of the Honda. (PAMF-71). After the shooting, Koahou

11  saw that the civilians were standing right next to Koahou. (PAMF-72). Koahou's

12  arm was not inside the Honda when he fired his shots. (PAMF-73). According to

13  Harper, Koahou was never being dragged by the Honda. (PAMF-74).

14       No person was struck by the Honda. (PAMF-75). The Honda was moving

15  slowly, approximately 5 miles per hour, at the time of the shots. (PAMF-76). The

16  Honda's speed did not increase until Harper lost control of the Honda as a result of

17  being shot. (PAMF-74). After Harper was struck by shots, Harper lost control of the

18  Honda as a result of being struck by shots. (PAMF-77). Koahou never went to the

19  ground during this incident. (PAMF-80). No person other than Harper was injured

20  during this incident. (PAMF-81). Harper never laid hands on Koahou. (PAMF-82).

21  After the shooting, Harper exited the Honda and immediately fell to the ground.

22  (PAMF-83).

23      **B.**    **Pre-Shooting Negligence**

24       Koahou escalated the situation when he Tased Harper. (PAMF-85). Koahou

25  Tased Harper in the chest without warning while Harper was operating the Honda.

26  (PAMF-86, 90). Redlands Police Department Policy No. 304.5.2 instructs officers

27  not to Tase a person who is operating a vehicle. (PAMF-89). Redlands Police

28  Department Policy No. 304.5.3 trains officers to avoid Tasing a person in the chest.

(PAMF-90). Koahou failed to give Harper time to comply with the Taser. (PAMF-87). A reasonable officer in Koahou's position would have: established a perimeter in anticipation that Harper could flee; immediately moved to a position of cover and formulated an effective and safe tactical plan; waited for additional officers and a police helicopter unit to assist with containment and tactical deployment to take Harper into custody. (PAMF-91-93). Koahou agrees that he was potentially putting himself at risk by reaching into the Honda. (PAMF-94).

### C.    Police Officer Standards and Training

> Redlands Police Department Policy No. 300.4.1, Use of Force, states:
> Shots fired at or from a moving vehicle are rarely effective and may involve additional considerations and risks.  When feasible, officers should take reasonable steps to move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants.  An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others, Government Code 7286(b). Officers should not shoot at any part of the vehicle in an attempt to disable the vehicle.

(PAMF-95). Basic police officer training teaches that shooting at a moving vehicle is a poor tactic in most scenarios.  If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a vehicle. (PAMF-96). At the time of the shooting, Koahou was trained that shooting the driver of a vehicle could possibly incapacitate the driver, and was also trained that if the driver is incapacitated by gunshots, that could potentially endanger the public. (PAMF-97-98).

Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Koahou to shoot Harper for fleeing. Officers are trained that they cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area. (PAMF-99). Basic police training and standards instruct, and Koahou had been trained as of the time of the shooting, that

deadly force should only be used if there is an immediate or imminent threat of death or serious bodily injury. (PAMF-100). Police officers, including Koahou, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. (PAMF-101).

At the time of the shooting, Koahou was trained that deadly force should only be used as a last resort in the direst of circumstances, when no other reasonable options are available. (PAMF-103). Pursuant to basic police training, deadly force can only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. Subjective fear alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. (PAMF-102). Based on his police officer training, Koahou's goal is to try to de-escalate a situation and use the minimal amount of force necessary. (PAMF-105). Basic police training teaches that an overreaction in using deadly force is excessive force. (PAMF-106).

From the standpoint of basic police training and standards and Redlands Police Department Policy, Koahou's use of deadly force was excessive and unreasonable, including (but not limited to) for the following reasons: (1) this was not an immediate defense of life situation; (2) subjective fear is insufficient to justify a use of deadly force; (3) the shooting violated basic police training; (4) Harper committed no crime involving the infliction of serious injury or death; (5) Koahou could not justify shooting Harper under a fleeing felon theory; (6) Harper was not armed with a gun or knife during this incident; (7) Harper never verbally threatened to harm anyone; (8) Koahou had reasonable alternative measures other

1  than shooting; (9) Koahou showed no reverence for human life when he fired at

2  Harper; (10) police officers are trained that they must justify every shot they fire,

3  and both of Koahou's shots were unjustified. (PAMF-107).

