# EXHIBIT 4

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JUSTIN CODY HARPER,            )
                               )
        Plaintiff(s),          )      **CERTIFIED COPY**
                               )
   vs.                         )  Case No.
                               )  5:23-cv-00695-SSS-DTBx
CITY OF REDLANDS, REDLANDS     )
POLICE DEPARTMENT, POLICE      )
OFFICER KOAHOU, and DOES       )
1-10,                          )
                               )
        Defendant(s).          )
_____)

REMOTE PROCEEDING

```
DEPOSITION OF:   GREGORY GALLO
TAKEN BY     :   JAMES R. TOUCHSTONE, ESQUIRE
Commencing   :   10:00 A.M.
Location     :   Rancho Cucamonga, California  91739
Day, Date    :   Monday, August 19, 2024
Reported by  :   JOLYNE K. ROBERTS, CSR NO. 10823
JOB No.      :   24-141097A
```



THE SULLIVAN GROUP OF COURT REPORTERS
SULLIVANCOURTREPORTERS.COM
PHONE 562.888.6488

```
 1              (Defendants' Exhibit 2 was marked for
 2          identification and is attached hereto.)
 3          MR. TOUCHSTONE:  And Counsel, I'll start this at
 4  4 minutes and 20 seconds into the recording.  I'm going
 5  to play this for you, and hopefully you'll be able to
 6  hear it.
 7          THE REPORTER:  Counsel, you don't need me to
 8  write the audio, correct?
 9          MR. TOUCHSTONE:  Correct, you do not need to.
10          THE REPORTER:  Thank you.
11                       [Audio Playing]
12      Q    BY MR. TOUCHSTONE:  I'm pausing the audio at
13  4:34.  Do you hear the officer saying he's trying to 215
14  the car, and then you hear him -- sounds like he's
15  shouting at somebody, Move out of the way; I'm going to
16  shoot him?
17          Do you remember hearing any of those statements?
18      A    Yes.
19      Q    Okay.
20      A    That's why I removed myself from halfway in the
21  car and backseat on the left and got out of the way, and
22  thought the officer had the situation under control.  And
23  I try to always oblige whatever any officer ever says.
24      Q    All right.  I'm going to refer you back to your
25  statement here for one moment and play some additional
```

THE SULLIVAN GROUP OF COURT REPORTERS

```
 1  portions of the audio.
 2       A    Sure.
 3       Q    Says:
 4            Gallo heard police sirens arrive at
 5            the scene and saw a uniformed police
 6            officer later identified as Redlands
 7            Police Officer Nick Koahou run towards
 8            the Honda.  Gallo told the man holding
 9            Harper around the head that police are
10            here; they got this now.
11            Do you recall making that statement to the
12  heavyset man?
13       A    Yes.  Because previously, seconds before the
14  officer hollered that at me, We've got this, or whatever
15  his terms were, and I relayed that to this gentleman so
16  that we can both get out of the police's way.  And since
17  there were multiple sirens on San Bernardino, I figured
18  we'll have more police come into the situation.
19            And with an officer, you know, I think first
20  pulling his Taser, I wasn't going to interfere.  I'm
21  doing exactly what he's saying.
22       Q    Okay.  Now, when you hear this officer yelling
23  at you, did you look at the officer and see him running
24  towards you?
25       A    Yes.
```

```
 1        Q    Okay.  And when you saw him running towards you,
 2   did he have any weapons in his hands?
 3        A    Not until we got probably 10, 15 feet from me, I
 4   believe.
 5        Q    Okay.
 6        A    And I'm pretty sure that was a Taser.
 7        Q    All right.  I'm going to continue playing from
 8   4:34 onward.
 9                       [Audio Playing]
10            MR. TOUCHSTONE:  All right.  I'm pausing the
11   audio at 4:45.
12        Q    BY MR. TOUCHSTONE:  Did you hear statements of,
13   Get out or I'm going to shoot you?
14        A    Yes, I did.
15        Q    All right.  And at the time that the officer was
16   making those statements -- first off, did you hear him
17   say that on the day of the incident?
18        A    Yes.
19        Q    Where were you standing when you heard him make
20   those statements?
21        A    I was outside the car and back this way
22   [indicating].  Not that far, probably five, six feet
23   because as he was coming up, he was getting closer to the
24   car and telling me, you know, We've got this, or I've got
25   this.
```

