

James R. Touchstone, SBN 184584
  jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
  dlr@jones-mayer.com
Scott Wm. Davenport, SBN 159432
  swd@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone:  (714) 446-1400
Facsimile:  (714) 446-1448

Attorneys for Defendants,
CITY OF REDLANDS and OFFICER KOAHOU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN CODY HARPER, | Case No.:  5:23-CV-00695-SSS (KK) |
| Plaintiff, | *Judge:*  Hon. Sunshine S. Sykes |
| v. | **DEFENDANTS' REPLY TO PLAINTIFF'S STATEMENT OF UNCONTROVERTED FACTS** |
| CITY OF REDLANDS, REDLANDS POLICE DEPARTMENT, POLICE OFFICER KOAHOU, and DOES 1 through 10, inclusive, | Date:    February 28, 2025<br>Time:    2:00 p.m.<br>Ctrm:    2 |
| Defendants. | |

**TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Defendants CITY OF REDLANDS and OFFICER KOAHOU hereby submit this Reply to Plaintiff's Statement of Uncontroverted Facts. As set forth herein, to the extent that Plaintiff's Additional Facts are supported by admissible evidence, Defendants do not dispute them for the purposes of this motion; however, they are insufficient to establish a triable issue of material fact.

/ / /

/ / /

/ / /

| DEFENDANTS' UNCONTROVERTED FACTS AND EVIDENCE | PLAINTIFF'S RESPONSE & DEFENDANTS' REPLY THERETO |
|---|---|
| 1.  On September 9, 2021, at approximately 4:00 a.m., Plaintiff Justin Harper smoked methamphetamine, taking approximately "10 hits."<br>**EVIDENCE**<br>Harper Depo at 23-24. | **Plaintiff's Response:**  Undisputed that this was Mr. Harper's testimony; disputed to the extent that it was unknown to Officer Koahou at the time of the shooting.<br><br>**Defendants' Reply:  Undisputed** |
| 2.  Ever since he was 18, Harper had smoked methamphetamine every few hours, conduct which would cause him to become "irritated" and which had caused him to get into approximately 10 to 15 physical fights.<br>**EVIDENCE**<br>Harper Depo at 25. | **Plaintiff's Response:**  Undisputed that this was Mr. Harper's testimony; disputed to the extent that it was unknown to Officer Koahou at the time of the shooting.<br><br>**Defendants' Reply:  Undisputed** |
| 3.  Harper has a criminal history which was so extensive that he had trouble recalling it during his deposition, but he did admit that he had a prior "strike" prior, another prior for felony evading, and was on "PTRS" (a cross between parole and probation) at the time of these events.<br>**EVIDENCE**<br>Harper Depo at 21-22. | **Plaintiff's Response:**  Undisputed that this was Mr. Harper's testimony; disputed to the extent that it was unknown to Officer Koahou at the time of the shooting.<br><br>**Defendants' Reply:  Undisputed** |
| 4.  Harper also admitted that he had been expelled from school in the Fourth Grade, he never went to high school, he had never had a "real job" and he never obtained a driver's license.<br>**EVIDENCE** | **Plaintiff's Response:**  Undisputed that this was Mr. Harper's testimony; disputed to the extent that it was unknown to Officer Koahou at the time of the shooting.<br><br>**Defendants' Reply:  Undisputed** |

| | |
|---|---|
| Harper Depo at 16-18, 26. | |
| 5.   Approximately 8 hours later, Harper and his passenger, a woman named Lia Moore, were driving in a stolen Toyota Tundra pickup truck.<br>**EVIDENCE**<br>Harper Depo at 22-24, 28, 31. | Undisputed. |
| 6.   As Harper was driving, he became aware that Officer Koahou was behind him and tried to get away from him by running red lights and driving at speeds of 85 to 90 mph.<br>**EVIDENCE**<br>Harper Depo at 32-33. | **Plaintiff's Response:**  Disputed on the basis that there is no objective evidence regarding Harper's speed, and Harper's testimony regarding the speeds were based on speculation.<br><br>**Defendants' Reply:  Undisputed that Harper himself testified to this fact and that it constitutes an admission.** |
| 7.   Harper failed to stop at a stop sign, struck a curb, lost control, and struck a work vehicle driven by Joseph Garcia and in which Corey Guerra was a passenger.<br>**EVIDENCE**<br>Harper Depo at 34; Garcia Depo at 12, 19-20; Guerra Depo at 9, 11-12. | Undisputed. |
| 8.   After striking the work vehicle, Harper did not stop but instead fled the scene in the stolen Toyota.<br>**EVIDENCE**<br>Harper Depo at 34; Garcia Depo at 21-22; Guerra Depo at 13. | Undisputed. |
| 9.   However, the stolen Toyota was damaged to the point that it could no longer be driven. | Undisputed. |

| | |
|---|---|
| **EVIDENCE** Harper Depo at 34-35. | |
| 10. Harper abandoned the stolen Toyota and both he and Moore fled on the scene on foot. **EVIDENCE** Harper Depo at 35-37. | Undisputed. |
| 11. Meanwhile, Garcia and Guerra were driving around and attempting to locate Harper after he had hit their work vehicle. **EVIDENCE** Garcia Depo at 33; Guerra Depo at 15. | Undisputed. |
| 12.  As Garcia and Guerra were searching for Harper, Harper approached them and asked for a ride, but once again fled on foot when he saw they were the two men he had struck with the stolen Toyota. **EVIDENCE** Garcia Depo at 27; Guerra Depo at 16-17. | Undisputed. |
| 13. Harper ran through multiple yards attempting to evade Officer Koahou as well as Garcia and Guerra. **EVIDENCE** Koahou Depo at 14. | Undisputed. |
| 14. Meanwhile, Martin Salazar was in the driveway of his home detailing his aunt's black Honda Accord and had the car running to allow the air conditioner to cool the inside of the car. **EVIDENCE** Salazar Depo at 15-16. | Undisputed. |

