# EXHIBIT B

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:23-cv-00695-SSS-DTBx | Date | March 13, 2025 |
|---|---|---|---|
| Title | *Justin Cody Harper v. City of Redlands et al* | | |

| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |
|---|---|

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT [DKT. 47]**

Before the Court is a Motion for Summary Judgment ("Motion") filed by
Defendants City of Redlands, Redlands Police Department, and Police Officer
Koahou (collectively "Defendants"). [Dkt. 47, Motion]. Plaintiff Justin Cody
Harper opposes. [Dkt. 48 ("Opp.")]. Having considered the parties' arguments,
relevant legal authority, and record in this case, the Court **DENIES** Defendants'
Motion.

## I.    BACKGROUND

The following facts are undisputed. On September 9, 2021, Harper was
driving a stolen truck. [Motion at 7; Dkt. 49-1, Defendant's Reply to Plaintiff's
Statements of Uncontroverted Fact ("SUF"), ¶ 5]. Officer Koahou began
following Harper. [SUF ¶ 6]. Harper, aware of Officer Koahou pursuing him, ran
red lights, failed to stop at a stop sign, hit a curb, lost control of the truck, and
struck another vehicle. [*Id*. ¶ 7]. Harper attempted to flee, abandoning the truck
because it was damaged, and ran away on foot. [*Id*. ¶¶ 8–10]. The passengers of
the vehicle Harper struck also began to chase Harper. [*Id*. ¶¶ 12, 13].

While fleeing, Harper spotted another car with its engine running and jumped in. [*Id.* ¶ 15]. The owner of this car attempted to stop Harper, with the two other passengers catching up and joining. [*Id.* ¶¶ 16–18, 53]. They yanked, punched and choked Harper. [*Id.* ¶ 53]. Officer Koahou arrived soon after and ordered the three men away from the car. [*Id.* ¶¶ 20, 21]. They complied. [*Id.* ¶ 49]. Officer Koahou ordered Harper to get out of the vehicle. [*Id.* ¶ 23]. Harper said he was ready to get out of the car, let go of the steering wheel, and put his hands up. [*Id.* ¶ 58]. The car was stationary. [*Id.* ¶ 60]. Then, Officer Koahou tased Harper in the chest without warning. [*Id.* ¶¶ 25, 55, 57].

Harper reached for the gear shift,  and Officer Koahou tried to pull Harper's hand from it. [*Id.* ¶¶ 26, 27]. Officer Koahou warned Harper, "Don't do it! I'll shoot you! Stop!" [*Id.* ¶ 28]. The car began to move forward at about five miles per hour. [*Id.* ¶¶ 29, 62, 76]. No one was standing in front of the car or within its path; Officer Koahou was two to six feet from the car on the driver's side and the three men were to the side of the car, eight to 20 feet away. [*Id.* ¶¶ 64, 66, 68–71]. Officer Koahou fired two shots without aiming, hitting Harper's leg. [*Id.* ¶¶ 32, 38]. Only five seconds passed between the tasing and shooting. [*Id.* ¶ 34].

Harper brings this present suit against Defendants alleging claims for (1) violation of the Fourth Amendment by excessive force under 42 U.S.C. § 1983, (2) battery, (3) negligence, and (4) violation of the Bane Act.[1]  [Dkt. 1]. Defendants now move for summary judgment on all claims. [Motion]. The Court discusses additional relevant facts below.

## II.    LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(a). A fact is material if the dispute over that fact may affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court need not consider irrelevant and unnecessary factual disputes. *Id.* A dispute is genuine if a reasonable jury could return a verdict for the non-moving party based on the evidence. *Id.* The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To do so, the moving party must

---

[1] Harper dropped his negligent infliction of emotional distress claim present in his Complaint prior to Defendants' Motion. [SUF ¶ 43].

present evidence that either negates an essential element of the non-movant's case
or demonstrates the non-movant does not have evidence sufficient to support its
case. *Id.* If the movant has met its burden, the non-movant must set forth specific
facts showing there is a genuine issue for a trial. *Matsushita Elec. Indus. Co., Ltd.
v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In deciding a summary judgment
motion, a court must believe the non-movant's evidence and draw all justifiable
inferences in its favor. *Anderson*, 477 U.S. at 255.

