James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
dlr@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendants CITY OF REDLANDS and OFFICER KOAHOU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| JUSTIN CODY HARPER,<br><br>                Plaintiff,<br><br>        vs.<br><br>CITY OF REDLANDS, REDLANDS POLICE DEPATMENT, POLICE OFFICER KOAHOU, and DOES 1 through 10 Inclusive,<br><br>                Defendants. | Case No.: CV23-00695 SSS (KK)<br>Judge:        Hon. Sunshine Sykes<br><br>**DEFENDANTS' LOCAL RULE 16-4 MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>**<u>Final Pre-trial Conference</u>**<br>Date: April 4, 2025<br>Time: 1:00 pm<br>Courtroom: 2<br><br>**<u>Trial</u>**<br>Date: April 21, 2025<br>Time: 9:00 am<br>Courtroom: 2<br><br>Complaint Filed: April 19, 2023 |

## <u>MEMORANDUM OF CONTENTIONS OF FACT AND LAW</u>

Pursuant to Local Rule 16-4, Defendants, City of Redlands and Officer Koahou, respectfully submits the following Memorandum of Contentions and Fact and Law in the above-captioned matter set for trial on April 21, 2025.

## I.    <u>INTRODUCTION</u>

On September 9, 2021, at approximately 4:00 a.m., Plaintiff Justin Harper smoked methamphetamine, taking approximately "10 hits." Ever since he was 18, Harper had smoked methamphetamine every few hours, conduct which would cause him to become "irritated" and which had caused him to get into approximately 10 to 15 physical fights. Harper has a criminal history which was so extensive that he had trouble recalling it during his deposition, but he did admit that he had a prior "strike" prior,  another prior for felony evading, and was on "PTRS" (a cross between parole and probation) at the time of these events. Harper also admitted that he had been kicked out of school in the Fourth Grade, he never went to high school, he had never had a "real job" and he never obtained a driver's license.

Approximately 8 hours later, Harper and his passenger, a woman named Lia More, were driving in a stolen Toyota Tundra pickup truck. As Harper was driving, he became aware that Officer Koahou was behind him and tried to get away from him by running red lights and driving at speeds of 85 to 90 mph. Harper failed to stop at a stop sign, struck a curb, lost control, and struck a work vehicle driven by Joseph Garcia and in which Corey Guerra was a passenger. After striking the work vehicle, Harper did not stop but instead fled the scene in the stolen Toyota. However, the stolen Toyota was damaged to the point that it could no longer be driven. Harper abandoned the stolen Toyota and both he and Moore fled the scene on foot.

Meanwhile, Garcia and Guerra were driving around and attempting to locate

Harper after he had hit their work vehicle. As Garcia and Guerra were searching for Harper, Harper approached them and asked for a ride, but once again fled on foot when he saw they were the two men he had struck with the stolen Toyota. Harper ran through multiple yards attempting to evade Officer Koahou as well as Garcia and Guerra.

Meanwhile, Martin Salazar was in the driveway of his home detailing his aunt's black Honda Accord and had the car running to allow the air conditioner to cool the inside of the car. Harper approached the black Honda, jumped in, and attempted to drive off. When Salazar yelled at Harper to get out and tried to prevent him from driving off, Harper used force to try shake Salazar from the car causing him to lose his balance and get dragged by the car. At this moment, Garcia and Guerra arrived on scene and saw the struggle between Salazar and Harper. When Salazar yelled for help, his neighbor Greg Gallo and Garcia attempted to assist in forcing Harper from the car while Guerra called 911. The struggle between the men became physical with the men attempting to subdue and strike Harper and pull him from the car.

When Officer Koahou arrived on scene, he observed the men struggling with Harper and ordered them to move away so they would not be shot. In response to this order, Garcia and Gallo moved away from the car as Officer Koahou approached the vehicle. Officer Koahou's subsequent interactions with Harper were recorded on his belt-worn audio recording device. Officer Koahou ordered Harper to get out of the car multiple times; however, Harper refused to do so. The stolen Honda was still running and Officer Koahou was concerned that Harper would attempt to flee again. When Harper refused multiple orders to get out of the vehicle, Officer Koahou deployed his taser.

After the taser was deployed, Harper started to reach for the gear shift of the vehicle. Officer Koahou attempted to pull Harper's hand from the gear shift and attempted to put the car in park. Officer Koahou yelled, "Don't do it!  Don't do it!

1  I'll shoot you!  Stop!  Stop!"  Harper hit the accelerator, causing the car to move.
2  Officer Koahou was reaching inside the car when the vehicle started to move.
3  Officer Koahou attempted to pull back away, but his arm was trapped on Harper's
4  chest. As the car started to move forward, Officer Koahou fired two defensive
5  shots without aiming. As the vehicle continued to move forward, the car's
6  momentum slammed the door on Officer Koahou. Both shots were fired within a
7  mere 5 seconds of the deployment of the taser and before the car door struck him.
8  Officer Koahou did not fire at Harper merely because Harper was driving away;
9  rather, he felt that he was an imminent threat and was attempting to stop the threat.