## III.  LEGAL STANDARD

On a motion for summary judgment, the Court must view the evidence in the light most favorable to Plaintiff and make all reasonable inferences in Plaintiff's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). Summary judgment cannot be granted where a genuine dispute exists as to "material facts." Fed. R. Civ. P. 56(c). A factual dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). The court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *United States v. One Parcel of Real Prop.*, 904 F.2d 487, 491–92 (9th Cir. 1990). Further, Rule 56 must be construed "with due regard" for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried by a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is a drastic remedy and therefore trial courts should act "with caution" in granting summary judgment. *Anderson*, 477 U.S. at 255.

## IV.  ARGUMENT

### A.  Plaintiff's Fourth Amendment Claim Survives

#### 1.  *The Shooting Was Excessive and Unreasonable*

When evaluating a 42 U.S.C. §1983 excessive force claim, the inquiry is whether the officer's actions are "objectively reasonable" considering the facts and circumstances confronting them. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007)). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 396). The Court must "'balance the amount of force applied against the need for that force.'" *Bryan v. McPherson*, 630 F.3d 805, 823-24 (9th Cir. 2010) (quoting *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003)). The inquiry is "highly fact-intensive" and involves "no *per se* rules." *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011). "Not all errors in perception or judgment . . . are reasonable," and while courts "do not judge the reasonableness of an officer's actions 'with the 20/20 vision of hindsight,' nor does the Constitution forgive an officer's every mistake." *Id.* Factors to consider on balance include the seriousness of the crime at issue, whether the suspect posed an immediate threat of death or serious bodily injury to the officers or the public, and the availability of alternative methods to effectuate an arrest or overcome resistance. *Graham*, 490 U.S. at 396.

The most important *Graham* factor under the facts of this case is whether Harper or the Honda posed an immediate threat of death or serious bodily injury to Koahou or any other person at the time of the shots. Police training and standards instruct that deadly force can only be used based on an objectively reasonably belief that the person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. DeFoe Decl. at ¶ 6(b)-(d); Cal. Penal Code §835(a)(e). An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances must be instantly confronted and addressed. *Id*. "A simple statement by an officer that he fears for . . . the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). Along these lines, an officer's "desire to resolve quickly a potentially dangerous situation" does not, on its own, justify the use of deadly force. *Id.*

On Plaintiff's facts, neither Harper nor the Honda posed an immediate threat of death or serious bodily injury to any person immediately prior to or at the time of Koahou's two shots, including because no person was in front of the Honda or in its path at the time of the shots. According to Harper, before he was Tased, he tried to surrender, including by stating that he was ready to get out of the Honda, letting go of the steering wheel, and putting his hands up.  The Honda did not move forward until after Harper was shocked by the Taser.  Prior to firing the shots, Koahou commanded witnesses Garcia, Gallo, Guerra, and Salazar to move, and they complied by moving away from the Honda.  When the Honda started to move forward after Harper was Tased, the four civilian witnesses and Koahou were all positioned on the driver's side of the Honda, some distance away from the Honda. When Koahou fired his two shots, he was standing approximately two to six feet away from the Honda, on the driver's side of the Honda. The Honda was moving slowly, approximately 5 miles per hour, at the time of the shots.  After the shooting, Koahou saw that the civilians were standing right next to him. Harper never drove the Honda toward any person.  No person was struck by the Honda, no one had to jump out of the way to avoid being struck by the Honda, and no person other than Harper was injured during this incident.  Given that no person was in immediate danger of being struck by the Honda immediately prior to or at the time of the shots, there was no reason for Koahou to use deadly force against Harper.

The "seriousness of the crime" *Graham* factor also weighs in Plaintiff's favor because Harper did not commit any crime involving the infliction of serious bodily injury or death.  Prior to Koahou using force against Harper, the civilian witnesses punched and choked Harper.  Additionally, police are required to consider what other tactics if any were available to handle the situation.  *See, e.g.*, *Vos. v. City of Newport Beach*, 892 F.3d 1024 (9th Cir. 2018) (finding that despite the short eight-second time frame, in light of the non-lethal, "less intrusive force options available" to the officers).  Koahou had reasonable alternative measures other than shooting.