27

1      ==I moved out.  I didn't want to abandon the==
2   ==situation totally.  I wasn't going to run back in my==
3   ==house or anything.==
4      ==Q    Now, when you say you were back this way,==
5   ==towards the Honda --==
6      ==A    Towards the left rear of it, yes.==
7      Q    And when he was saying get out of the car.
8   Facedown or I'm going to shoot you, did you hear the
9   officer on the day of the incident make those statements?
10     A    Yes.
11     Q    And at the time that he was making those
12  statements, did he still have his Taser in his hand?
13     A    Well, he didn't pull that out when he was far
14  away.  I think he was much closer to the car probably to
15  ascertain what was going on.
16          He must have been told that someone was trying
17  to steal a car, and when he got -- I would imagine 10, 15
18  feet away from the car coming towards the car, told us as
19  he's coming that far or maybe back a few more steps, I --
20  I've got this, I realized it was the officer.  I moved
21  out; he moved into place.  And -- and --
22     Q    And when you saw him draw a weapon, you're
23  pretty sure it was a Taser?
24     A    I believe so; I thought so.
25          MR. TOUCHSTONE:  Okay.  Now going back to the

28

```
 1              Taser and remove his service revolver.
 2              Koahou told Harper, Stop, stop, or --
 3              strike that.
 4              Koahou told Harper, Stop right now.
 5              Don't move, or you will be shot.
 6              Harper was able to disengage the
 7              emergency brake and accelerate
 8              forward.  Koahou was standing
 9              approximately two to four feet away
10              from Harper when he fired two rounds
11              from his handgun.  Gallo did not know
12              if Harper was struck by the gunshot.
13      Q       BY MR. TOUCHSTONE:  Does that sound accurate
14  based on your recollection?
15      A       Yes, sir.
16      Q       Now, when you say that Officer Koahou was
17  standing two to four feet away from Harper, can you
18  orient me as far as where the vehicle was, where Officer
19  Koahou was standing, et cetera, if you recall?
20      A       The vehicle was in a, I believe, a south -- not
21  I believe -- but it was in a southwest facing direction.
22  Officer Koahou was to the left side of the vehicle.
23  Can't remember who was on the right side and further up.
24              And -- yes.  And the statement is probably -- it
25  seems correct, too.  Approximately two to four feet away
```

```
 1   from Harper when he fired two rounds from his handgun.
 2        Q    Now, when the vehicle began accelerating
 3   forward, did you have any concerns about the safety of
 4   anybody in the immediate area?
 5        A    I sure did.
 6        Q    And describe that for me.
 7        A    Well, San Bernardino Avenue is a fairly busy
 8   street at certain times of the day, a lot of work traffic
 9   going back and forth; a lot of pedestrians; kids coming
10   from school and such because we've got a school just a
11   few blocks away or a block and a half away.
12             And there -- I think there was the other
13   gentleman friend, the heavyset guy that we were
14   discussing.  He was, I believe, over on the right side of
15   the vehicle as it was angled towards San Bernardino
16   Avenue.
17             And as the car accelerated, if I may, he hit the
18   curb, and some of the suspension was partially destroyed
19   when he did that because the curb, like I mentioned
20   earlier, was not just a standard six- or eight- or
21   ten-inch curb, but it was up there a bit.  And some of
22   the debris, I believe, was left on the street because he
23   hit it hard.  Jumped up over that, and then made it
24   between two palm trees.
25        Q    Pause you right there.
```

```
 1              MR. TERRELL:  Let me object.  Calls for a legal
 2   conclusion; expert opinion; and speculation.
 3              MR. TOUCHSTONE:  I don't think I have any --
 4   well, strike that.  I do have a few more quick questions.
 5              THE WITNESS:  Yes, sir.
 6       Q     BY MR. TOUCHSTONE:  Were you harmed as a result
 7   of this incident, physical harm?
 8       A     No.
 9       Q     To your knowledge, did the heavyset gentleman
10   who was struggling with Mr. Harper in the vehicle, did he
11   suffer any physical harm?
12       A     I don't believe so.
13       Q     To your knowledge, did Mr. Salazar suffer any
14   physical harm as a result of this incident?
15       A     I don't believe so.
16       Q     And to your knowledge, did Officer Koahou suffer
17   any physical harm as a result of this incident?
18       A     I don't think so.
19              MR. TOUCHSTONE:  All right.  I have nothing
20   further at this time.
21              And Jim, maybe we could take a quick break.  I
22   assume you have some questions?  Does that work?
23              MR. TERRELL:  Break would be nice, thank you.
24              MR. TOUCHSTONE:  Let's go off the record at this
25   time.  We'll take a 10-minute break and come back at
```