| | |
|---|---|
| 15. Harper approached the black Honda, jumped in, and attempted to drive off.<br>**EVIDENCE**<br>Harper Depo at 38-39; Salazar Depo at 21-22. | **Plaintiff's Response:** Disputed to the extent that the emergency brakes on the Honda were engaged at this time.<br>**EVIDENCE**<br>"Exhibit 3" (Garcia Depo) at 39:8-25; "Exhibit 5" (Guerra Depo) at 22:13-25. 24:9-13; "Exhibit 6" (Salazar Depo) at 25:8-16.<br><br>**Defendants' Reply: Undisputed** |
| 16. When Salazar yelled at Harper to get out and tried to prevent him from driving off, Harper used force to try shake Salazar from the car causing him to lose his balance and get dragged by the car.<br>**EVIDENCE**<br>Salazar Depo at 23, 27-28. Garcia Depo at 38 | **Plaintiff's Response:** Disputed.<br>**EVIDENCE**<br>Neither Salazar nor Garcia testified that Harper went hands on with any of the civlians. Salazar testified that the driver's side door of the Honda contacted him and knocked him off balance.<br>"Exhibit 6" (Salazar Depo) at 23, 27-28.<br>When Harper was in the Honda, two civilians yanked on Harper from either side and choked Harper.<br>"Exhibit 2" (Harper Depo) at 42:20-24, 47, 2-5.<br><br>**Defendants' Reply: Undisputed in that the evidence speaks for itself.** |
| 17. At this moment, Garcia and Guerra arrived on scene and saw the struggle between Salazar and Harper.<br>**EVIDENCE**<br>Garcia Depo at 34-35, 38; Guerra Depo at 20-21. | Undisputed. |

| | |
|---|---|
| 18. When Salazar yelled for help, his neighbor Greg Gallo and Garcia attempted to assist in forcing Harper from the car while Guerra called 911. **EVIDENCE** Harper Depo at 40-42; Garcia Depo at 39-40, 44-47; Guerra Depo at 25-28; Salazar Depo at 26; Gallo Depo 21-23. | Undisputed. |
| 19. The struggle between the men became physical with the men attempting to subdue and strike Harper and pull him from the car. **EVIDENCE** Harper Depo 40-42, 49; Garcia Depo at 39-40, 44-46; Guerra Depo at 25-28; Salazar Depo at 26, 31-32; Gallo Depo 21-23. | **Plaintiff's Response:** Disputed. **EVIDENCE** There is no evidence that Harper went hands on with any of the civilians. When Harper was in the Honda, two civilians yanked on Harper from either side and choked Harper. "Exhibit 2" (Harper Depo) at 42:20-24, 47, 2-5. **Defendants' Reply: Undisputed in that the evidence speaks for itself.** |
| 20. When Officer Koahou arrived on scene, he observed the men struggling with Harper and ordered them to move away so they would not be shot. **EVIDENCE** Harper Depo at 47; Koahou Depo at 17; Salazar Depo at 35. | Undisputed. |
| 21. In response to this order, Garcia and Gallo moved away from the car as Officer Koahou approached the vehicle. **EVIDENCE** Koahou Depo at 18. | Undisputed. |
| 22. Officer Koahou's subsequent interactions with Harper were recorded | Undisputed. |

| | |
|---|---|
| on his belt-worn audio-recording device.<br>**EVIDENCE**<br>Koahou Depo at 19; Belt-Worn Audio. | |
| 23. Officer Koahou ordered Harper to get out of the car multiple times; however, Harper refused to do so.<br>**EVIDENCE**<br>Harper Depo at 50; Koahou Depo at 19. | **Plaintiff's Response:** Disputed to the extent that Harper did not exit the vehicle because he was afraid he would be shot.<br>**EVIDENCE**<br>"Exhibit 2" (Harper Depo) at 50:18-23.<br><br>**Defendants' Reply:  Undisputed. Plaintiff's alleged rationale for failing to comply with a lawful order is irrelevant.** |
| 24. The stolen Honda was still running and Officer Koahou was concerned that Harper would attempt to flee again.<br>**EVIDENCE**<br>Koahou Depo at 20; Belt-Worn Audio at 4:34-4:44. | Disputed to the extent that a potential fear of future harm is insufficient to justify using deadly force.<br>**EVIDENCE**<br>"Exhibit 1" (Koahou Depo) at 41:24-42:2, 42:22-43:1, 43:13-18; DeFoe Decl. at ¶ 6(c)-(d) (citing PC 835a).<br><br>Further disputed to the extent that, under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Officer Koahou to shoot at Mr. Harper for fleeing or attempting to flee.  Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area. |

| | |
|---|---|
| | **EVIDENCE**<br>DeFoe Decl. at ¶ 8; "Exhibit 1" (Koahou Depo) at 43:2-4.<br><br>**Defendants' Reply:  This fact is undisputed.  Plaintiff's response is argument and a legal conclusion.** |
| 25. When Harper refused multiple orders to get out of the vehicle, Officer Koahou deployed his taser for a period of 5 seconds.<br>**EVIDENCE**<br>Koahou Depo at 23; Belt-Worn Audio at 4:50; Belt with Video at 4:40-4:50. | **Plaintiff's Response:**  Disputed to the extent that Harper did not exit the vehicle because he was afraid he would be shot.<br><br>**EVIDENCE**<br>"Exhibit 2" (Harper Depo) at 50:18-23.<br><br>Further disputed to the extent that Basic police training and Redlands Police Department, Policy Manual, Policy 304.5.2, Special Deployment Considerations, instruct police officers not to Tase individuals who are operating a motor vehicle. Redlands Police Department, Policy Manual, Policy 304.5.3, Targeting Considerations, teaches police officers to avoid Tasing individuals in the chest.<br>**EVIDENCE**<br>DeFoe Decl. at ¶ 10(g)-(h); .<br><br>**Defendants' Reply:  Undisputed.  Plaintiff's alleged rationale for failing to comply with a lawful order is irrelevant.** |

| | |
|---|---|
| 26. After the taser was deployed, Harper started to reach for the gear shift of the vehicle.<br>**EVIDENCE**<br>Koahou Depo at 23-24; Salazar Depo at 42. | **Plaintiff's Response:** Disputed to the extent that basic police training and Redlands Police Department, Policy Manual, Policy 304.5.2, Special Deployment Considerations, teach police officers not to Tase individuals who are operating a motor vehicle, and Redlands Police Department, Policy Manual, Policy 304.5.3, Targeting Considerations, trains police officers to avoid Tasing individuals in the chest.<br><br>**EVIDENCE**<br>DeFoe Decl. at ¶ 10(g)-(h).<br><br>**Defendants' Reply:  The fact is undisputed.  Plaintiff's submission of additional argument is beyond the scope of the fact asserted.** |
| 27. Officer Koahou attempted to pull Harper's hand from the gear shift and attempted to put the car in park.<br>**EVIDENCE**<br>Koahou Depo at 23-24. | Undisputed. |
| 28. Officer Koahou yelled, "Don't do it!  Don't do it!  I'll shoot you!  Stop! Stop!"<br>**EVIDENCE**<br>Belt-Worn Audio at 4:52.; Bystander Video at 0:09-0:14; Belt with Video at 4:40-4:50. | Undisputed. |