## III.   EVIDENTIARY OBJECTIONS

Before addressing the merits of Defendants' Motion, the Court will first rule
on Harper's objections to Defendants' evidence offered in support of their Motion.
[Dkt. 48-2]. Defendants submit a number of facts regarding Harper's drug use,
criminal record, employment history, and his expulsion from the fourth grade. [*Id.*
¶¶ 1–4]. However, Officer Koahou did know anything about Harper at the time of
this incident. [SUF ¶ 44]. Thus, these facts are irrelevant in determining the
reasonableness of Officer Koahou's use of force, and Harper's objections are
**SUSTAINED**.

Defendants also offer facts occurring after the shooting, such as Harper's
criminal convictions following the incident and disciplinary write-ups in prison.
[Dkt. 48-2 ¶¶ 36, 38–42]. Likewise, these are irrelevant to the Court's analysis of
the claims at issue, and Harper's objections are **SUSTAINED**.

Lastly, Harper objects to a handful of other facts for being vague,
compound, and argumentative. [Dkt. 48-2 ¶¶ 5–7, 31, 33, 34]. However, "[w]hile
these objections may be cognizable at trial, on a motion for summary judgment, the
Court is concerned only with the *admissibility* of relevant *facts* at trial, and not the
*form* of these facts as presented in the [m]otion." *Ramirez v. Victoria's Secret
Stores, LLC*, No. CV 18-7519-MWF (ASx), 2019 WL 6998784, at *2 (C.D. Cal.
July 18, 2019) (emphasis in original). Accordingly, these objections are
**OVERRULED**.

## IV.   DISCUSSION

Defendants move for summary judgment on Harper's federal excessive force
claim and related state claims, and additionally assert Officer Koahou is immune
from liability pursuant to qualified immunity and state statutory immunities.

## A.     Excessive Force

Under the Fourth Amendment, the degree of force used to effectuate a seizure or arrest must be "objectively reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 397 (1989).  Courts in the Ninth Circuit assess reasonableness by balancing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake."  *Felarca v. Birgeneau*, 891 F.3d 809, 816 (9th Cir. 2018) (quoting *Graham v. Connor*, 490 U.S. at 396).  Reasonableness "must be judged from the perspective of a reasonable officer on scene, rather than with 20/20 vision of hindsight."  *Graham*, 490 U.S. at 396.

As the Ninth Circuit has noted though, "[i]n the context involved here, the Supreme Court has crafted a more definitive rule: An officer may use deadly force to apprehend a fleeing suspect only if 'the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'"  *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).  Here, parties agree Officer Koahou deployed deadly force when firing two shots at Harper, a fleeing suspect.  [Motion at 15–16; Opp. at 14–17].  Thus, use of deadly force is only reasonable if Officer Koahou had probable cause to believe Harper posed a threat of serious physical harm to Officer Koahou or others.

On this record, the Court is unable to conclude Harper posed a threat of serious physical harm to Officer Koahou.  While Defendants contend Harper "attempted murder" because Officer Koahou was "mere inches away from being crushed by the vehicle," it is undisputed he was two to six feet from the vehicle's side when he deployed deadly force.  [Motion at 16, 19; SUF ¶ 71].  Officer Koahou was not in front of the car or in the path of the car when it started moving.  [SUF ¶¶ 64, 66].  No one was struck by the car or had to move out of the way to avoid the car.  [*Id.* ¶¶ 65, 75].  The bystander video further confirms Officer Koahou standing to the side of the vehicle and not at risk of being hit.

Although Officer Koahou was reaching inside of the car when it started to move at five miles per hour, he was able to step two to six feet from the vehicle, or step out of the way, before firing at Harper.  [*Id.* ¶ 30].  The Ninth Circuit has "consistently found use of deadly force to stop a slow-moving vehicle unreasonable when the officers could have easily stepped out of the vehicle's path to avoid danger."  *Villanueva v. California*, 986 F.3d 1158, 1170 (9th Cir. 2021) (collecting cases).  Similarly, there was no threat to the three other witnesses on the

scene because they were on the side of the vehicle, complying with Officer Koahou's orders to move out of the way and eight to 20 feet from the car.  [SUF ¶¶ 20, 21, 49, 68–70].