10         After the shots were fired, the car continued to accelerate and drove for
11  another few hundred feet before crashing. After the car came to rest, Harper got
12  out of the car on his own.  Harper was subsequently handcuffed, a tourniquet was
13  applied to his leg, and he was transported to Loma Linda Medical Center. A
14  shotgun was subsequently recovered from inside the stolen Toyota. As a result of
15  these actions, Harper was convicted of theft of the Toyota, hit and run with damage
16  on Garcia's work truck, possession of the shotgun, and carjacking of the black
17  Honda. After he was sentenced to State Prison for these offenses, Harper continued
18  to have problems including approximately 10 write-ups with four or five being for
19  battery. Harper currently expects to be released from prison in 2026.

20         Harper filed a Complaint for damages against Defendants alleging various
21  causes of action on April 19, 2023.

22

23  **II.    CLAIMS AND DEFENSES [L.R. 16-4.1]**

24         The Complaint alleges the following Claims for Relief against the City and
25  Officer Koahou (1) Violation of 42 U.S.C. Section 1983 [Excessive Force]; (2)
26  Battery; (3) Negligence; (4) Violation of California Civil Code 52.1 [Bane Act].[1]

27

28  [1] Plaintiff also plead a claim for Negligent Infliction of Emotional Distress but agreed not to pursue it during the Motion for Summary Judgment meet and confer process.

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

### A.    Summary of Plaintiff's Claims [L.R. 16-4.1(a)]

#### 1.    Plaintiff's First Claim for Violation of 42 U.S.C. § 1983

Plaintiff's First Claim for Relief is for Violation of 42 U.S.C. § 1983 [Excessive Force].

##### (a)    Elements of the First Claim

To establish a claim under section 1983 against Officer Koahou, Plaintiff must demonstrate (1) that the alleged wrongful action occurred "under color of state law;" and (2) that the action resulted in the deprivation of a constitutional right or federal statutory right. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); See also Ninth Circuit Manual of Model Jury Instructions: Civil § 9.3 (2017). Where, as here, the claimed deprivation of a constitutional right is the use of allegedly-excessive force, Plaintiff must demonstrate that the force used against Justin Harper on September 9, 2021 was objectively unreasonable under all the circumstances. Graham v. Connor, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); Palacios v. City of Oakland, 970 F. Supp. 732, 740 (N.D. Cal. 1997); see also Ninth Circuit Manual of Model Jury Instructions: Civil § 9.25 (2017).

A determination of the extent to which a particular use of force is "reasonable" cannot be achieved through a mechanical application of a particular test.  Instead, the appropriate analysis "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 citing Tennessee v. Garner, 471 U.S. 1, 8-9, 105 S.Ct. 1694, 85 L. Ed. 2d 1 (1985).

The inquiry is an objective one, the question being whether the officers' actions are objectively reasonable in light of the facts and circumstances

confronting them without regard to the officers' underlying intent or motivation, and without the "twenty/twenty vision of hindsight." Graham, 490 U.S. at 396-97; Palacios, 970 F. Supp. at 740. Police officers are not required to use the least intrusive degree of force possible; they are required only to act within a reasonable range of conduct. Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994); Forrester v. City of San Diego, 25 F.3d 804, 806-807 (9th Cir. 1994).

Although an officer may not use deadly force to apprehend a suspect when the suspect poses no immediate threat to the officer or others, "it is not constitutionally unreasonable to prevent escape using deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir.2010) *quoting* Garner, 471 U.S. at 11. The Supreme Court has indicated that "judges should be cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Ryburn v. Huff*, 565 U.S. 469, 477 (2012). Moreover, the most important single element of the three specified factors is whether the suspect poses an immediate threat to the safety of the officers or others. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th 2005).

"The government has an undeniable legitimate interest in apprehending criminal suspects, . . . and that interest is even stronger when the criminal is . . . suspected of a felony." *Miller v. Clark Cty.,* 340 F.3d 959, 964 (9th Cir. 2003) [citations omitted]. When dealing with a felony suspect, the "severity of the crime" factor "strongly favors the government." *Id.*

### (b)    Evidence in Opposition to the First Claim

Officer Koahou will testify, and audio and video evidence will show, that when viewed from the perspective of a reasonable officer at the scene on September 9, 2021, the use of force at issue in this case was reasonable as a matter of law. Officer Koahou will testify, and other evidence will show, that Officer

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

Koahou made the split-second decision to shoot under the following circumstances:

● Harper had a prior conviction for felony evading.

● Harper had smoked methamphetamine on the day of the shooting, taking approximately "10 hits."

● Ever since he was 18, Harper had smoked methamphetamine every few hours, conduct which would cause him to become "irritated" and which had caused him to get into approximately 10 to 15 physical fights.