1   As Mr. DeFoe opines, a reasonable police officer in Koahou's position would have
2   immediately taken a position of cover, requested backup, including a helicopter unit,
3   and set up a perimeter so Harper could be apprehended later.  A reasonable police
4   officer in Koahou's position also would have given Harper additional commands
5   and time to comply with the Taser.

6               *2.  The Fleeing Felon Theory Does Not Apply*

7               Under the facts of this case, Koahou could not shoot Harper simply because
8   Harper was fleeing in the Honda or trying to leave the area.  Given that no person
9   was about to be struck by the Honda when Koahou fired the shots, it appears that
10  Koahou shot Harper only to prevent him from fleeing in the stolen Honda.  The
11  "fleeing felon" theory does not apply to this case because Harper did not commit a
12  felony involving serious bodily injury or death, Koahou had no information that
13  Harper had a firearm or knife during this incident, and no person was in immediate
14  danger of being run over by the Honda at the time of the shots. "[A]bsent any other
15  justification for the use of force, it is unreasonable for a police officer to use deadly
16  force against a fleeing [suspect] who does not pose a sufficient threat of harm to the
17  officer or others."  *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 417 (5th Cir. 2009).
18  "This holds as both a general matter and in the more specific context of shooting a
19  suspect fleeing in a motor vehicle." *Id.* at 417-18 (citing *Kirby v. Duva,* 530 F.3d
20  475, 484 (6th Cir. 2008)); *see also Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1093
21  (C.D. Cal. 2002) ("[t]he primary focus of [the] inquiry . . . remains on whether the
22  officer was in danger at the exact moment of the threat of force") (citing *Medina v.*
23  *Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001)).

24              "The use of deadly force to prevent the escape of all felony suspects,
25  whatever the circumstances, is constitutionally unreasonable.  It is not better that all
26  felony suspects die than that they escape." *Tennessee v. Garner*, 471 U.S. 1, 11
27  (1985). "Law enforcement officers may not shoot to kill unless, at a minimum, the
28  suspect presents an immediate threat to the officer or others, or is fleeing and his

-10-

escape will result in serious threat of injury to persons." *Harris v. Roderick*, 126

F.3d 1189, 1201 (9th Cir. 1997); *see also Curnow v. Ridgecrest Police*, 952 F.2d

321, 325 (9th Cir. 1991); *Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir.

1991);. "Where the suspect poses no immediate threat to the officer and no threat to

others, the harm resulting from failing to apprehend him does not justify the use of

deadly force to do so." *Espinosa*, 598 F.3d 547 (*quoting Garner*, 471 U.S. at 11-12).

### 3. *Plumhoff, Monzon, and Williams are Distinguishable*

Defendants rely on *Plumhoff v. Rickard*, which involved a car chase on a

major interstate with speeds reaching 100 miles per hour. 572 U.S. 765, 769 (2014).

*Plumhoff* is inapposite. *Plumhoff* held only that where a fleeing suspect involved in

a dangerous high-speed car chase that "indisputably posed a danger both to the

officers involved and to any civilians who happened to be nearby," an officer's use

of deadly force is not clearly established as unreasonable. *Id.* at 780. This holding

does not undermine the clearly established law that an officer may not use deadly

force against a fleeing suspect absent an *immediate* risk to officers or bystanders. In

*Plumhoff*, the suspect driver was "swerving through traffic at high speeds" for over

five minutes and passed by more than two dozen civilian motorists, several of whom

were forced to alter course. *Id.* at 776. By contrast, Harper did not drive the Honda

toward any person, and no person was in the Honda's path or potential path at the

time of the shots.

*Monzon v. City of Murrieta*, 978 F.3d 1150 (9th Cir. 2020), also cited by

Defendants, is likewise distinguishable from the instant matter. In *Monzon*, Monzon

pointed the stolen van toward the officers and accelerated in an arc toward the

officers. *Id.* at 1153. The officers fired at Monzon when the van moved in their

direction and in the direction of fellow officers. *Id.* Monzon crashed into a police

cruiser, pushing that cruiser into one of the officers. *Id.* By contrast, here, Harper

never pointed the Honda toward Koahou or any other person, and Koahou was to

the side of the Honda, out of its path, when he fired the shots, unlike the officers in *Monzon*, who were directly in front of the van.