THE SULLIVAN GROUP OF COURT REPORTERS

```
 1   11:15 A.M.
 2      [Break in proceedings from 11:04 A.M. to 11:15 A.M.]
 3           MR. TOUCHSTONE:  We're back on the record, and
 4   as indicated immediately prior to the break, I have no
 5   further questions at this time.
 6           I don't know if you have any, Mr. Terrell.
 7           MR. TERRELL:  Yes, I do, thank you.
 8
 9                        EXAMINATION
10   BY MR. TERRELL:
11      Q    On the first page of the report, the interview
12   page on the fourth paragraph, the bottom line -- I'll
13   give you a second to get to that fourth paragraph -- it
14   says:
15                When Harper started driving forward,
16                Gallo saw an unknown male standing
17                approximately 15 to 20 feet from the
18                right front fender of the Honda.
19                Do you see that, sir?
20      A    Yes, I do.
21      Q    Is that a correct statement?
22      A    I believe so.
23      Q    Well, as you sit here today, can you recall that
24   event and recall that person?
25      A    I can't remember if it was Mr. -- young
```

46

```
 1  Mr. Salazar or the heavyset fellow or his coworker that
 2  was earlier hit by Mr. --
 3           What's his name?
 4      Q    Mr. Harper?
 5      A    Harper, Justin Harper, that was earlier hit by
 6  Mr. Harper.
 7      Q    Okay.  Let me ask you about that.  Did you learn
 8  at some time or have a discussion with any individuals
 9  about what happened prior to this incident?
10      A    I believe the heavyset gentleman explained to me
11  what had transpired just five, ten minutes earlier with
12  he and his coworker in a work truck getting hit by this
13  gentleman.
14      Q    When you say getting hit by, there was a
15  collision between a vehicle that Mr. Harper was driving
16  and their vehicle?  Is that what we're talking about?
17      A    Correct.
18      Q    And one more line here, it talks about -- the
19  fifth line, the last sentence where you indicate that the
20  officer was approximately two to four feet away from
21  Harper when he fired the two rounds.
22           Do you see that?
23      A    Yes, I do see that, sir.
24      Q    Okay.  Thank you very much.
25           And you're estimating that it was approximately
```

1   two to four feet away, roughly, when the shots occurred,
2   the distance between the officer and the car?
3       A    Yes, approximately.
4       Q    Okay.  And going back earlier when you were
5   talking about a -- is it the front yard you were in when
6   this incident started?
7       A    Yes, I was in my front yard, yes.
8       Q    And at any time backing up, as you described it
9   onto the street, at any time did Mr. Harper drive onto
10  your yard?
11      A    No, he came very close.  I actually thought he
12  might be going up over the curb because I moved to the
13  left then, and that's where I was, but not -- it was only
14  a few steps because I could see the angle of the car
15  turning and just moved out of the way because I didn't
16  know if it was going to stop or not.
17      Q    Now, you described the curb.  Can you tell me
18  how many inches that curb is, roughly?
19      A    In front of my house right by my driveway, it's
20  probably 9 inches, 10 inches, something like that.
21      Q    Okay.
22      A    Exactly, I don't know, but approximately there.
23           MR. TERRELL:  Thank you.  That's all I have.
24           MR. TOUCHSTONE:  No further questions.
25           We'll stipulate that the transcript take place

THE SULLIVAN GROUP OF COURT REPORTERS

```
 1                    CERTIFICATE OF

 2              CERTIFIED SHORTHAND REPORTER

 3
            The undersigned Certified Shorthand Reporter of
 4   the State of California does hereby certify:
            That the foregoing proceeding was taken before
 5   me at the time and place therein set forth, at which time
     the witness was duly sworn by me;
 6          That the testimony of the witness and all
     objections made at the time of the examination were
 7   recorded stenographically by me and were thereafter
     transcribed, said transcript being a true and correct
 8   copy of my shorthand notes thereof;
            That the dismantling of the original transcript
 9   will void the reporter's certificate.

10          In witness thereof, I have subscribed my name

11   this date:  August 27, 2024

12

13              [signature: Jolyne K. Roberts]

14          _____

                JOLYNE K. ROBERTS,
15              CSR NO. 10823

16

17

18

19

20

21
            (The foregoing certification of
22          this transcript does not apply to any
            reproduction of the same by any means,
23          unless under the direct control and/or
            supervision of the certifying
24          reporter.)

25
```

THE SULLIVAN GROUP OF COURT REPORTERS