| | |
|---|---|
| 29. After this command, Harper hit the accelerator, causing the car to move.<br>**EVIDENCE**<br>Harper Depo at 54-55; Bystander Video at 0:09-0:14; Belt with Video at 4:40-4:50. | **Plaintiff's Response:** Disputed to the extent that the Honda only moved forward as a result of Mr. Harper being shocked by the Taser.<br>**EVIDENCE**<br>"Exhibit 2" (Harper Depo) at 57:14-16, 58:19-21; Def. Exhibit H-2 (Video).<br><br>**Defendants' Reply:  Undisputed. The exact mechanism for movement is irrelevant.  The fact is that the car moved.** |
| 30. Officer Koahou was reaching inside the car when the vehicle started to move.<br>**EVIDENCE**<br>Salazar Depo at 65. | **Plaintiff's Response:**  Disputed.<br><br>**EVIDENCE**<br><br>Officer Koahou agrees that he was potentially putting himself at risk by reaching into the Honda.<br>"Exhibit 1" (Koahou Depo) at 44:1-3.<br><br>Officer Koahou pulled himself backwards and away from the Honda.<br>"Exhibit 1" (Koahou Depo) at 25:18-26:7.<br><br>According to Mr. Harper, Officer Koahou was never being dragged by the Honda.<br>"Exhibit 2" (Harper Depo) at 56:23-24.<br><br>Officer Koahou's arm was not inside the Honda when he fired his shots. |

| | |
|---|---|
| | "Exhibit 1" (Koahou Depo) at 47:14-16.<br><br>When Officer Koahou fired his two shots, he was standing approximately two to six feet away from the Honda, on the driver's side of the Honda. "Exhibit 1" (Koahou Depo) at 31:9-17.<br><br>**Defendants' Reply: Undisputed. The facts speak for themselves.** |
| 31. Officer Koahou attempted to pull back away, but his arm was trapped on Harper's chest.<br>**EVIDENCE**<br>Koahou Depo at 25. | **Plaintiff's Response: Disputed. EVIDENCE**<br><br>Officer Koahou pulled himself backwards and away from the Honda. "Exhibit 1" (Koahou Depo) at 25:18-26:7.<br><br>According to Mr. Harper, Officer Koahou was never being dragged by the Honda.<br>"Exhibit 2" (Harper Depo) at 56:23-24.<br><br>No person other than Mr. Harper was injured during this incident.<br>"Exhibit 1" (Koahou Depo) at 27:5-7, 49:14-16; "Exhibit 4" (Gallo Depo) at 45:6-18; "Exhibit 5" (Guerra Depo) at 13:10-15, 49:4-9.<br><br>Officer Koahou's arm was not inside the Honda when he fired his shots. "Exhibit 1" (Koahou Depo) at 47:14- |

| | |
|---|---|
| | 16.<br><br>When Officer Koahou fired his two shots, he was standing approximately two to six feet away from the Honda, on the driver's side of the Honda. "Exhibit 1" (Koahou Depo) at 31:9-17.<br><br>**Defendants' Reply:  Undisputed. The facts speak for themselves.** |
| 32. As the car started to move forward, Officer Koahou fired two defensive blank shots without aiming.<br>**EVIDENCE**<br>Koahou Depo at 11; Belt-Worn Audio at 4:54; Belt with Video at 4:40-4:50. | **Plaintiff's Response:**  Disputed that it was inappropriate for Officer Koahou to fire shots in this case, where Mr. Harper posed no immediate threat of death or serious bodily injury to any person.<br><br>**EVIDENCE**<br><br>Prior to shooting Mr. Harper, Officer Koahou commanded witnesses Garcia, Gallo, Guerra, and Salazar to move, and they complied by moving away from the Honda.<br>"Exhibit 1" (Koahou Depo) at 17:24-18:7, 50:9-16; "Exhibit 3" (Garcia Depo) at 52:4-7, 54:12-16; "Exhibit 4" (Gallo Depo) at 25:12-23.<br><br>When the Honda started moving forward prior to the shots, no person was standing in front of the Honda. "Exhibit 1" (Koahou Depo) at 27:11-15; "Exhibit 2" (Harper Depo) at 57:5-11; Def. Exhibit H-2 (Video); |

"Exhibit 4" (Gallo Depo) at 15:12-23, 46:11-22; "Exhibit 5" (Guerra Depo) at 39:5-7; "Exhibit 6" (Salazar Depo) at 29:11-14, 31:1-7, 48:9-16, 56:13-57:15.

When the Honda started moving forward prior to the shots, no person had to jump out of the way to avoid being struck by the Honda. "Exhibit 2" (Harper Depo) at 55:12-14; Def. Exhibit H-2 (Video).

Officer Koahou took steps to get out of the path of the vehicle, including making his way to the driver side. "Exhibit 1" (Koahou Depo) at 36:6-14; "Exhibit 6" (Salazar Depo) at 61:9-25.

Prior to the Honda moving forward, witness Gallo moved out of the path of the Honda. "Exhibit 3" (Garcia Depo) at 63:21-64:11.

When the vehicle moved forward prior to the shooting, witness Garcia was about 8-10 feet off to the side of the Honda. "Exhibit 3" (Garcia Depo) at 64:22-65:6.

Prior to the shooting, witness Salazar moved approximately 15 to 20 feet away from the Honda, on the driver's side.

"Exhibit 6" (Salazar Depo) at 32:9-15.

When Officer Koahou fired his two shots, he was standing approximately two to six feet away from the Honda, on the driver's side of the Honda. "Exhibit 1" (Koahou Depo) at 31:9-17.

After the shooting, Officer Koahou saw that the civilians were standing right next to Officer Koahou. "Exhibit 1" (Koahou Depo) at 31:9-17.

No person was struck by the Honda. "Exhibit 1" (Koahou Depo) at 27:16-17; "Exhibit 3" (Garcia Depo) at 63:21-64:11; Def. Exhibit H-2 (Video).