The more difficult question is if it was reasonable for Officer Koahou to believe Harper posed a threat of serious physical harm to the public when he deployed deadly force.  Defendants argue Harper was a "fleeing felon" who "repeatedly endangered lives" and was "intent on resuming his flight."  [Motion at 16, citing *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014)].  Certainly when Harper was evading arrest earlier that day, he was reckless as he ran red lights, hit a car, and attempted to steal another vehicle.  [SUF ¶¶ 5, 6, 10, 15].  However, there is a reasonable dispute as to if Harper was fleeing or surrendering when Officer Koahou shot him.  On the one hand, it is undisputed Harper actively evaded arrest by Officer Koahou that day, likely just minutes before.  On the other hand, when Officer Koahou ordered Harper out of the car and threatened to shoot him, Harper said he would get out of the car, let go of the steering wheel, and put his hands up in surrender.

Defendants claim it was an "absolute certainty" Harper would continue to evade arrest in part because the car began to accelerate after Harper indicated surrender and Officer Koahou tased Harper.  [Motion at 15–16].  Harper, however, argues it was clear he was trying to surrender and his foot only hit the accelerator because his body was shocked by the taser.  [Opp. at 15; SUF ¶ 29].

The Court finds a reasonable juror may agree with Harper that a reasonable police officer should expect a vehicle to start moving after tasing the vehicle's operator in the chest without warning.  This is bolstered by Redlands Police Department's own policy manual, which teaches officers not to tase a person who is operating a vehicle.  [Dkt. 48-3 at 8].  Thus, viewing the evidence in a light most favorable to Harper, as this Court must, it is reasonable to conclude the car rolling forward did not indicate Harper was fleeing.  Because a reasonable juror could find Harper did not pose a danger to Officer Koahou or the public when Officer Koahou shot him, Harper's Excessive Force claim survives Defendants' Motion.

## B.    Qualified Immunity

Even so, Officer Koahou may be immune from liability under Harper's federal claim pursuant to qualified immunity.  To determine if qualified immunity protects the officer conduct in question, the Court must engage in a two-step inquiry.  First, "taken in the light most favorable to the party asserting the injury,

do the facts alleged show the officer's conduct violated a constitutional right?"
*Scott v. Harris*, 550 U.S. 372, 377 (2007).  Second, the Court must ask whether the
rights alleged to be violated are "clearly established."  *Id*.  Because the Court has
already found the facts when viewed in Harper's favor show a Fourth Amendment
violation the Court turns to the second prong.

A right is clearly established if it is "beyond debate."  *Ashcroft v. al-Kidd*,
563 U.S. 731, 741 (2011).  Indeed, to be clearly established "every reasonable
official would have understood that what he is doing violates that right."  *Taylor v.
Barkes*, 575 U.S. 822, 825 (2015).  Particularly in the Fourth Amendment context,
a right must be defined with "specificity" such that cases "provide an officer notice
that a specific use of force is unlawful."  *Kisela v. Hughes*, 584 U.S. 100, 104-05
(2018).

Here, Officer Koahou was on notice that using deadly force in these
circumstances was unreasonable.  The Ninth Circuit has "consistently found use of
deadly force to stop a slow-moving vehicle is unreasonable when the officer could
have easily stepped out of the vehicle's path to avoid danger."  *Villanueva*, 986
F.3d at 1170.  Since 1996, "[i]n light of *Acosta,* all reasonable officers would
know" this statement of the law.  *Villanueva*, 986 F.3d at 1172 (referring to *Acosta
v. City and County of San Francisco*, 83 F.3d 1143 (9th Cir. 1996)).

Defendants point to *Plumhoff* and *Monzon v. City of Murrieta* to argue cases
support and authorize Officer's Koahou's conduct.[2]  [Motion at 22].  The Ninth
Circuit has interpreted these cases to hold that "deadly force against a stopped or
slow-moving vehicle [is] reasonable only when the driver was trying to evade
arrest in an aggressive manner involving attempted or actual acceleration of the
vehicle."  *Villanueva*, 986 F.3d at 1170 (citing *Plumoff*, 572 U.S. at 776 and
*Monzon v. City of Murrieta*, 978 F.3d 1150, 1161 (9th Cir. 2020)).  Particularly,
the Ninth Circuit boiled down the "key question" in distinguishing *Acosta,
Plumhoff, Monzon*, and other cases to be whether the suspect "accelerated or
attempted to accelerate toward the Officers before the Officers shot" at him.
*Villanueva*, 986 F.3d at 1170.