● Harper has an extensive criminal history including a strike offense.

● Harper and his passenger, a woman named Lia More, were driving in a stolen Toyota Tundra pickup truck.

● Harper led Officer Koahou on a high speed pursuit at speeds of 85 to 90 mph.

● Harper failed to stop at a stop sign, struck a curb, lost control, and struck a work vehicle driven by Joseph Garcia and in which Corey Guerra was a passenger.

● After striking the work vehicle, Harper did not stop but instead fled the scene in the stolen Toyota. However, the stolen Toyota was damaged to the point that it could no longer be driven. Harper abandoned the stolen Toyota and both he and Moore fled the scene on foot.

● Harper ran through multiple yards attempting to evade Officer Koahou as well as Garcia and Guerra.

● Harper was a felon in possession of a firearm during the pursuit as there was a shotgun in the stolen Tundra.

● Harper carjacked another vehicle when the Tundra became disabled physically fighting with the car's owner.

● Officer Koahou ordered Harper to get out of the car multiple times; however, Harper refused to do so. T

- Officer Koahou attempted to tase Harper, but the TASER was ineffective.
- After the taser was deployed, Harper started to reach for the gear shift of the vehicle.
- Officer Koahou attempted to pull Harper's hand from the gear shift and attempted to put the car in park.
- Officer Koahou yelled, "Don't do it!  Don't do it!  I'll shoot you!  Stop! Stop!"
- Harper hit the accelerator, causing the car to move.
- Officer Koahou was reaching inside the car when the vehicle started to move.
- Officer Koahou attempted to pull back away, but his arm was trapped on Harper's chest.
- As the car started to move forward, Officer Koahou fired two defensive shots without aiming.
- As the vehicle continued to move forward, the car's momentum slammed the door on Officer Koahou.
- Both shots were fired within a mere 5 seconds of the deployment of the taser and before the car door struck him.
- After the shots were fired, the car continued to accelerate and drove for another few hundred feet before crashing.
- In the seconds before the shots were fired and as the shots were fired, Harper had begun to accelerate placing Officer Koahou at extreme risk.
- The threat posed by Harper was a clear and immediate threat to the life of Officer Koahou who was mere inches away from being crushed by the vehicle driven by Harper.
- Harper was a fleeing felon who posed a sufficient threat to the public at large.

Additionally, expert Clark will testify that the behavior of Mr. Harper as

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

described by witnesses, police, emergency department staff and videos from September 9, 2021, is consistent with being under the influence of and intoxicated by a stimulant drug such as methamphetamine. His agitated behavior, attempting to carjack a running car, drive it away while individuals were near the vehicle and almost striking them, and failing to comply with warnings by a police officer prior to being shot are consistent with being under the influence of a stimulant such as methamphetamine. The measured concentration of methamphetamine (179 ng/mL) found in his blood 11 hours after being admitted to the hospital, makes it medically probable that Mr. Harper was under the influence of methamphetamine at the time of his interaction with police on September 9, 2021, and his behavior was either contributed to or caused by intoxication with methamphetamine at that time.

Additionally, expert McFarlane will testify that the results of video and audio analysis; combined with the speed of sound calculations, determined the TASER was fired into 4.693 s prior to the first shot from Officer Koahou's firearm. Further, that Officer Koahou was in the doorway of the suspect vehicle at the time the first shot was fired. Shot 2 was fired .268 ms after shot one. The total time lapse from the TASER deployment until shot 2 sound report is 4.983 seconds.

Additionally, expert Flosi will testify that that the use of deadly force in this instance was reasonable, consistent with the officers' training, consistent with Redlands Police Department Policy, and consistent with contemporary policing practices. Flosi will further testify that the reaction time for an officer to recognize a threat, react to the threat and take action to neutralize the threat takes some time. It may be whole or fractions of seconds, but reactions take time to process while the incident, including suspect actions, often continue without pause. Further, Flosi will testify that Harper was less than an arm's reach away in a moving vehicle, committing a violent assault, and his actions created a reasonable belief of serious injury or death for Officer Koahou who believed he was about to be crushed or run over and had no other option to stop the threat Harper posed to him and the

bystanders but to fire his weapon.

## 2.   Plaintiff's Second Claim for Battery

Plaintiff's Second Claim for Relief is for Battery against all Defendants.

### (a)   Elements of the Second Claim

To prove battery, Plaintiff Harper must demonstrate that (1) Officer Koahou touched Plaintiff Harper with the intent to harm him; (2) that Plaintiff Harper did not consent to the touching; and (3) that Plaintiff Harper was harmed by Officer Koahou's conduct. Ashcraft v. King, 228 Cal.App.3d 604 (1991); See also Judicial Council of California Civil Jury Instructions (CACI) § 1300. To prove intent, Plaintiff Harper must prove either that Officer Koahou intended to commit a battery upon him or were substantially certain that the battery would result from his conduct. Judicial Council of California Civil Jury Instructions (CACI) § 1320.