Nor is *Williams v. City of Grosse Pointe Park*, 496, F.3d 482 (6th Cir. 2007) analogous.  In *Williams*, the suspect accelerated and knocked down an officer.  By contrast, Harper never injured anyone, Koahou never went to the ground, and the Honda was moving slowly, about 5mph, at the time of the shots.

**B.    Koahou is Not Entitled to Qualified Immunity**

**1.    *Disputed Issues of Material Fact Preclude Granting Summary Judgment***

Disputed issues of material fact preclude granting qualified immunity on summary judgment. *See, e.g.*, *Villanueva*, 986 F.3d at 1173; *Johnson v. Jones*, 515 U.S. 304, 313 (1995).  Based on the overwhelming number of disputed factors bearing on the reasonableness of the use of deadly force, granting qualified immunity at this stage would violate this well-established precedent. *See Brosseau v. Haugen*, 543 U.S. 194, 206 (2004) (Stevens J., dissenting) (The reasonableness of an officer's belief "…is a quintessentially 'fact-specific' question, not a question that judges should try to answer 'as a matter of law…"). Here, the disputed issues of material fact bearing on whether Koahou's use of deadly force was reasonable preclude affording qualified immunity to Koahou at this stage. Although this incident was captured on video, reasonable fact finders can draw divergent conclusions from what the video evidence shows. *See, e.g., S.R. Nehad v. Browder*, 929 F.3d 1125, 1132–39 (9th Cir. 2019).  Disputed issues of material fact in this case include whether Koahou escalated the situation when he Tased Harper when Harper was operating a vehicle, whether the Honda moved forward as a result of Harper being shocked by the Taser, the speeds at which the Honda was travelling prior to the shots and at the time of the shots, whether any person was in the Honda's potential path at the time of the shots, whether Harper or the Honda posed an immediate threat of death or serious bodily injury at the time of the shots, and

whether the Honda only accelerated after the shooting as a result of Harper being struck by shots, interfering with his ability to safely operate the Honda.

        2.    *The Law Was Clearly Established at the Time of the Shooting*

Harper's constitutional right to be free from excessive force under this set of facts was clearly established at the time of the shooting. The Ninth Circuit in *Villanueva* recently stated, "[i]n light of [the 1996 case] *Acosta*, all reasonable officers would know it is impermissible to shoot at a slow-moving car when he could 'simply step[] to the side' to avoid danger." 986 F.3d at 1172 (quoting *Acosta*, 83 F.3d at 1146). Several Ninth Circuit cases published prior to this incident have held the same. *See, e.g.*, *Orn*, 949 F.3d at 1179 (denying qualified immunity and holding that "at least seven circuits had held that an officer lacks an objectively reasonable basis for believing that his own safety is at risk when firing into the side or rear of a vehicle moving away from him"); *A.D.*, 712 F.3d at 458; *Adams*, 473 F.3d at 994 (denying qualified immunity where suspect's nondangerousness placed the case squarely "within the obvious" and holding that shooting driver of slow-moving car was unreasonable where the driver posed no threat); *Acosta*, 83 F.3d at 1146 (finding that a reasonable officer "would have recognized that he could avoid being injured when the car moved slowly, by simply stepping to the side"). By contrast, "[t]he cases upholding the use of deadly force to protect the public from a fleeing motorist have typically involved suspects who drove at extremely high speeds, endangered other motorists on the road, or intentionally targeted police officers with their vehicles." *Id.* at 1180 (distinguishing *Orn* from *Scott v. Harris*, 550 U.S. 372 (2007)).