The Honda was moving slowly, approximately 5 miles per hour, at the time of the shots. "Exhibit 1" (Koahou Depo) at 29:22-30:1-5; "Exhibit 6" (Salazar Depo) at 45:9-21; Def. Exhibit H-2 (Video).

The Honda's speed did not increase until Mr. Harper lost control of the Honda as a result of being shot. "Exhibit 6" (Salazar Depo) at 48:20-49:10; Def. Exhibit H-2 (Video).

Officer Koahou's arm was not inside the Honda when he fired his shots.

"Exhibit 1" (Koahou Depo) at 47:14-16.

Officer Koahou never went to the ground during this incident.
"Exhibit 1" (Koahou Depo) at 27:3-4.

No person other than Mr. Harper was injured during this incident.
"Exhibit 1" (Koahou Depo) at 27:3-4.

Redlands Police Department Policy Manual, Policy 300.4.1, Use of Force, states as follows:

> Shots fired at or from a moving vehicle are rarely effective and may involve additional considerations and risks. When feasible, officers should take reasonable steps to move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others, Government Code 7286(b). Officers should not shoot at any part of the vehicle in an attempt to disable the vehicle.

"Exhibit 1" (Koahou Depo) at 34:5-36:2; DeFoe Decl. at ¶ 7.

Basic police officer training teaches that shooting at a moving vehicle has

shown to be a poor tactic in most scenarios. If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle. DeFoe Decl. at ¶ 7.

Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Officer Koahou to shoot at Mr. Harper for fleeing or attempting to flee. Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area. DeFoe Decl. at ¶ 8; "Exhibit 1" (Koahou Depo) at 43:2-4.

Basic police training and standards instruct, and Officer Koahou had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. "Exhibit 1" (Koahou Depo) at 41:24-42:2, 43:13-18; DeFoe Decl. at ¶ 6(b).

Police officers, including Officer Koahou, are trained that a threat of death or serious injury is imminent when, based upon the totality of the

| | |
|---|---|
| | circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.<br>"Exhibit 1" (Koahou Depo) at 42:22-43:1; DeFoe Decl. at ¶ 6(c) (citing PC 835a).<br><br>Police standards instruct that subjective fear alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.<br>"Exhibit 1" (Koahou Depo) at 41:24-42:2, 43:13-18; DeFoe Decl. at ¶ 6(d).<br><br>**Defendants' Reply:  Plaintiff's response is argumentative and a legal conclusion; it is not a dispute of fact.** |
| 33. As the vehicle continued to move forward, the car's momentum slammed the door on Officer Koahou.<br>**EVIDENCE**<br>Koahou Depo at 30. | **Plaintiff's Response:**  Disputed.<br><br>**EVIDENCE**<br><br>Officer Koahou's arm was not inside the Honda when he fired his shots. "Exhibit 1" (Koahou Depo) at 47:14-16. |

When Officer Koahou fired his two shots, he was standing approximately two to six feet away from the Honda, on the driver's side of the Honda. "Exhibit 1" (Koahou Depo) at 31:9-17.

The door of the Honda did not impact Officer Koahou until after he fired both of his shots. "Exhibit 1" (Koahou Depo) at 31:2-4, 36:24-37:1.

When the Honda started to move forward prior to the shots, Officer Koahou pulled himself backwards and away from the Honda. "Exhibit 1" (Koahou Depo) at 25:18-26:7.

According to Mr. Harper, Officer Koahou was never being dragged by the Honda. "Exhibit 2" (Harper Depo) at 56:23-24.

No person other than Mr. Harper was injured during this incident. "Exhibit 1" (Koahou Depo) at 27:5-7, 49:14-16; "Exhibit 4" (Gallo Depo) at 45:6-18; "Exhibit 5" (Guerra Depo) at 13:10-15, 49:4-9.

**Defendants' Reply:  Undisputed. The facts speak for themselves.**

| | |
|---|---|
| 34. Both shots were fired within a mere 5 seconds of the deployment of the taser and before the car door struck him.<br>**EVIDENCE**<br>Koahou Depo at 36-37; Belt-Worn Audio at 4:50-4:54; Bystander Video at 0:09-0:14; Belt with Video at 4:40-4:50. | Undisputed. |
| 35. Officer Koahou did not fire at Harper based solely on the fact that Harper was driving away; more urgently, he felt that he was facing an imminent threat of being struck and/or crushed by the vehicle and was attempting to stop the threat.<br>**EVIDENCE**<br>Koahou Depo at 43 | **Plaintiff's Response:** Disputed that Mr. Harper or the Honda posed an imminent threat of death or serious bodily injury.<br><br>**EVIDENCE**<br><br>Prior to shooting Mr. Harper, Officer Koahou commanded witnesses Garcia, Gallo, Guerra, and Salazar to move, and they complied by moving away from the Honda. "Exhibit 1" (Koahou Depo) at 17:24-18:7, 50:9-16; "Exhibit 3" (Garcia Depo) at 52:4-7, 54:12-16; "Exhibit 4" (Gallo Depo) at 25:12-23.<br><br>When the Honda started moving forward prior to the shots, no person was standing in front of the Honda. "Exhibit 1" (Koahou Depo) at 27:11-15; "Exhibit 2" (Harper Depo) at 57:5-11; Def. Exhibit H-2 (Video); "Exhibit 4" (Gallo Depo) at 15:12-23, 46:11-22; "Exhibit 5" (Guerra Depo) at 39:5-7; "Exhibit 6" (Salazar Depo) at 29:11-14, 31:1-7, 48:9-16, 56:13- |

57:15.

When the Honda started moving forward prior to the shots, no person had to jump out of the way to avoid being struck by the Honda.
"Exhibit 2" (Harper Depo) at 55:12-14; Def. Exhibit H-2 (Video).

Officer Koahou took steps to get out of the path of the vehicle, including making his way to the driver side to prevent himself from standing in front of the Honda.
"Exhibit 1" (Koahou Depo) at 36:6-14; "Exhibit 6" (Salazar Depo) at 61:9-25.

Prior to the Honda moving forward, witness Gallo moved out of the path of the Honda.
"Exhibit 3" (Garcia Depo) at 63:21-64:11.

When the vehicle moved forward prior to the shooting, witness Garcia was about 8-10 feet off to the side of the Honda.
"Exhibit 3" (Garcia Depo) at 64:22-65:6.