---

[2] Defendants also name *Williams v. City of Grosse Pointe Park,* a Sixth
Circuit case not binding on this Court, and an uncited case mentioned only once
called "*Vasquez*."  [Motion at 22; Reply at 10].  *See Williams v. City of Grosse
Pointe Park* 496 F.3d 482 (6th Cir. 2007).  The Court does not address these cases.

In the present case, it is undisputed Harper did not accelerate *toward* Officer Koahou. Officer Koahou was on the side of the vehicle during the encounter. [Dkt. 47-15, Ex. H-3]. When the Officer deployed deadly force, he was two to six feet from the driver's side of the car. [SUF ¶ 71]. No one was in front of the car, in its path, or needed to jump out of the way when the car began moving forward. [*Id*. ¶¶ 64–66]. Thus, *Acosta*, *Villanueva*, and the Ninth Circuit's "consistent[]" precedent provided Officer Koahou with notice his conduct was unconstitutional. *Villanueva*, 986 F.3d at 1170.

What is more, whether a reasonable officer would conclude Harper accelerated the vehicle to evade arrest at all, or rather in response to tasing, is the subject of genuine dispute. This inquiry is key to assessing the reasonableness of Officer Koahou's conduct. *See Orn*, 949 F.3d at 1174. While officers may make mistakes of fact and still be entitled to qualified immunity, the mistakes must still be reasonable. *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011)*Torres*. Ultimately, summary judgment on qualified immunity grounds is inappropriate in genuine disputes about the reasonableness of an officer's use of lethal force. *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate"). Accordingly, Officer Koahou is not entitled to qualified immunity.

## C.    State Law Claims

Defendants also move for summary judgment on Harper's related state claims of battery, negligence, and violation of the Bane Act, and assert a number of state immunities. [Motion at 23–27].

### 1.    Merits

On the merits, Harper's state claims survive Defendants' Motion. In California, battery is the state counterpart to federal excessive force claims and requires a showing of unreasonable force. *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1274 (1998). Similarly, under California negligence law, Harper must show Officer Koahou breached his duty of care to act reasonably. *Hayes v. County of San Diego*, 305 P.3d 252, 256 (2013). Defendants argue these claims fail because Officer Koahou's use of force was reasonable, however the Court has already addressed and disposed of this argument. [Motion at 23–25].

In excessive force cases, the Bane Act requires proof that the officer acted with the specific intent to violate a person's Fourth Amendment rights. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). Defendants argue there is no evidence indicating Officer Koahou's specific intent to use excessive force against Harper, and regardless, the force used was reasonable. [Motion at 25–26; Reply at 10]. However, Harper maintains Officer Koahou acted recklessly, [Opp. at 25], and "reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights." *Reese*, 888 F.3d at 1045. Defendants only rebuttal to Officer Koahou's alleged recklessness is to renew arguments the force used was reasonable. [Reply at 10]. As such, Defendants have not met their burden on this Motion and cannot foreclose Harper's Bane Act claim. *See Celotex Corp.,* 477 U.S. at 323.

### 2. Immunities

Defendants contend California Government Code Sections 821.6 and 820.2 shield Officer Koahou from liability regarding Harper's state claims, and Section 815.2 prevents the City of Redlands from suit as well. [Motion at 26–27]. The Court, however, disagrees.

Immunity under Section 821.6 "is limited to malicious-prosecution claims," which is inapplicable here. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 920 (9th Cir. 2017) (citing *Sullivan v. Cty. of Los Angeles*, 527 P.2d 865, 870–71 (Cal. 1974)). Additionally, it has "long been established" that Section 820.2 "does not apply to officers who use unreasonable force in making an arrest." *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007). Because Harper's state claims arise from Officer Koahou's unreasonable force, this immunity is also inapplicable. Lastly, Section 815.2 "clearly allows for vicarious liability of a public entity when one of its police officers uses excessive force in making an arrest," thus not protecting the City from suit. *See id*. at 488. Therefore, state immunities do not prevent Harper's claims.

## V.    CONCLUSION

Accordingly, Defendants' Motion is **DENIED** in its entirety. [Dkt. 47].

**IT IS SO ORDERED.**