Moreover, because the claim is for battery by a police officer, Plaintiff Harper must prove that the force used against him was unreasonable. See Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1273 (1998) ("a prima facie battery is not established unless and until plaintiff proves unreasonable force was used"); see also Price v. City of San Diego, 990 F. Supp. 1230, 1244 (S.D. Cal. 1998) (Section 820.2 of the California Government Code immunizes police officers from battery claims if the force used was not unreasonable).

### (b)   Evidence in Opposition to the Second Claim

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

## 3.   Plaintiff's Third Claim for Negligence

Plaintiff's Third Claim for Relief is for Negligence.

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

### (a)    Elements of the Third Claim

To establish a claim for negligence against Officer Koahou, Plaintiff must demonstrate that (1) Officer Koahou had a legal duty to use due care; (2) that Officer Koahou breached that duty; and that (3) the breach was the proximate or legal cause of the resulting injury to Harper. See Toomey v. Southern Pac. R. Co. (1890) 86 Cal. 374, 381. A person is negligent if he or she does something that a reasonably careful person would not do in the same situation or fails to do something that a reasonably careful person would do in the same situation. Judicial Council of California Civil Jury Instructions (CACI) § 401.

### (b)    Evidence in Opposition to the Third Claim

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

### 4.    Plaintiff's Fourth Claim for Violation Civil Code § 52.1

Plaintiff's Fourth Claim for Relief  is for Violation of California Civil Code section 52.1 against all Defendants.

### (a)    Elements of the Fourth Claim

To establish a claim for a violation of California Civil Code section 52.1 against Officer Koahou, Harper must demonstrate (1) Officer Koahou intentionally interfered or attempted to interfere with Harper's civil rights; (2) By threats, intimidation, or coercion. Cal.Civil.Code § 52.1; Jones v. Kmart Corp., 17 Cal.4th 329 (1998); Venegas v. County of Los Angeles, 32 Cal.4th 820, 841–843 (2004); see also Judicial Council of California Civil Jury Instructions (CACI) §3066. While a finding of a constitutional violation in an excessive force claim is sufficient to satisfy the "intimidation or coercion" element of *Civil Code* § 52.1, the Bane Act imposes an additional requirement beyond finding a constitutional violation (i.e., plaintiff must show officer had the *specific intent* to violate the suspect's rights). Cornell v. San Francisco, 17 Cal.App.5th 766 (2017).

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**(b)**     **Evidence in Opposition to the Fourth Claim**

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

## B.     Summary of Affirmative Defenses [L.R. 16-4.1(d)]

In addition to disputing Plaintiff's claims, the City and Officer Koahou have pled and plan to pursue the following affirmative defenses:

FIRST AFFIRMATIVE DEFENSE (Assumption of Risk): Justin Harper voluntarily assumed all risks, responsibility and liability for the alleged injuries or damages, if any, sustained by Justin Harper.

THIRD AFFIRMATIVE DEFENSE (Claims Barred by Govt. Code § 820.2): The state law claims in the Complaint are barred by the provisions of Government Code section 820.2.  Specifically, except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him/her, whether or not such discretion be abused.

FOURTH AFFIRMATIVE DEFENSE (Claims Barred by Govt. Code § 820.4): The state law claims in the Complaint are barred by the provisions of Government Code section 820.4. Specifically, a public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law.

FIFTH AFFIRMATIVE DEFENSE (Claims Barred by Govt. Code § 820.8): The state law claims in the Complaint are barred by the provisions of Government Code section 820.8. Specifically, except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person.

EIGHTH AFFIRMATIVE DEFENSE: (Claims Barred by Govt. Code § 845.8): The state law claims in the Complaint are barred by the provision of Government Code section 845.8.  Specifically, neither a public entity, nor a public employee is liable for any injury caused by (1) an escaping or escaped prisoner; (2) an escaping or escaped arrested person; or (3) a person resisting arrest.

TWELFTH AFFIRMATIVE DEFENSE (Speculative Damages): Defendants allege that Plaintiff's claims for damages are barred, either in whole or in part, because Plaintiff's purported damages are remote, speculative and/or unavailable as a matter of law.

THIRTEENTH AFFIRMATIVE DEFENSE (Lawful Conduct): Defendants allege that their conduct was at all times reasonable and lawful under the circumstances.

SIXTEENTH AFFIRMATIVE DEFENSE (Failure to Mitigate Damages): Defendants allege that that though under a duty to do so, Plaintiff has failed and neglected to mitigate the alleged damages, and therefore cannot recover against Defendants whether as alleged, or otherwise. Defendants are informed and believes and thereon allege that Plaintiff failed to exercise h duty to mitigate and limit their damage claim as to Defendants, which acts and omissions by Plaintiff have estopped Plaintiff from asserting any claim for damages or seeking the relief requested against Defendants.