Courts in other circuits, as well as district courts, have reached the same conclusion. *See, e.g.*, *Godawa v. Byrd*, 798 F.3d 457 (6th Cir. 2015) (holding that officers "may not use deadly force once the car moves away, leaving the officer and bystanders in a position of safety); *Kirby*, 530 F.3d 475 (denying qualified immunity because a reasonable officer would not have believed that a vehicle moving slowly

-13-

1  in a non-aggressive manner could have posed a threat of serious physical harm);

2  *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005) (holding that where the suspect's

3  vehicle no longer "presents an imminent danger," an officer is not entitled to use

4  deadly force against the vehicle or its driver and reasoning that although the suspect

5  driver "could have" used the vehicle to kill or injure the involved officer); *Scott v.*

6  *Edinburg*, 346 F.3d 752, 757 (7th Cir. 2003) (denying summary judgment to the

7  officer where the car may have been moving away at the time the officer fired);

8  *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003) (affirming the

9  denial of qualified immunity where, on the plaintiff's facts, the car was traveling

10  slowly and that the officer was not in the vehicle's path, but off to the side when he

11  fired the lethal shots); *Kosakoff v. City of San Diego*, 2010 WL 1759455, at *6 (S.D.

12  Cal. Apr. 29, 2010) (denying qualified immunity in part because the car was moving

13  slowly and the shots took place after the officer was already in a position of safety).

14       In *Orn v. City of Tacoma*, the Ninth Circuit appropriately viewed the facts in

15  the light most favorable to the plaintiff and affirmed the district court's denial of

16  summary judgment and qualified immunity. In *Orn*, the plaintiff presented evidence

17  that the officers were never at risk of being struck by Orn's vehicle because they

18  were never in the vehicle's path of travel. 949 F.3d at 1174-76. According to the

19  plaintiff's version of the events, the shooting officer "could not reasonably have

20  feared for his own safety because he was on the side of Orn's vehicle as it was

21  traveling away from him." *Id*. at 1175. The Ninth Circuit found that "Orn's vehicle

22  was moving at just five miles per hour [and the shooting officer] could therefore

23  have avoided any risk of being struck by simply taking a step back, a common-sense

24  conclusion." *Id*. Despite Orn having struck police vehicles prior to the shooting,

25  the *Orn* court rejected the defendants' argument that the shooting officer reasonably

26  feared for the safety of his partner officer when he mistakenly believed that the

27  officer "may have been standing in the area where Orn's vehicle was headed." *Id*. at

28  1176. This Court should reach the same conclusions in the instant case, where, on

-14-

Harper's facts, the Honda was moving at approximately five miles per hour and Koahou and the civilians were all to the side of the Honda, out of its path.  Like *Orn*, Harper was driving the car away from the officer and the civilians.

In *Villanueva*, two officers fired lethal shots into an occupied vehicle when the officers, like Koahou, were positioned to either side of the vehicle, out of its path.  In that case, the decedent led officers on a high-speed chase at speeds of 50 to 70 miles per hour and then attempted to execute a three-point turn when the shooting occurred.  The key question on appeal was "whether Villanueva accelerated or attempted to accelerate toward the officers before the officers shot at the Silverado and its occupants."  *Id.* at 1170.  The Ninth Circuit viewed the facts in the light most favorable to the plaintiffs and found that "a reasonable jury could conclude that the officers used excessive force, because they 'lacked an objectively reasonable basis to fear for [their] own safety, as [they] could simply have stepped back [or to the side] to avoid being injured.'" *Id.* at 1171 (quoting *Orn*, 949 F.3d at 1179).  Relying on *Acosta* and *Orn*, the *Villanueva* court denied qualified immunity and found that the shooting violated the decedent's and passenger's constitutional right to be free from excessive force under these circumstances.  *Id.* at 1172-73.

In *A.D.*, officers pursued the driver of a stolen vehicle who traveled without headlights on the freeway at speeds over 100 miles per hour.  712 F.3d at 450.  A jury considered the facts of the case—that the suspect struck a fence, backed into a police vehicle, moved forward, used profanity, and then backed into the police vehicle two more times before the shooting officer fired into the suspect's vehicle through the passenger-side window—and found that the shooting violated the suspect's constitutional rights.  *Id.* at 450-51.  The Ninth Circuit affirmed the lower court's denial of qualified immunity.  *Id.* at 452.

The above-cited cases are sufficient to put Koahou on notice that shooting Harper under this set of facts would violate his constitutional right to be free from excessive force.  "[A] decision with identical facts is not required to clearly

-15-

1    establish" a constitutional right.  *Scott v. Smith*, 109 F.4th 1215, 1227 (9th Cir.