Prior to the shooting, witness Salazar moved approximately 15 to 20 feet away from the Honda, on the driver's side.
"Exhibit 6" (Salazar Depo) at 32:9-

15.

When Officer Koahou fired his two shots, he was standing approximately two to six feet away from the Honda, on the driver's side of the Honda. "Exhibit 1" (Koahou Depo) at 31:9-17.

After the shooting, Officer Koahou saw that the civilians were standing right next to Officer Koahou. "Exhibit 1" (Koahou Depo) at 31:9-17.

No person was struck by the Honda. "Exhibit 1" (Koahou Depo) at 27:16-17; "Exhibit 3" (Garcia Depo) at 63:21-64:11; Def. Exhibit H-2 (Video).

The Honda was moving slowly, approximately 5 miles per hour, at the time of the shots.
"Exhibit 1" (Koahou Depo) at 29:22-30:1-5; "Exhibit 6" (Salazar Depo) at 45:9-21; Def. Exhibit H-2 (Video).

The Honda's speed did not increase until Mr. Harper lost control of the Honda as a result of being shot. "Exhibit 6" (Salazar Depo) at 48:20-49:10; Def. Exhibit H-2 (Video).

Officer Koahou's arm was not inside the Honda when he fired his shots. "Exhibit 1" (Koahou Depo) at 47:14-

16.

Officer Koahou never went to the ground during this incident. "Exhibit 1" (Koahou Depo) at 27:3-4.

No person other than Mr. Harper was injured during this incident. "Exhibit 1" (Koahou Depo) at 27:3-4.

Redlands Police Department Policy Manual, Policy 300.4.1, Use of Force, states as follows:

Shots fired at or from a moving vehicle are rarely effective and may involve additional considerations and risks. When feasible, officers should take reasonable steps to move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others, Government Code 7286(b). Officers should not shoot at any part of the vehicle in an attempt to disable the vehicle.

"Exhibit 1" (Koahou Depo) at 34:5-36:2; DeFoe Decl. at ¶ 7.

Basic police officer training teaches that shooting at a moving vehicle has shown to be a poor tactic in most

scenarios.  If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle. DeFoe Decl. at ¶ 7.

Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Officer Koahou to shoot at Mr. Harper for fleeing or attempting to flee.  Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area. DeFoe Decl. at ¶ 8; "Exhibit 1" (Koahou Depo) at 43:2-4.

Basic police training and standards instruct, and Officer Koahou had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. "Exhibit 1" (Koahou Depo) at 41:24-42:2, 43:13-18; DeFoe Decl. at ¶ 6(b).

Police officers, including Officer Koahou, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in

-23-

the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person.

"Exhibit 1" (Koahou Depo) at 42:22-43:1; DeFoe Decl. at ¶ 6(c) (citing PC 835a).

Police standards instruct that subjective fear alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed.

"Exhibit 1" (Koahou Depo) at 41:24-42:2, 43:13-18; DeFoe Decl. at ¶ 6(d).

**Defendants' Reply:  Plaintiff's response is argumentative and a legal conclusion; it is not a dispute of fact.**

| | |
|---|---|
| 36. After the shots were fired, the car continued to accelerate jumped over the curb at the end of the cul-de-sac and drove for another few hundred feet before crashing.<br>**EVIDENCE**<br>Harper Depo at 59; Koahou Depo at 31-32, 47; Salazar Depo at 49. | **Plaintiff's Response:**  Disputed to the extent that the Honda moved forward as a result of Harper being struck by shots.<br><br>**EVIDENCE**<br><br>After Mr. Harper was struck by shots, Mr. Harper lost control of the Honda |

| | |
|---|---|
| | as a result of being struck by shots. "Exhibit 1" (Koahou Depo) at 32:1-7; "Exhibit 2" (Harper Depo) at 60:5-14; Def. Exhibit H-2 (Video).<br><br>Basic police officer training teaches that shooting at a moving vehicle has shown to be a poor tactic in most scenarios. If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle. DeFoe Decl. at ¶ 7.<br><br>At the time of the shooting, Officer Koahou was trained that shooting the driver of a vehicle could possibly incapacitate the driver. "Exhibit 1" (Koahou Depo) at 28:8-11.<br><br>At the time of the shooting, Officer Koahou was trained that if the driver is incapacitated by gunshots, that could potentially endanger the public. "Exhibit 1" (Koahou Depo) at 28:12-15.<br><br>**Defendants' Reply: Undisputed. The fact is that the car moved forward; the mechanism is not relevant.** |
| 37. After the car came to rest, Harper got out of the car on his own.<br>**EVIDENCE**<br>Harper Depo at 60; Koahou Depo at | **Plaintiff's Response:** Disputed to the extent that Mr. Harper was seriously injured after the shooting, and he fell to the ground as soon as |

| | |
|---|---|
| 32. | he got out of the Honda.<br>**EVIDENCE**<br>"Exhibit 3" (Garcia Depo) at 74:1-15.<br><br>**Defendants' Reply:  Undisputed.** |
| 38. Harper was subsequently handcuffed, a tourniquet was applied to his leg, and he was transported to Loma Linda Medical Center.<br>**EVIDENCE**<br>Harper Depo at 61, 63; Koahou Depo at 33; Belt-Worn Audio at 5:40-5:46. | Undisputed. |
| 39. Following these events, a shotgun was recovered from inside the stolen Toyota.<br>**EVIDENCE**<br>Harper Depo at 35. | **Plaintiff's Response:**  Undisputed that this is Harper's testimony; disputed to the extent that it was unknown to Officer Koahou at the time of the shooting.<br><br>**Defendants' Reply:  Undisputed.** |
| 40. As a result of these actions, Harper was convicted of theft of the Toyota, hit and run with damage on Garcia's work truck, possession of the shotgun, and carjacking of the black Honda.<br>**EVIDENCE**<br>Harper Depo at 31, 34, 35, 38-39. | **Plaintiff's Response:**  Undisputed that this is Harper's testimony; disputed to the extent that it was unknown to Officer Koahou at the time of the shooting.<br><br>**Defendants' Reply:  Undisputed.** |
| 41. After he was sentenced to State Prison for these offenses, Harper continued to have problems including approximately 10 disciplinary write-ups, with four or five being for battery.<br>**EVIDENCE**<br>Harper Depo at 13-16. | **Plaintiff's Response:**  Undisputed that this is Harper's testimony; disputed to the extent that it was unknown to Officer Koahou at the time of the shooting.<br><br>**Defendants' Reply:  Undisputed.** |
| 42. Harper currently expects to be released from prison in 2026. | **Plaintiff's Response:**  Undisputed that this is Harper's testimony; |