TWENTIETH AFFIRMATIVE DEFENSE (Acts or Omissions of Plaintiff): Defendants allege that, to the extent Plaintiff suffered any damages, they were caused solely by the actions or omissions of Plaintiff.

TWENTY-FIRST AFFIRMATIVE DEFENSE (Comparative Negligence): The negligence claim is barred and/or subject to offset and reduction by virtue of the comparative negligence of Plaintiff.

TWENTY-SECOND AFFIRMATIVE DEFENSE (Apportionment): If it is found that Officer Koahou is legally responsible for the damages, if any, which Officer Koahou specifically denies, then such damages were proximately caused by or contributed to by Plaintiff or others, whether served or not, and it is necessary that the proportionate degree of fault of every such person be determined and prorated by the trier of fact, and that any judgment which might be rendered against any Officer Koahou be reduced by that percentage of fault to be found to exist of Plaintiff or others and causative fault, whether sued herein or not.

TWENTY-THIRD AFFIRMATIVE DEFENSE (Offset): Defendants allege that any amount for which it is held liable and owing to Plaintiff is offset by any and all amounts recovered by Plaintiff from any other responsible parties, such that Defendants' liability will be reduced in an amount corresponding to those recovered by Plaintiff from such other responsible parties.

TWENTY-FOURTH AFFIRMATIVE DEFENSE (Claims Barred Due to Exercise of Reasonable Force): Defendants allege that each and every claim for relief contained in the Complaint is barred because, at all times mentioned therein, Defendants allege that no more force, if any, was used on Plaintiff's person than was necessary to effect detention, overcome any resistance thereto, prevent escape thereon, and prevent injury to Defendants and others, and that such force, if any, was reasonable under the circumstances.

TWENTY-FIFTH AFFIRMATIVE DEFENSE (Claims Barred Due to Reasonable and Probable Cause to Detain): Defendants allege that each and every claim for relief contained in the Complaint is barred because, at all times mentioned therein, Defendants had reasonable and probable cause to detain and restrain Plaintiff.

TWENTY-SIXTH AFFIRMATIVE DEFENSE (Qualified Immunity): Officer Koahou alleges that the First Claim for Relief is barred because Officer Koahou is entitled to qualified immunity.

TWENTY-SEVENTH AFFIRMATIVE DEFENSE (Privilege): Any actions undertaken by Officer Koahou with regard to Plaintiff were privileged.

## C.    Elements Required to Establish Affirmative Defenses and Evidence in Support of Affirmative Defenses [L.R. 16-4.1(e) and (f)]

FIRST AFFIRMATIVE DEFENSE (Assumption of Risk)

1.    Elements of an Affirmative Defense for Assumption of Risk

Defendants allege that Plaintiff assumed the risk of his alleged injuries in actively resisting arrest by Officer Koahou -- an activity that carries inherent risk. "Primary assumption of risk arises where a plaintiff voluntarily participates in an activity or sport involving certain inherent risks; primary assumption of risk ... bar[s] recovery because no duty of care is owed as to such risks." (Connelly v. Mammoth Mountain Ski Area (1995) 39 Cal.App.4th 8, 11( internal citations omitted.)

2.    Evidence in Support of Affirmative Defense for Assumption of Risk

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

THIRD AFFIRMATIVE DEFENSE (Claims Barred by Govt. Code § 820.2)

    1.    Elements of an Affirmative Defense Under Government Code § 820.2

California Government Code section 820.2 grants immunity to public employees by providing: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act of omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." It provides immunity to peace officers for their discretionary acts in arrest situations as long as the force used was reasonable.  See Price, 990 F. Supp. at 1244; see also Ritschel, 137 Cal. App. 4th 107 at 124.

    2.    Evidence in Support of Affirmative Defense Under Government Code § 820.2

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

FOURTH AFFIRMATIVE DEFENSE (Claims Barred by Govt. Code § 820.4)

    1.    Elements of an Affirmative Defense Under Government Code § 820.4

California Government Code section 820.4 grants immunity to public employees by providing: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law."

    2.    Evidence in Support of Affirmative Defense Under Government Code § 820.4

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

FIFTH AFFIRMATIVE DEFENSE (Claims Barred by Govt. Code § 820.8)

    1.    Elements of an Affirmative Defense Under Government Code § 820.8

California Government Code section 820.8 grants immunity to public employees by providing: "Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person."

    2.    Evidence in Support of Affirmative Defense Under Government Code § 820.8

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

EIGHTH AFFIRMATIVE DEFENSE: (Claims Barred by Govt. Code § 845.8)

    1.    Elements of an Affirmative Defense Under Government Code § 845.8

California Government Code section 845.8 grants immunity to public employees by providing: "Neither a public entity, nor a public employee is liable for any injury caused by (1) an escaping or escaped prisoner; (2) an escaping or escaped arrested person; or (3) a person resisting arrest."