2    2024); *see also N.S. v. Kan. City Bd. of Police Comm'rs*, 143 S.Ct. 2422, 2423

3    (2023); *Ziglar v. Abbasi,* 582 U.S. 120, 151-52 (2017). There can be "notable

4    factual distinctions" so long as the prior decisions give "reasonable warning" that

5    the conduct is unconstitutional. *Scott*, 109 F.4th at 1227 (citing *Hope v. Pelzer*, 536

6    U.S. 730, 739-41 (2002)).

7             *3.      Koahou's Training Placed Him on Notice*

8             It is well established that a police officer's violation of police training weighs

9    against granting qualified immunity. *See Drummond v. City of Anaheim*, 343 F.3d

10   1052, 1062 (9th Cir. 2003) ("training materials are relevant not only to whether the

11   force employed in this case was objectively unreasonable . . . but also to whether

12   reasonable officers would have been on *notice* that the force employed was

13   objectively unreasonable"). An officer who makes a conscious decision to violate

14   basic training guidelines, designed to safeguard the subject, should not be heard

15   subsequently to claim to have made a reasonable mistake or to have reasonably

16   believed their decision to be lawful. *See id*.  Prior to the shooting, Koahou had been

17   trained that police officers should take reasonable steps to move out of the path of

18   an approaching vehicle instead of discharging their firearm at the vehicle or its

19   occupants, and an officer should only discharge a firearm at vehicle or its occupants

20   when the officer reasonably believes that there are no other reasonable means to

21   avert the imminent threat of the vehicle. Koahou had also been trained that a threat

22   is "imminent" only when a reasonable officer in the same situation would believe

23   the person has the present ability, opportunity, and apparent intent to immediately

24   cause death or serious bodily injury.  Koahou was trained that shooting the driver of

25   a vehicle could potentially incapacitate the driver, which could prevent the driver's

26   ability to effectively operate the vehicle. Koahou violated this training when he fired

27   at Harper while Harper was operating the Honda, notwithstanding that no person

28

1  was in the Honda's potential path during the shots and no person was in immediate

2  danger of being struck by the vehicle.

### C.    Plaintiff's State Law Claims Survive Because the Use of Deadly Force Was Unreasonable

#### 1.    Battery

This Court should deny Defendants' request for summary judgment on Plaintiff's battery claim for the reasons discussed above in connection with Plaintiff's excessive force claim. Under California law, battery claims arising out of excessive force by a peace officer are evaluated by way of traditional Fourth Amendment analysis under *Graham*, *supra*. *See Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159, 1171 (9th Cir. 2013); *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1121 n.6 (2004) ("Federal civil rights claims of excessive force are the federal counterpart to state battery and wrongful death claims; in both, the plaintiff must prove the unreasonableness of the officer's conduct. Accordingly, federal cases are instructive."). The shooting was objectively unreasonable and contrary to police training as described in section IV(A)(1)-(2) of this brief and in Scott DeFoe's declaration.  At the time of Koahou's two shots, Koahou and the civilian witnesses were all to the side of the Honda, out of the Honda's path or potential path, and no person was in immediate danger of being struck by the Honda.  No person had to jump out of the way to avoid being struck by the Honda. Harper never drove the Honda toward Koahou or any other person, never verbally threatened to harm anyone, never injured anyone, and never brandished a weapon. Although Koahou may have had some concern that Harper could potentially harm the public if he drove away in the Honda, a potential threat is insufficient to justify using deadly force, as is a subjective fear.  Therefore, the shooting was objectively unreasonable under California law.

//

//

2.    *Negligence*

Under California negligence law, "peace officers have a duty to act reasonably when using deadly force." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 629 (2013); CACI No. 441. The negligence analysis is broader than the Fourth Amendment analysis, which "tends to focus more narrowly than state tort law on the moment when deadly force is used, placing less emphasis on pre-shooting conduct." *Hayes*, 57 Cal. 4th at 638; *see also Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1125 (9th Cir. 2021) ("the officer's pre-shooting decisions can render his behavior unreasonable under the totality of the circumstances, even if his use of deadly force at the moment of the shooting might be reasonable in isolation."). Pre-shooting tactics "are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability. Such liability can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes*, 57 Cal. 4th at 639.