| **EVIDENCE** Harper Depo at 12. | disputed to the extent that it was unknown to Officer Koahou at the time of the shooting. **Defendants' Reply:  Undisputed.** |
|---|---|
| 43.  During the course of meet and confer, Harper's counsel stipulated that Harper would not go forward on the claim for negligent infliction of emotional distress. **EVIDENCE** *Exhibit* "I". | **Plaintiff's Response:**  Undisputed with the caveat that, as discussed during the meet and confer, Plaintiff continues to seek damages for emotional distress under his negligence claim. **Defendants' Reply:  Undisputed.** |

| PLAINTIFF'S ADDITIONAL UNCONTROVERTED FACTS | |
|---|---|
| **PLAINTIFF'S ADDITIONAL FACT AND SUPPORTING EVIDENCE** | **DEFENDANTS' RESPONSE** |
| **Background** | |
| 44.     At the time of this incident, Officer Koahou had never seen Mr. Harper before, and he did not know anything about him, including whether Mr. Harper had a criminal history. "Exhibit 1" (Koahou Depo) at 12:16-20. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 45.     At no point during this incident did Officer Koahou have any information that Mr. Harper was armed with a handgun. "Exhibit 1" (Koahou Depo) at 12:22-24. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 46.     Officer Koahou never saw a gun, knife, or other weapon either on Mr. Harper or in the Honda at any time. "Exhibit 1" (Koahou Depo) at 12:25-13:1, 28:19-21. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 47.     Officer Koahou did not have any specific information that Mr. Harper was under the influence of drugs or alcohol. "Exhibit 1" (Koahou Depo) at 13:2-15; 47:22-24. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 48.     Officer Koahou did not shoot Mr. Harper because he thought he was under the influence. "Exhibit 1" (Koahou Depo) at 13:16-18. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 49.     Prior to shooting Mr. Harper, Officer Koahou commanded witnesses Garcia, Gallo, Guerra, and Salazar to move, and they complied by moving away from the Honda.  "Exhibit 1" | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |

| | |
|---|---|
| (Koahou Depo) at 17:24-18:7, 50:9-16; "Exhibit 3" (Garcia Depo) at 52:4-7, 54:12-16; "Exhibit 4" (Gallo Depo) at 25:12-23. | |
| 50.    Based on his police officer training, Officer Koahou would have told the civilians to get out of the path of the Honda if they were in front of it with the engine on. "Exhibit 1" (Koahou Depo) at 18:11-19; 18:23-19:1. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 51.    When Mr. Harper reversed the Honda into the cul-de-sac, the Honda's emergency brakes were engaged. "Exhibit 3" (Garcia Depo) at 39:8-25; "Exhibit 5" (Guerra Depo) at 22:13-25. 24:9-13; "Exhibit 6" (Salazar Depo) at 25:8-16. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 52.    When Mr. Harper reversed the Honda into the cul-de-sac, the Honda was moving slowly. "Exhibit 5" (Guerra Depo) at 22:13-25. 24:9-13, 24:19-22; "Exhibit 6" (Salazar Depo) at 25:8-26:1, 27:13-19, 64:3-23. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| **The Tasing** | |
| 53.    When Harper was in the Honda, prior to the Tasing, the civilian witnesses yanked on Harper from either side, punched Harper in the head three times, and choked Harper. "Exhibit 2" (Harper Depo) at 42:20-24, 47, 2-5; "Exhibit 3" (Garcia Depo) at 46:1-12. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 54.    Officer Koahou reached into the Honda and grabbed Mr. Harper's right hand. "Exhibit 1" (Koahou Depo) at | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary |

| | |
|---|---|
| 36:15-17, 40:14-18. | judgment. |
| 55.     When Officer Koahou Tased Mr. Harper, he was aiming for his chest. "Exhibit 1" (Koahou Depo) at 21:12-14. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 56.     The Taser probes struck Mr. Harper.  "Exhibit 1" (Koahou Depo) at 21:20-23, 22:2-8. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 57.     Officer Koahou did not warn Mr. Harper before he Tased him. "Exhibit 1" (Koahou Depo) at 22:11-13. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 58.     Before Mr. Harper was Tased, he tried to surrender, including by stating that he was ready to get out of the Honda, letting go of the steering wheel, and putting his hands up. "Exhibit 2" (Harper Depo) at 53:1-20; "Exhibit 3" (Garcia Depo) at 58:20-59:11. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 59.     When Mr. Harper was being Tased, his hands were up. "Exhibit 2" (Harper Depo) at 53:13-22; "Exhibit 6" (Salazar Depo) at 41:1-25 | . Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 60.     When Mr. Harper was being Tased, the Honda was stationary. "Exhibit 2" (Harper Depo) at 54:1-3; "Exhibit 1" (Koahou Depo) at 21:4-6; Def. Exhibit H-2 (Video). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 61.     Mr. Harper screamed in pain when he was Tased. "Exhibit 6" (Salazar Depo) at 41:7-13. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 62.     The Honda did not move forward until after Officer Koahou made contact | Undisputed for the purposes of this motion; however, this additional fact |

| | |
|---|---|
| with the gear shift. "Exhibit 1" (Koahou Depo) at 25:6-9, 40:2-4; "Exhibit 6" (Salazar Depo) at 42:6-10. | does not preclude a grant of summary judgment. |