    2.    Evidence in Support of Affirmative Defense Under Government Code § 845.8

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

TWELFTH AFFIRMATIVE DEFENSE (Speculative Damages)

    1.    Elements of Speculative Damages Affirmative Defense

Speculative damages cannot be awarded in civil rights cases. Gunby v. Pennsylvania Electric Co., 840 F.2d 1108 (3d Cir. 1988). "Whatever its measure in a given case, it is fundamental that 'damages which are speculative, remote,

imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.' However, recovery is allowed if claimed benefits are reasonably certain to have been realized but for the wrongful act of the opposing party." <u>Piscitelli v. Friedenberg</u> 87 Cal.App.4th 953, 989 (2001) [internal citations omitted].

2.    Evidence in Support of Speculative Damages Affirmative Defense

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

THIRTEENTH AFFIRMATIVE DEFENSE (Lawful Conduct)

1.    Elements of Lawful Conduct Affirmative Defense

"It is not constitutionally unreasonable to prevent escape using deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" <u>Wilkinson v. Torres</u>, 610 F.3d 546, 551 (9th Cir.2010) *quoting* <u>Garner</u>, 471 U.S. at 11. Further, police officers are privileged by statute to use force to make an arrest, prevent escape, or overcome resistance, so long as the force used is not excessive.  <u>See</u> Cal. Penal Code § 835a; <u>See</u> <u>Edson v. City of Anaheim</u>, 63 Cal. App. 4th 1269, 1273, 1272-73 (1998).

2.    Evidence in Support of Lawful Conduct Affirmative Defense

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

SIXTEENTH AFFIRMATIVE DEFENSE (Failure to Mitigate Damages)

1.    Elements of Affirmative Defense for Failure to Mitigate Damages

Plaintiff must make reasonable efforts to mitigate damages. <u>Valle de Oro Bank v. Gamboa</u>, 26 Cal.App.4th 1686, 1691 (1994). To prove this affirmative defense, Defendants must show by a preponderance of the evidence that (1) that

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  the plaintiff failed to use reasonable efforts to mitigate damages and (2) the amount

2  by which damages would have been mitigated. Ninth Circuit Manual of Model

3  Jury Instructions: Civil § 5.3 (2017).

4        2.    Evidence in Support of Failure to Mitigate Damages Affirmative

5               Defense

6       See evidence in Section I.A.1.(b) above in reference to Plaintiff's First

7  Claim for Relief.

8

9  TWENTIETH AFFIRMATIVE DEFENSE (Acts or Omissions of Plaintiff)

10        1.    Elements of Acts or Omissions of Plaintiff Affirmative Defense

11       "Damages are monetary compensation awarded to parties who suffer detriment *for*

12  *the unlawful act or omission of another*; they are assessed by a court against wrongdoers

13  for the commission of a legal wrong of a private nature." <u>Meister v. Mensinger,</u> 230

14  Cal.App.4th 381, 396 (2014) [emphasis added]; <u>See</u> also Judicial Council of California

15  Civil Jury Instructions (CACI) § 3900. A plaintiff cannot recover damages for detriment

16  caused by their own acts or omissions. <u>Id.</u>

17

18        2.    Evidence in Support of Acts or Omissions of Plaintiff Affirmative

19               Defense

20       See evidence in Section I.A.1.(b) above in reference to Plaintiff's First

21  Claim for Relief .

22

23  TWENTY-FIRST AFFIRMATIVE DEFENSE (Comparative Negligence)

24        1.    Elements of an Affirmative Defense for Comparative Negligence

25       Officer Koahou alleges that Justin Harper's own negligence contributed, in whole

26  or in part, to his alleged injuries. To prove this affirmative defense, Officer Koahou must

27  show (1) That Justin Harper was negligent and (2) That Justin Harper's negligence was a

28  substantial factor in causing her harm. <u>See</u> Judicial Council of California Civil Jury

Instructions (CACI) § 405. If Officer Koahou proves the above, Plaintiff's damages should be reduced by the jury's determination of the percentage of Justin Harper's responsibility.  Id.

2.    Evidence in Support of Affirmative Defense for Comparative
      Negligence

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

TWENTY-SECOND AFFIRMATIVE DEFENSE (Apportionment)

1.    Elements of an Affirmative Defense for Apportionment

Officer Koahou alleges that the negligence or fault of Justin Harper or third parties contributed to Plaintiff's harm, if any. To prove this affirmative defense, Officer Koahou must show that: (1) That Justin Harper or third parties were negligent or otherwise at fault; and (2) That Justin Harper or third parties' negligence or fault was a substantial factor in causing Justin Harper's harm, if any. See Judicial Council of California Civil Jury Instructions (CACI) § 406. If the negligence or fault of Justin Harper or third parties was a substantial factor in causing Justin Harper's harm, then the proportionate degree of fault of every such person be determined and prorated by the trier of fact, and that any judgment which might be rendered against Officer Koahou be reduced by that percentage of fault to be found to exist of Justin Harper or others and causative fault, whether sued herein or not.