Here, Koahou made a number of tactical blunders prior to shooting Harper that this Court should consider as part of the totality of circumstances surrounding the shooting of Harper.  For example, in violation of basic police training that teaches officers to de-escalate a situation, Koahou escalated the situation when he Tased Harper in the chest without warning when Harper was operating the Honda, and then Koahou failed to give Harper time to comply after he Tased him.  Koahou also potentially put himself at risk when he reached into the Honda.  The Honda only moved forward after Harper was shocked by the Taser and after Koahou contacted the gear shift. A reasonable officer in Koahou's position would have immediately moved to a position of cover and formulated a safe and effective tactical plan, including waiting for backup officers and a police helicopter unit to assist with containment and tactical deployment to take Harper into custody.

//

### 3.    Bane Act

Plaintiff's Bane Act claim survives because Koahou acted with reckless disregard for Harper's constitutional right to be free from excessive force when he shot him when no person was in immediate danger of being struck by the Honda and Koahou and the civilians were to the side of the Honda, out of its path. "[I]t is not necessary for the defendants to have been 'thinking in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'" *Reese v. County of Sacramento,* 888 F.3d 1030, 1045 (9th Cir. 2018). (quoting *United States v. Reese*, 2 F.3d 870, 855 (9th Cir. 1993)).  This was not the "direst of circumstances" and shooting Harper was not Koahou's "last resort." Therefore, and for the reasons articulated in section IV(A)(1)-(2) of this brief, Koahou is not entitled to summary judgment on Plaintiff's Bane Act claim.

### 4.    Defendants Are Not Entitled to Immunity on Plaintiff's State Law Claims

Qualified immunity does not apply to Plaintiff's state law claims, and the California Government Code provisions cited by Defendants do not confer immunity on peace officers for discretionary acts involving the unreasonable use of force. *See, e.g.*, *Sharp v. County of Orange*, 871 F.3d 901, 920–21 (9th Cir. 2017) (§821.6 "is limited to malicious-prosecution claims"); *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007) (denying immunity under California law where the arrestee's claims arose from excessive force and were not based on acts taking place during an investigation); *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002); *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1249 (N.D. Cal. 2015) ("Defendant's conduct at issue in this case—alleged excessive force and unlawful seizure—is 'not the sort of conduct to which section 821.6 immunity has been held to apply.'") (citing *Blankenhorn*, 485 F.3d at 488); *Knapps v. City of Oakland*, 2009 WL 2390262. (N.D. Cal. 2009); *Garcia v. City of Merced*, 637 F.

Supp.2d 731 (E.D. Cal. 2008) (declining to grant immunity under California's discretionary immunity statute where arrestee alleged the force was unreasonable); *Price v. County of San Diego*, 990 F. Supp. 1230 (S.D. Cal. 1998) (California statute does not confer immunity upon peace officer for discretionary acts if officer uses unreasonable force); Cal. Gov. Code §845.8 (immunity clearly limited to damages caused by "a person resisting arrest," not caused by an officer).

Koahou did not shoot Harper as part of an investigation as contemplated by Sections 820.2 and 821.6. Under Section 820.4, an officer can still be held liable if he didn't exercise "due care" "in the execution or enforcement of any law." Koahou failed to exercise "due care" when he shot Harper notwithstanding that Harper posed no immediate threat of death or serious bodily injury.

As Koahou is not immune, nor is the City of Redlands, which is liable for Koahou's misconduct under Government Code §815.2.

## V.    CONCLUSION

For each of these reasons, Plaintiff respectfully requests that this Court deny Defendants' motion for summary judgment in its entirety.

Dated: January 17, 2025               LAW OFFICES OF DALE K. GALIPO


                                      By: _____*/s/ Renee V. Masongsong*_____
                                          Dale K. Galipo
                                          Renee V. Masongsong

1

**L.R. 11-6.2. Certificate of Compliance**

2      The undersigned, counsel of record for Plaintiff JUSTIN HARPER, certifies

3   that this brief contains 6,960 words, which complies with the word limit of L.R. 11-

4   6.2

5

6

7

8   Dated: January 17, 2025                    LAW OFFICES OF DALE K. GALIPO

9

10                                    By:  _____*/s/ Renee V. Masongsong*_____

11                                              Dale K. Galipo
                                               Renee V. Masongsong
12                                             Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28