| **The Shooting** ||
|---|---|
| 63.    The Honda moved forward as a result of Mr. Harper being shocked by the Taser. "Exhibit 2" (Harper Depo) at 57:14-16, 58:19-21; Def. Exhibit H-2 (Video). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 64.    When the Honda started moving forward prior to the shots, no person was standing in front of the Honda. "Exhibit 1" (Koahou Depo) at 25:18-26:7, 27:11-15, 36:6-14; "Exhibit 2" (Harper Depo) at 57:5-11; Def. Exhibit H-2 (Video); "Exhibit 4" (Gallo Depo) at 15:12-23, 46:11-22; "Exhibit 5" (Guerra Depo) at 39:5-7; "Exhibit 6" (Salazar Depo) at 29:11-14, 31:1-7, 48:9-16, 56:13-57:15, 61:9-25. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 65.    When the Honda started moving forward prior to the shots, no person had to jump out of the way to avoid being struck by the Honda. "Exhibit 2" (Harper Depo) at 55:12-14; Def. Exhibit H-2 (Video). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 66.    At the time of the shots, no person was in front of the Honda or in the Honda's path. "Exhibit 1" (Koahou Depo) at 25:18-26:7, 27:11-15, 36:6-14; "Exhibit 2" (Harper Depo) at 57:5-11; Def. Exhibit H-2 (Video); "Exhibit 4" (Gallo Depo) at 15:12-23, 46:11-22; "Exhibit 5" (Guerra Depo) at 39:5-7; "Exhibit 6" (Salazar Depo) at 29:11-14, | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |

| | |
|---|---|
| 31:1-7, 48:9-16, 56:13-57:15, 61:9-25. | |
| 67.    Prior to the Honda moving forward, witness Gallo moved out of the path of the Honda. "Exhibit 4" (Gallo Depo) at 25:12-23, 26:13-21, 27:21-28:6. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 68.    Prior to the Honda moving forward, witness Guerra moved to the side of the Honda. "Exhibit 3" (Garcia Depo) at 63:21-64:11 | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 69.    When the vehicle moved forward prior to the shooting, witness Garcia was about 8-10 feet off to the driver's side of the Honda. "Exhibit 3" (Garcia Depo) at 64:22-65:6. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 70.    Prior to the shooting, witness Salazar moved approximately 15 to 20 feet away from the Honda, on the driver's side. "Exhibit 6" (Salazar Depo) at 32:9-15. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 71.    When Officer Koahou fired his two shots, he was standing approximately two to six feet away from the Honda, on the driver's side of the Honda. "Exhibit 4" (Gallo Depo) at 35:16-36:1, 47:18-48:3; "Exhibit 6" (Salazar Depo) at 45:2-8, 48:9-16; Def. Exhibit H-2 (Video) | . Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 72.    After the shooting, Officer Koahou saw that the civilians were standing right next to Officer Koahou. "Exhibit 1" (Koahou Depo) at 31:9-17. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 73.    Officer Koahou's arm was not inside the Honda when he fired his shots. "Exhibit 1" (Koahou Depo) at | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary |

| | | |
|---|---|---|
| 1 | 47:14-16. | judgment. |
| 2 | 74.    According to Mr. Harper, Officer Koahou was never being dragged by the Honda. "Exhibit 2" (Harper Depo) at 56:23-24. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 5 | 75.    No person was struck by the Honda. "Exhibit 1" (Koahou Depo) at 27:16-17; "Exhibit 3" (Garcia Depo) at 63:21-64:11; Def. Exhibit H-2 (Video). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 8 | 76.    The Honda was moving slowly, approximately 5 miles per hour, at the time of the shots. "Exhibit 1" (Koahou Depo) at 29:22-30:1-5; "Exhibit 6" (Salazar Depo) at 45:9-21; Def. Exhibit H-2 (Video). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 13 | 77.    After Mr. Harper was struck by shots, Mr. Harper lost control of the Honda as a result of being struck by shots. "Exhibit 1" (Koahou Depo) at 32:1-7; "Exhibit 2" (Harper Depo) at 60:5-14; Def. Exhibit H-2 (Video). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 18 | 78.    The Honda's speed did not increase until Mr. Harper lost control of the Honda as a result of being shot. "Exhibit 6" (Salazar Depo) at 48:20-49:10; Def. Exhibit H-2 (Video). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 21 | 79.    The door of the Honda did not impact Officer Koahou until after he fired both of his shots. "Exhibit 1" (Koahou Depo) at 31:2-4, 36:24-37:1. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 24 | 80.    Officer Koahou never went to the ground during this incident. "Exhibit 1" (Koahou Depo) at 27:3-4. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 28 | 81.    No person other than Mr. Harper | Undisputed for the purposes of this |

| | |
|---|---|
| was injured during this incident. "Exhibit 1" (Koahou Depo) at 27:5-7, 31:18-23, 49:14-16; "Exhibit 4" (Gallo Depo) at 45:6-18; "Exhibit 5" (Guerra Depo) at 13:10-15, 49:4-9. | motion; however, this additional fact does not preclude a grant of summary judgment. |
| 82.    Mr. Harper never laid hands on Officer Koahou. "Exhibit 2" (Harper Depo) at 56:25-57:1. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 83.    After the shooting, Mr. Harper exited the Honda and immediately fell to the ground. "Exhibit 3" (Garcia Depo) at 74:1-15. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| **Pre-Shooting Negligence** | |
| 84.    Police officers are expected to follow their own department policies. DeFoe Decl. at ¶ 7. | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 85.    In violation of basic police training, Officer Koahou escalated the situation when he Tased Mr. Harper. DeFoe Decl. at ¶ 10(e). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 |

| | |
|---|---|
| | F.3d 1081, 1085 (9th Cir. 2016). |
| 86.    Officer Koahou failed to issue a verbal warning to Mr. Harper that he was going to deploy his Taser, and he also failed to provide Mr. Harper a reasonable opportunity to comply. DeFoe Decl. at ¶ 10(f). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 87.    Officer Koahou failed to provide Mr. Harper a reasonable opportunity to comply. DeFoe Decl. at ¶ 10(f). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 88.    Redlands Police Department, Policy Manual, Policy 304.4, Verbal and Visual Warnings, instructs police officers to give a verbal warning prior to Tasing a person. DeFoe Decl. at ¶ 10(f). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 89.    Redlands Police Department, Policy Manual, Policy 304.5.2, Special Deployment Considerations, instructs police officers not to Tase a person who | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was |

| | |
|---|---|
| is operating a motor vehicle. DeFoe Decl. at ¶ 10(g). | reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 90.     Officer Koahou Tased Mr. Harper in the chest, which is an area that police officers are trained to avoid when deploying the Taser. DeFoe Decl. at ¶ 10(h). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 91.     A reasonable officer in Officer Koahou's position would have immediately moved to a position of cover and formulated an effective and safe tactical plan.  DeFoe Decl. at ¶ 10(b). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 92.     A reasonable officer in Koahou's position would have established a perimeter in anticipation that Mr. Harper could flee. DeFoe Decl. at ¶ 10(c). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 |