2.    Evidence in Support of Affirmative Defense for Apportionment

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief.

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

TWENTY-THIRD AFFIRMATIVE DEFENSE (Offset)

    1.     Elements of an Affirmative Defense for Offset

Officer Koahou alleges that Justin Harper's own negligence contributed, in whole or in part, to his alleged injuries. To prove this affirmative defense, Officer Koahou must show (1) That Justin Harper was negligent and (2) That Justin Harper's negligence was a substantial factor in causing her harm. See Judicial Council of California Civil Jury Instructions (CACI) § 405. If Officer Koahou proves the above, Plaintiff's damages should be offset by the jury's determination of the percentage of Justin Harper's responsibility.  Id.


    2.     Evidence in Support of Affirmative Defense for Offset

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .


TWENTY-FOURTH AFFIRMATIVE DEFENSE (Claims Barred Due to Exercise of Reasonable Force)

    1.     Elements of Exercise of Reasonable Force Affirmative Defense

"It is not constitutionally unreasonable to prevent escape using deadly force '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.'" Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir.2010) quoting Garner, 471 U.S. at 11. Further, police officers are privileged by statute to use force to make an arrest, prevent escape, or overcome resistance, so long as the force used is not excessive.  See Cal. Penal Code § 835a; See Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1273, 1272-73 (1998).

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

2.    Evidence in Support of Exercise of Reasonable Force Affirmative Defense

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

TWENTY-FIFTH AFFIRMATIVE DEFENSE (Claims Barred Due to Reasonable and Probable Cause to Detain)

1.    Elements of Reasonable and Probable Cause to Detain Affirmative Defense

Under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), the police may conduct "a brief, investigatory search or seizure, so long as they have a reasonable, articulable suspicion that justifies their actions." <u>Gallegos v. City of Los Angeles</u>, 308 F.3d 987, 990 (9th Cir.2002); <u>See also</u> Ninth Circuit Manual of Model Jury Instructions: Civil § 9.21 (2023).   The reasonable suspicion standard applied to investigatory stops is "a less demanding standard than probable cause," and merely requires "a minimal level of objective justification." <u>See</u> <u>Allen v. City of Los Angeles</u>, 66 F.3d 1052, 1056–57 (9th Cir.1995); <u>see also</u> <u>United States v. Jacobs</u>, 715 F.2d 1343, 1345–46 (9th Cir.1983) *quoting* <u>Illinois v. Wardlow</u>, 528 U.S. 119, 123 (2000).  In determining whether officers had reasonable suspicion to justify a brief seizure, courts must "look at the totality of the circumstances of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002).  This approach allows officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available" to them. <u>Id</u>. In <u>Wren  v. United States</u>, 517 U.S. 806, 166 S.Ct. 1769 (1996), the Supreme Court held that a traffic stop for an observed infraction is reasonable under the Fourth Amendment. <u>See</u> <u>Whren</u>, 517 U.S. at 810. The Supreme Court noted that investigatory traffic stops are akin to the on-the-street encounters

addressed in <u>Terry</u>, supra.

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted); <u>See also</u> Ninth Circuit Manual of Model Jury Instructions: Civil § 9.23 (2024). "Probable cause exists if the arresting officers had knowledge and reasonably trustworthy information of facts and circumstances sufficient to lead a prudent person to believe that [the arrestee] had committed or was committing a crime." <u>Gravelet-Blondin v. Shelton</u>, 728 F.3d 1086, 1097-98 (9th Cir. 2013) (alteration in original) *quoting* <u>Maxwell v. County of San Diego</u>, 697 F.3d 941, 951 (9th Cir. 2012)). "To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules.  It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar." <u>District of Columbia v. Wesby</u>, 138 S. Ct. 577, 586 (2018) (internal quotations and citations omitted); <u>see also</u> <u>Miller v. City of Scottsdale</u>, 88 F.4th 800, 804 (9th Cir. 2023).

2.      Evidence in Support of Reasonable and Probable Cause to Detain Affirmative Defense

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief .

TWENTY-SIXTH AFFIRMATIVE DEFENSE (Qualified Immunity)

1.    Elements of Qualified Immunity Affirmative Defense

The defense of qualified immunity requires a two prong analysis. First, "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right'? Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001). Second, if the plaintiff has succeeded in alleging a deprivation of a constitutional right, the plaintiff must still show that the constitutional right at issue was "clearly established." Id.; Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993). The query for the Court under this second part of the test is "whether reasonable officers could have believed their conduct lawful under the clearly established principals of law governing that conduct." Alexander v. County of Los Angeles, 64 F.3d 1315, 1319 (9th Cir. 1995).