| | | |
|---|---|---|
| 1 | | F.3d 1081, 1085 (9th Cir. 2016). |
| 2 | 93.     A reasonable officer under these facts would have waited for additional Redlands Police Department officers and a San Bernardino County Sheriff's Department Police Helicopter unit to assist with containment and tactical deployment to take Mr. Harper into custody. DeFoe Decl. at ¶ 10(b). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 10 | 94.     Officer Koahou agrees that he was potentially putting himself at risk by reaching into the Honda. "Exhibit 1" (Koahou Depo) at 44:1-3. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 13 | **Police Officer Training and Standards** | |
| 14 | 95.     Redlands Police Department Policy Manual, Policy 300.4.1, Use of Force, states as follows:<br>"Shots fired at or from a moving vehicle are rarely effective and may involve additional considerations and risks.  When feasible, officers should take reasonable steps to move out of the path of an approaching vehicle instead of discharging their firearm at the vehicle or any of its occupants. An officer should only discharge a firearm at a moving vehicle or its occupants when the officer reasonably believes there are no other reasonable means available to avert the imminent threat of the vehicle, or if deadly force other than the vehicle is directed at the officer or others, Government Code 7286(b). Officers should not shoot at any part of the | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |

| | |
|---|---|
| vehicle in an attempt to disable the vehicle." "Exhibit 1" (Koahou Depo) at 34:5-36:2; DeFoe Decl. at ¶ 7. | |
| 96.    Basic police officer training teaches that shooting at a moving vehicle has shown to be a poor tactic in most scenarios.  If a driver is wounded or killed when operating a motor vehicle, it prevents their ability to effectively operate a motor vehicle. DeFoe Decl. at ¶ 7. | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 97.    At the time of the shooting, Officer Koahou was trained that shooting the driver of a vehicle could possibly incapacitate the driver. "Exhibit 1" (Koahou Depo) at 28:8-11. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 98.    At the time of the shooting, Officer Koahou was trained that if the driver is incapacitated by gunshots, that could potentially endanger the public. "Exhibit 1" (Koahou Depo) at 28:12-15. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 99.    Under the facts of this case and pursuant to police standards and training, it would have been inappropriate for Officer Koahou to shoot at Mr. Harper for fleeing or attempting to flee.  Police officers are trained that a police officer cannot justify shooting a vehicle or its driver simply because that vehicle was fleeing or trying to leave the area. DeFoe Decl. at ¶ 8; "Exhibit 1" (Koahou Depo) at 43:2-4. | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |

| 100. Basic police training and standards instruct, and Officer Koahou had been trained at the time of the shooting, that deadly force should only be used on the basis of an "objectively reasonable" belief that the suspect poses an immediate threat of death or serious bodily injury. "Exhibit 1" (Koahou Depo) at 41:24-42:2, 43:13-18; DeFoe Decl. at ¶ 6(b). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
|---|---|
| 101. Police officers, including Officer Koahou, are trained that a threat of death or serious injury is imminent when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, and apparent intent to immediately cause death or serious bodily injury to the peace officer or another person. "Exhibit 1" (Koahou Depo) at 42:22-43:1; DeFoe Decl. at ¶ 6(c) (citing PC 835a). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 102. Police standards instruct, and Officer Koahou had been trained, that subjective fear alone does not justify the use of deadly force. An imminent harm is not merely a fear of future harm, no matter how great the fear and no matter how great the likelihood of the harm, but is one that from appearances, must be instantly confronted and addressed. "Exhibit 1" (Koahou Depo) at 41:24-42:2, 43:13-18; DeFoe Decl. at ¶ 6(d). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 103. At the time of the shooting, | Undisputed for the purposes of this |

| | |
|---|---|
| Officer Koahou had been trained that deadly force should only be used as a last resort in the direst of circumstances. "Exhibit 1" (Koahou Depo) at 42:7-10. | motion; however, this additional fact does not preclude a grant of summary judgment. |
| 104.    Basic police training instructs, and at the time of the shooting Officer Koahou had been trained, that deadly force should only be used when no other reasonable options are available. "Exhibit 1" (Koahou Depo) at 42:11-14; DeFoe Decl. at ¶ 11(h). | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 105.    Based on his police officer training, Officer Koahou's goal is to try to de-escalate a situation and use the minimal amount of force necessary. "Exhibit 1" (Koahou Depo) at 52:6-8. | Undisputed for the purposes of this motion; however, this additional fact does not preclude a grant of summary judgment. |
| 106.    Basic police training teaches that an overreaction in using deadly force is excessive force. DeFoe Decl. at ¶ 6(h). | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 F.3d 1081, 1085 (9th Cir. 2016). |
| 107.    From the standpoint of police practices, including basic police training, POST standards, and the City of Redlands's own policies, Officer Koahou's use of deadly force was improper, inappropriate, excessive and unreasonable, including (but not limited to) for the following reasons: (1) this was not an immediate defense of life | Disputed to the extent Plaintiff asserts that his Expert's Declaration creates a triable issue of fact.  The dispositive issue is whether the force used was reasonable under the totality of the circumstances, not whether other actions could have been taken. *Graham v. Connor,* 490 U.S. 386, 394-396 (1989); *Hughes v. Kisela,* 841 |

| | |
|---|---|
| situation; (2) subjective fear is insufficient to justify a use of deadly force; (3) the shooting violated basic police training; (4) Mr. Harper committed no crime involving the infliction of serious injury or death; (5) Officer Koahou could not justify shooting Mr. Harper under a fleeing felon theory; (6) Mr. Harper was not armed with a gun or knife during this incident; (7) Mr. Harper never verbally threatened to harm anyone; (8) Officer Koahou had reasonable alternative measures other than shooting; (9) Officer Koahou showed no reverence for human life when he fired at Mr. Harper; (10) police officers are trained that they must justify every shot they fire, and both of Officer Koahou's shots were unjustified. DeFoe Decl. at ¶ 11. | F.3d 1081, 1085 (9th Cir. 2016). |

Dated: January 31, 2025                    JONES MAYER

                                                                /s/ Scott Wm. Davenport

                                            By: _____
                                                   JAMES R. TOUCHSTONE
                                                   DENISE L. ROCAWICH
                                                   SCOTT WM. DAVENPORT

                                            Attorneys for Defendants,
                                            CITY OF REDLANDS and OFFICER KOAHOU