Police officers are presumed to be protected by qualified immunity. See Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994). "To overcome this presumption [of qualified immunity protection], a plaintiff must show that the officer's conduct was 'so egregious that any reasonable person would have recognized a constitutional violation.'" Id. [internal citations omitted]. The standard is a demanding one. The contours of a right must be "sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) [emphasis added].

The U.S. Supreme Court has recently clarified that a governmental official is entitled to qualified immunity from suit/liability where, at the time of the conduct, there was no prior precedent or case law with facts specifically and substantially identical to the facts of the incident at issue which would have put the defendant on notice that his or her conduct was unconstitutional. White v. Pauly, 580 U.S. 73, 79 (2017) ("clearly established law" should not be defined "at a high level of

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1  generality" but must be "particularized" to the facts of the case). The Supreme

2  Court has emphasized this point again and again because qualified immunity is

3  important to society as a whole and because the immunity from suit is effectively

4  lost if a case is erroneously permitted to go to trial. Id. at 551-555.

5       Under the doctrine of qualified immunity, if a government official's mistake

6  as to what the law requires is reasonable, the government official is entitled to

7  qualified immunity. Davis v. Scherer, 468 U.S. 183, 205 (1984). Moreover, this

8  doctrine is sweeping in scope and designed to protect "all but the plainly

9  incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S.

10  335, 341 (1986). Finally, although law enforcement officers must be aware of

11  constitutional developments, they are not expected to do so to the same extent as

12  law professors. Indeed, a "reasonable person" standard applies. Ward v. San Diego

13  County, 791 F.2d 1329, 1332 (9th Cir. 1986).

14

15       2.    Evidence in Support of Qualified Immunity Affirmative Defense

16       See evidence in Section I.A.1.(b) above in reference to Plaintiff's First

17  Claim for Relief as to the first prong. As to the second prong, Plumhoff v. Rickard,

18  572 U.S. 765 (2014), Monzon v. City of Murrieta, 978 F.3d 1150 (9th Cir. 2020),

19  Williams v. City of Grosse Pointe Park, 496 F.3d 482 (6th Cir. 2007) are all, and in

20  some cases extremely, factually similar to the situation faced by Officer Koahou.

21  In each, the firing officer or officers were found to have acted reasonably.

22

23  TWENTY-SEVENTH AFFIRMATIVE DEFENSE (Privilege)

24       1.    Elements of Privilege Affirmative Defense

25       "It is not constitutionally unreasonable to prevent escape using deadly force

26  '[w]here the officer has probable cause to believe that the suspect poses a threat of

27  serious physical harm, either to the officer or to others.'" Wilkinson v. Torres, 610

28  F.3d 546, 551 (9th Cir.2010) quoting Garner, 471 U.S. at 11. Further, police

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

officers are privileged by statute to use force to make an arrest, prevent escape, or overcome resistance, so long as the force used is not excessive.  See Cal. Penal Code § 835a; See Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1273, 1272-73 (1998).

2. Evidence in Support of Privilege Affirmative Defense

See evidence in Section I.A.1.(b) above in reference to Plaintiff's First Claim for Relief

### D. Evidentiary Issues [L.R. 16-4.1(h)]

The City and Officer Koahou filed the following Motions in Limine:

1. Motion in Limine No. 1 to exclude economic calculation of damages and exclude any argument of a specific dollar amount for damages.

### E. Issues of Law [L.R. 16-4.1(i)]

The primary issues of law are whether the force used by the Defendant Officer Koahou was objectively reasonable under the circumstances. Additionally, are the issues of whether the actions of Officer Koahou are privileged and whether Officer Koahou is entitled to qualified immunity.

## III. BIFURCATION OF ISSUES [L.R. 16-4.3]

The Parties seek and have stipulated to bifurcation of issues as follows: Phase 1 – Liability, compensatory damages, and predicate findings with regard to punitive damages, if any. Phase 2 – Amount of punitive damages, if any.

## IV. JURY TRIAL [L.R. 16-4.4]

Plaintiffs have demanded a jury trial. The City and Officer Koahou estimates trial will last five (5) to seven (7) days total to complete.

## V.    <u>ATTORNEYS' FEES [L.R. 16-4.5]</u>

The Court may award, in its discretion, reasonable attorneys' fees to the prevailing party pursuant to 42 U.S.C. § 1988(b).

## VI.    <u>ABANDONMENT OF ISSUES [L.R. 16-4.6]</u>

The City and Officer Koahou abandon their Second, Sixth, Seventh, Tenth, Eleventh, Fourteenth, Fifteenth, Seventeenth, Eighteenth, and Nineteenth Affirmative Defenses.

Dated: March 20, 2025                                Respectfully submitted,

JONES MAYER


By: *s/ Denise L. Rocawivh*
JAMES R. TOUCHSTONE
DENISE LYNCH ROCAWICH
Attorneys for City of Redlands and
Officer Koahou