James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Denise L. Rocawich, SBN 232792
dlr@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone:  (714) 446-1400
Facsimile:   (714) 446-1448

Attorneys for Defendant,
OFFICER WILLIAM DORSEY JONES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN CODY HARPER,<br><br>       Plaintiff,<br><br>vs.<br><br>CITY OF REDLANDS, REDLANDS POLICE DEPATMENT, POLICE OFFICER KOAHOU, and DOES 1 through 10 Inclusive,<br><br>       Defendants. | Case No.:  CV23-00695 SSS (KK)<br>Judge:     Hon. Sunshine Sykes<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1 TO EXLUDE INFORMATION UNKNOWN TO OFFICER KOAHOU**<br><br>**<u>Final Pre-trial Conference</u>**<br>Date: April 4, 2025<br>Time: 1:00 pm<br>Courtroom: 2<br><br>**<u>Trial</u>**<br>Date: April 21, 2025<br>Time: 9:00 am<br>Courtroom: 2<br><br>Complaint Filed: April 19, 2023 |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

I.      INTRODUCTION .............................................................................................1

II.     FACTS AND EVIDENCE IMPORTANT TO THIS OPPOSITION.................1

III.    THE EVIDENCE ABOUT HARPER'S DRUG USE IS DIRECTLY
        RELEVANT, ADMISSIBLE AND FAR MORE PROBATIVE
        THAN PREJUDICIAL .......................................................................................4

IV.     EVIDENCE ABOUT HARPER'S CRIMINAL HISTORY,
        POSSESSION OF A FIREARM, AND PRISON DISCIPLINARY
        HISTORY IS DIRECTLY RELEVANT, ADMISSIBLE AND FAR
        MORE PROBATIVE THAN PREJUDICIAL .....................................................9

V.      CONCLUSION..................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Boyd v. City & County of San Francisco*,
576 F. 3d 938 (9th Cir. 2009) ............................................................ 5, 6, 9, 11

*D.W. v. Riverside County*,
2010 U.S. Dist. Lexis 35821 (C.D. CA Mar. 11, 2010) ................................ 5

*Dibbern v. City of Bakersfield*,
2024 U.S. Dist. LEXIS 155671 ........................................................................ 5

*Dominguez v. City of Los Angeles*,
2018 U.S. Dist. LEXIS 224976 (C.D. Cal. October 9, 2018)........................ 9

*Fields v. City of S. Houston, Tex.*,
922 F.2d 1183 (5th Cir. 1991) ........................................................................ 8

*Gorman v. City of San Diego*,
2012 WL 1835689 (S.D. CA May 12, 2012)................................................ 7

*Graham v. Connor*,
490 U.S. 386 (1289)........................................................................................ 4, 5

*Heath v. Cast*,
813 F.2d 254 (9th Cir.) *cert. denied*, 484 U.S. 849, 108 S. Ct. 147, 98 L.
Ed. 2d 103 (1987) .......................................................................................... 10

*Jackson v. Cnty of San Bernardino*,
194 F. Supp. 3d 1004(C.D. CA 2016) ........................................................ 7, 8

*Luchtel v. Hagemann*,
623 F. 3d 975 (9th Cir. 2010) ........................................................................ 5

*Rivas v. Knight Transportation Inc.*,
2017 WL 3453365 (C.D. CA Mar. 24, 2017).............................................. 7

*Saladino v. Winkler*,
609 F. 2d 1211 (7th Cir. 1979) ...................................................................... 5

*Sullivan v. City of Buena Park*,
2022 U.S. Dist. LEXIS 91684 (C.D. CA Apr. 11, 2022) ............................ 8

iii

*Surfvivor Media, Inc. v. Survivor Prods.*,
   406 F.3d 625 (9th Cir. 2005) ........................................................................ 9

*Turner v. White*,
   980 F. 2d 1180 (8th Cir. 1992) ..................................................................... 5

*United States v. Cook*,
   608 F.2d 1175 (9th Cir. 1979) ...................................................................... 12

*United States v. De La Cruz*,
   514 F.3d 121 (1st Cir. 2008) ......................................................................... 8

*United States v. Decinces*,
   808 F.3d 785 (9th Cir. 2015) ........................................................................ 11

*United States v. Feliz*,
   467 F.3d 227 (2d Cir. 2006) .......................................................................... 8

*United States v. Hursh*,
   217 F.3d 761 (9th Cir. 2000) ........................................................................ 12

*United States v. Llloyd*,
   807 F. 3d 1128 (9th Cir. 2015) ..................................................................... 7

*United States v. Lozano*,
   623 F.3d 1055 (9th Cir. 2010) ...................................................................... 11

*United States v. Mayans*,
   17 F.3d 1181 (9th Cir. 1994) ........................................................................ 11

*United States v. Parker*,
   549 F.2d 1217 (9th Cir. 1977) ...................................................................... 11

*United States v. Powell*,
   587 F.2d 443 (9th Cir. 1978) ........................................................................ 9

*Willis v. City of Fresno*,
   2014 U.S. Dist. LEXIS 52565 (E.D. Cal. Apr. 14, 2014) ............................ 4

*Zucchella v. Olympusat, Inc.*,
   2023 WL 2633947 (C.D. CA Jan 10, 2023) ................................................. 7

**California Cases**

*Li v. Yellow Cab Co.*,
   13 Cal. 3d 804 (1975) ................................................................................... 4

iv

**Other Authorities**

Fed. R. Evid. 401 ................................................................................................... 9

Fed. R. Evid. 403 ................................................................................................. 11

Fed. R. Evid. 404(b) .............................................................................. 9, 10, 11

Fed. R. Evid. 609(a)(1)(A) .................................................................................. 12

Fed. R. Evid. 609(a)(2) ....................................................................................... 12

Fed. R. Evid. 803(4) and 803(6)(B) ..................................................................... 8

# I.     <u>INTRODUCTION</u>

This action stems from an officer-involved shooting that occurred on September 9, 2021, after Plaintiff, in a stolen vehicle, led Redlands Officer Koahou on a high-speed pursuit, crashed the stolen vehicle, and carjacked a second vehicle. In his Motion in Limine No. 1, Plaintiffs ask this Court to exclude evidence of (1) Harper's drug use and intoxication on the day of the incident; (2) That Harper was a felon in possession of a firearm during the pursuit; and (3) Harper's criminal record and extensive disciplinary problems while incarcerated. As discussed in detail below, this evidence is directly relevant, highly probative and admissible for the purposes for which it is offered. Accordingly, Plaintiff's Motion in Limine No. 1 should be denied in its entirety.

# II.    <u>FACTS AND EVIDENCE IMPORTANT TO THIS OPPOSITION</u>

On September 9, 2021, at approximately 4:00 a.m., Plaintiff Justin Harper smoked methamphetamine, taking approximately "10 hits." Ever since he was 18, Harper had smoked methamphetamine every few hours, conduct which would cause him to become "irritated" and which had caused him to get into approximately 10 to 15 physical fights. Harper has a criminal history which was so extensive that he had trouble recalling it during his deposition, but he did admit that he had a prior "strike" prior,  another prior for felony evading, and was on "PTRS" (a cross between parole and probation) at the time of these events. Harper also admitted that he had been kicked out of school in the Fourth Grade, he never went to high school, he had never had a "real job" and he never obtained a driver's license.

Approximately 8 hours later, Harper and his passenger, a woman named Lia More, were driving in a stolen Toyota Tundra pickup truck. As Harper was driving, he became aware that Officer Koahou was behind him and tried to get away from him by running red lights and driving at speeds of 85 to 90 mph. Harper

1  failed to stop at a stop sign, struck a curb, lost control, and struck a work vehicle

2  driven by Joseph Garcia and in which Corey Guerra was a passenger. After

3  striking the work vehicle, Harper did not stop but instead fled the scene in the

4  stolen Toyota. However, the stolen Toyota was damaged to the point that it could

5  no longer be driven. Harper abandoned the stolen Toyota and both he and Moore

6  fled the scene on foot.

7  　　　　Meanwhile, Garcia and Guerra were driving around and attempting to locate

8  Harper after he had hit their work vehicle. As Garcia and Guerra were searching

9  for Harper, Harper approached them and asked for a ride, but once again fled on

10 foot when he saw they were the two men he had struck with the stolen Toyota.

11 Harper ran through multiple yards attempting to evade Officer Koahou as well as

12 Garcia and Guerra.

13 　　　　Meanwhile, Martin Salazar was in the driveway of his home detailing his

14 aunt's black Honda Accord and had the car running to allow the air conditioner to

15 cool the inside of the car. Harper approached the black Honda, jumped in, and

16 attempted to drive off. When Salazar yelled at Harper to get out and tried to

17 prevent him from driving off, Harper used force to try shake Salazar from the car

18 causing him to lose his balance and get dragged by the car. At this moment, Garcia

19 and Guerra arrived on scene and saw the struggle between Salazar and Harper.

20 When Salazar yelled for help, his neighbor Greg Gallo and Garcia attempted to

21 assist in forcing Harper from the car while Guerra called 911. The struggle

22 between the men became physical with the men attempting to subdue and strike

23 Harper and pull him from the car.

24 　　　　When Officer Koahou arrived on scene, he observed the men struggling with

25 Harper and ordered them to move away so they would not be shot. In response to

26 this order, Garcia and Gallo moved away from the car as Officer Koahou

27 approached the vehicle.  Officer Koahou's subsequent interactions with Harper

28 were recorded on his belt-worn audio recording device. Officer Koahou ordered

1  Harper to get out of the car multiple times; however, Harper refused to do so. The
2  stolen Honda was still running and Officer Koahou was concerned that Harper
3  would attempt to flee again. When Harper refused multiple orders to get out of the
4  vehicle, Officer Koahou deployed his taser.

5       After the taser was deployed, Harper started to reach for the gear shift of the
6  vehicle. Officer Koahou attempted to pull Harper's hand from the gear shift and
7  attempted to put the car in park. Officer Koahou yelled, "Don't do it!  Don't do it!
8  I'll shoot you!  Stop!  Stop!"  Harper hit the accelerator, causing the car to move.
9  Officer Koahou was reaching inside the car when the vehicle started to move.
10 Officer Koahou attempted to pull back away, but his arm was trapped on Harper's
11 chest. As the car started to move forward, Officer Koahou fired two defensive
12 shots without aiming. As the vehicle continued to move forward, the car's
13 momentum slammed the door on Officer Koahou. Both shots were fired within a
14 mere 5 seconds of the deployment of the taser and before the car door struck him.
15 Officer Koahou did not fire at Harper merely because Harper was driving away;
16 rather, he felt that he was an imminent threat and was attempting to stop the threat.

17      After the shots were fired, the car continued to accelerate and drove for
18 another few hundred feet before crashing. After the car came to rest, Harper got
19 out of the car on his own.  Harper was subsequently handcuffed, a tourniquet was
20 applied to his leg, and he was transported to Loma Linda Medical Center. A
21 shotgun was subsequently recovered from inside the stolen Toyota. As a result of
22 these actions, Harper was convicted of theft of the Toyota, hit and run with damage
23 on Garcia's work truck, possession of the shotgun, and carjacking of the black
24 Honda. After he was sentenced to State Prison for these offenses, Harper continued
25 to have problems including approximately 10 write-ups with four or five being for
26 battery. Harper currently expects to be released from prison in 2026.

27

28

OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1

## III.    THE EVIDENCE ABOUT HARPER'S DRUG USE IS DIRECTLY RELEVANT, ADMISSIBLE AND FAR MORE PROBATIVE THAN PREJUDICIAL

Harper seeks to preclude the introduction of evidence that he was intoxicated by methamphetamine during the incident including any testimony by Defendants' expert Richard Clark. Harper freely admitted to smoking methamphetamine the morning of the incident, and unlike many of the cases cited by Harper, Officer Koahou *did* suspect Harper was under the influence prior to the shooting. See Ex. A at p. 24:3-17 and B at p. 13:13-15 to Decl. Rocawich below. While Harper understandably does not want the jury to know he was under the influence of methamphetamine, that, in and of itself, does not render the evidence in admissible; nor is the issue of whether or not Officer Koahou was aware Harper was under the influence determinative.

First and foremost, the evidence that Harper was under the influence of methamphetamine at the time he led Officer Koahou on a high speed pursuit in a stolen vehicle, damaged private property, fled on foot, carjacked another vehicle, failed to comply with commands to exit the vehicle then accelerated when Officer Koahou was dangerously close to the vehicle is undoubtedly relevant on the issue of Harper's Third Claim for Relief for negligence and his comparative fault/contributory negligence. Under California law, "damages awarded shall be diminished in proportion to the amount of negligence attributable to the person recovering." *Li v. Yellow Cab Co.*, 13 Cal. 3d 804, 829 (1975). In *Willis v. City of Fresno*, 2014 U.S. Dist. LEXIS 52565 at *21-22 (E.D. Cal. Apr. 14, 2014), the Court specifically found that evidence of the decedent's intoxication was relevant and probative of the defendants' defense of comparative negligence.

Secondly, contrary to Harper's arguments, the Ninth Circuit has not held that information unknown to police officers at the time of the alleged incident can never be admissible. In fact, *Graham* held that evidence of facts unknown to a

4

1    police officer is admissible "in assessing the credibility of an officer's account of

2    the circumstances that prompted the use of force". *Graham v. Connor*, 490 U.S.

3    386, 399 n. 12 (1289); *See also Boyd v. City & County of San Francisco*, 576 F. 3d

4    938, 944 (9th Cir. 2009)[Holding that where the decedent's conduct was in dispute,

5    information unknown to the defendant officers at the time of a fatal shooting was

6    admissible because that information made more or less probable each side's

7    explanation of the decedent's conduct.]

8        Consistent with the *Graham* principle, the Ninth Circuit has held that where

9    the material facts are disputed, as they are here, information relevant to the conduct

10   of the decedent leading up to the use of force is admissible. *Boyd v. City & County*

11   *of San Francisco*, 576 F. 3d 938, 944 (9th Cir. 2009)[holding that evidence that

12   suspect was on drugs was relevant and admissible in an excessive force case

13   because it made assertions that suspect as acting erratically more probable].

14   Indeed, evidence of drug intoxication has been found relevant and admissible in

15   excessive force cases in numerous cases. *See D.W. v. Riverside County*, 2010 U.S.

16   Dist. Lexis 35821, at *4 (C.D. CA Mar. 11, 2010)[holding that evidence of a

17   suspect's intoxication was properly admitted at trial "because this evidence was

18   probative of decedent's conduct]; *Luchtel v. Hagemann*, 623 F. 3d 975, 980 (9th

19   Cir. 2010) [citing hospital medical report showing that plaintiff was under the

20   influence of crack cocaine in considering whether the police officers used a

21   reasonable amount of force while arresting her]; *Saladino v. Winkler*, 609 F. 2d

22   1211, 1224 (7th Cir. 1979)[evidence of plaintiff's intoxication deemed relevant

23   and admissible because the evidence "Tends to make more probable that the

24   plaintiff acted as a the defended contended he did or that the plaintiff otherwise

25   conducted himself in such a manner as to place the defendant reasonably in fear of

26   his life"]; *Turner v. White*, 980 F. 2d 1180, 1182-82 (8th Cir. 1992)[evidence of

27   intoxication was relevant in considering the officer's actions in relation to all

28   circumstances that confronted him, in accordance with *Graham*; *Dibbern v. City of*

1  *Bakersfield*, 2024 U.S. Dist. LEXIS 155671, *11 [Evidence of Plaintiff's drug

2  intoxication by methamphetamine was relevant and admissible.]

3      Here, there are significant disputes in testimony such that information

4  relevant to the conduct of Harper leading up to the use of force, including his

5  intoxication, is admissible. *See Boyd*, supra 576 F. 3d at 944. Most notably, Harper

6  testified in deposition that before the shooting, and even before Officer Koahou

7  tased him, he surrendered and had his hands raised in surrender. Ex. A at p. 52:22-

8  25, 53:1-20 to Decl. Rocawich below. Harper also testified that Officer Koahou

9  had both hands on his weapon when he fired. Ex. A at p. 55:25, 56:1-6. This is in

10  stark contrast to what Officer Koahou will testify, which is that Harper never

11  surrendered, never raised his hands, and was actively struggling with Koahou, with

12  one of Koahou's arms trapped under Harper's, when the shots were fired. Further,

13  Harper testified in deposition that he was "forced" to accelerate the vehicle

14  feigning innocence in connection with the action putting Officer Koahou in danger

15  of serious and immediate harm. Ex. A at 58:19-21. This vastly differs from Officer

16  Koahou's version of events wherein Harper had his hand on the shifter,

17  presumably to put the car into gear, and that Officer Koahou grabbed Harper's

18  hand trying to prevent him from doing so immediately prior to Harper accelerating.

19      The fact that Harper was under the influence of methamphetamine is a

20  relevant factor for the jury to consider in deciding whether Harper surrendered and

21  whether he had no intention of accelerating as he claims or if he was still

22  attempting to evade and escape. Evidence that Harper was under the influence of

23  methamphetamine is also relevant to the jury's determination of what occurred and

24  to explain Harper erratic conduct including his leading the police on a vehicle

25  pursuit, his hit and run, his repeated attempts to evade, his efforts to flee on foot,

26  his carjacking a car and his failure to stop.

27      Finally, courts have also routinely admitted evidence that a plaintiff was

28  intoxicated or under the influence because it is relevant to the plaintiff's credibility

6

in remembering the events at issue. *Jackson v. Cnty of San Bernardino*, 194 F. Supp. 3d 1004, 1010-11(C.D. CA 2016)[denying the plaintiff's motion in limine in an excessive force case to the extent it sought to exclude evidence (which included a positive toxicology result) that the plaintiff was intoxicated with drugs or alcohol on the day of the incident because the plaintiff's intoxication during a standoff with law enforcement was relevant to his credibility in remembering events.]; *Zucchella v. Olympusat, Inc.*, 2023 WL 2633947, at * 4 (C.D. CA Jan 10, 2023)[finding plaintiff's drinking at an event about which she testified was relevant to her ability to recall and perceive events]; *Rivas v. Knight Transportation Inc.*, 2017 WL 3453365, at * 2 (C.D. CA Mar. 24, 2017)[holding same]; *Gorman v. City of San Diego*, 2012 WL 1835689, at * 7 (S.D. CA May 12, 2012)[holding same] *citing Rheaume v. Patterson*, 289 F. 2d 611, 614 (2nd Cir. 1961).

Finally, one of the factors that is clearly set forth in Ninth Circuit Model Jury Instruction 9.25 is "the parties relative culpability i.e., which party created the dangerous situation and which party is more innocent." Thus, its probative value must be substantially outweighed by any one of the alleged risks of unfair prejudice, confusion of issues, etc. *See United States v. Llloyd*, 807 F. 3d 1128, 1151-52 (9th Cir. 2015). Harper's  being under the influence of methamphetamine and displaying the symptoms which are reflective of that intoxication demonstrates that he created the dangerous condition and he is not "more innocent".

As noted above, Harper admitted to methamphetamine use the day of the incident. Additionally, Harper had blood drawn on September 10, 2021, at 0013 (about 11 hours after the incident) that was tested for substances at Bio-Tox Laboratories. The test results demonstrated methamphetamine at a concentration of 179 ng/mL, and amphetamine (metabolite of methamphetamine) at a concentration of 26 ng/mL. Since this blood was drawn several hours after the incident, it is almost certain that his blood levels of methamphetamine were higher at the time of the incident. Defendants have identified multiple witnesses from Bio-Tox

1   Laboratories who did the testing and generated the report to come testify at trial to

2   lay the foundation for the Toxicology Report and to testify as to the levels that

3   were detected hours after the subject incident. It is Defendants' position that the

4   aforementioned witnesses can testify as to the results of the Toxicology Report.

5       To the extent Defendants seek to move the Report into evidence, Defendants

6   can lay the proper foundation for one of the hearsay exceptions. *See* Fed. R. Evid.

7   803(4) and 803(6)(B); *United States v. De La Cruz*, 514 F.3d 121, 133 (1st Cir.

8   2008); *United States v. Feliz*, 467 F.3d 227, 236 (2d Cir. 2006); *Fields v. City of S.*

9   *Houston, Tex.*, 922 F.2d 1183, 1191 n. 9 (5th Cir. 1991); *Sullivan v. City of Buena*

10  *Park*, 2022 U.S. Dist. LEXIS 91684, at *10 (C.D. CA Apr. 11, 2022). Further,

11  even if the Report did not come in, there is no reason that the levels would not. *See*

12  e.g., *Jackson v. Cnty of San Bernardino*, 194 F. Supp. 3d 1004, 1010-11(C.D. CA

13  2016)[denying the plaintiff's motion in limine in an excessive force case to the

14  extent it sought to exclude evidence including a positive toxicology result].

15      Dr. Clark, whose testimony Harper seeks to exclude, renders opinions that

16  can be easily summarized as follows: Harper was under the influence of

17  methamphetamine and his non-compliant behavior as described by witnesses at the

18  time of the subject incident is consistent with being under the influence of

19  methamphetamine. The effects of methamphetamine contributed to or led to his

20  reckless driving and noncompliant behavior witnessed on that evening. Quite

21  frankly, the exact level of methamphetamine in Harper's blood at the time of the

22  subject incident is not required to render such an opinion. Other than the fact that

23  Harper does not want his methamphetamine intoxication to be introduced into

24  evidence, Dr. Clark's opinions should not be meaningfully controversial

25  particularly given Harper's admission of methamphetamine use. Based on the

26  above, there is no doubt that evidence of Plaintiff's intoxication is relevant and

27  admissible. Any concern about the evidence being purportedly "more prejudicial

28  than probative" can be addressed by simply offer a limiting instruction.

8

## IV.   EVIDENCE ABOUT HARPER'S CRIMINAL HISTORY, POSSESSION OF A FIREARM, AND PRISON DISCIPLINARY HISTORY IS DIRECTLY RELEVANT, ADMISSIBLE AND FAR MORE PROBATIVE THAN PREJUDICIAL

Relevancy is very broadly defined. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. District courts have broad discretion in determining whether evidence is relevant for discovery purposes. *See Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005). "[E]vidence of other crimes must be relevant to prove an issue in the case. *United States v. Powell*, 587 F.2d 443, 448 (9th Cir. 1978).

As above, the evidence of Harper's extensive criminal history and possession of a firearm the day of the incident is directly relevant – even if not known to Officer Jones at the time of the shooting. In *Dominguez v. City of Los Angeles*, 2018 U.S. Dist. LEXIS 224976 (C.D. Cal. October 9, 2018), an officer-involved shooting case, the District Court ruled on a Motion in Limine and stated that "Courts may permit the introduction of information unknown to an officer at the time of the shooting." *Quoting Graham*, 490 U.S. at 399 n.12 ["[I]n assessing the credibility of an officer's account of the circumstances that prompted the use of force, a factfinder may consider . . . evidence that the officer" did not know at the time of the alleged rights violation.]; and *Boyd*, 576 F.3d at 944. Harper's criminal history, being a felon in possession on the day of the incident, numerous disciplinary write-ups while in prison makes it far more probable that he was intent on escaping arrest and less probable that he simply "surrendered" to Officer Koahou as he alleges.

As to admissibility, evidence of prior wrongful conduct is not admissible to show the bad character of the defendant. Fed. R. Evid. 404(b). In other words,

evidence of the bad character of a plaintiff where the only relevance is propensity is forbidden. However, Rule 404(b) permits "other crimes" evidence if its purpose is to prove *something other* than a disposition to commit the crime charged. *See Heath v. Cast*, 813 F.2d 254, 259 (9th Cir.) *cert. denied*, 484 U.S. 849, 108 S. Ct. 147, 98 L. Ed. 2d 103 (1987) [past violent acts of the plaintiff admissible in an excessive force case when relevant to some issue other than propensity to act in a violent manner.] "Other crimes" evidence is also admissible when offered as evidence of a defendant's motive, common scheme or plan, preparation, intent, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b).

Here, Defendants do not offer evidence of "other crimes" by Harper to show that he had a propensity or acted in conformity. Rather, Harper's conduct is relevant to the central issue in this case, namely the reasonableness of the force necessary to take Harper into custody. More specifically, evidence about Harper's criminal history and his being armed at various points of the encounter are all directly relevant to the totality of circumstances facing Officer Koahou, the reasonable suspicion/probable cause of Officer Koahou, the reasonableness of Officer Koahou's subjective beliefs and the intent, preparation and/or plan of Harper.

Harper has characterized himself as surrendering and of not intentionally accelerating the vehicle. Essentially, that he was little to no threat to Officer Koahou at the time force was used – a key issue in the case. Harper was anything but innocuous or a compliant suspect as demonstrated by his violent history, his possession of a firearm that day despite being a convicted felon, his crimes leading up to the shooting and his continued violent behavior after conviction. In other words, Harper's intent that day becomes exceedingly clear when these things are considered. Moreover, Officer Koahou will testify that persons in stolen vehicles and persons who commit carjackings are often armed thus creating a heightened sense of danger in interacting with such individuals. Harper, it turns out, was

indeed armed during various points of the incident.

If the court determines the "other crimes" evidence is relevant and admissible under Rule 404(b), the court must next determine whether the probative value of the evidence is substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (*United States v. Mayans*, 17 F.3d 1181, 1183 (9th Cir. 1994); *United States v. Lozano*, 623 F.3d 1055, 1060 (9th Cir. 2010); Fed. R. Evid. 403).

Here, Defendants admit the evidence at issue is prejudicial to Plaintiffs. However, "proof that evidence was prejudicial to one party is insufficient to establish that the prejudice was unfair." (*Boyd*, supra 576 F.3d at 948.) Relevant evidence "***is not rendered inadmissible because it is of a highly prejudicial nature. . . . The best evidence often is***." (*United States v. Parker*, 549 F.2d 1217, 1222 (9th Cir. 1977) *quoting United States v. Mahler*, 452 F.2d 547, 548 (9th Cir. 1971) (per curiam) [emphasis added]). Rule 403 "refers only to unfair prejudice." *United States v. Decinces*, 808 F.3d 785, 791 (9th Cir. 2015).

Here, the probative value of the evidence far outweighs their prejudicial effect. As discussed in detail above, the probative value of the evidence at issue is significant as it establishes Harper's intentions, the state of mind of Officer Koahou, the totality of the circumstances facing Officer Koahou, and the appropriateness and objective reasonableness of Officer Koahou's response. This is especially true in light of Plaintiffs' characterizations of Harper as compliant and posing little to no threat. Further, the prejudicial effect of the evidence can be minimized with a limiting instruction designed to prevent the jury from considering the evidence for improper purposes.

Finally, Harper's criminal history is admissible for impeachment under Federal Rule of Evidence 609. Evidence that a witness has been convicted of a crime, punishable by imprisonment exceeding one year, is admissible for purposes

11

of attacking a witness's truthful character. Fed. R. Evid. 609(a)(1)(A). Prior convictions involving elements or admitted acts of dishonesty or false statements may also be used to impeach, regardless of the length of incarceration. Fed. R. Evid. 609(a)(2). Under Rule 609(b), however, prior convictions older than ten years are admissible for impeachment purposes if their probative value substantially outweighs any prejudicial effect and reasonable written notice of intent to use is given. Fed. R. Evid. 609(b).

The Ninth Circuit has outlined five factors for courts to consider when balancing the probative value of evidence against the prejudicial effect under Rule 609: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the party's testimony; and (5) the centrality of the party's credibility. *United States v. Hursh*, 217 F.3d 761, 768 (9th Cir. 2000).

Here, Harper has been convicted of multiple felonies, has a prior "strike", was a felon in possession the day of the incident all of which should be admitted for impeachment and is also directly relevant to show bias and motives and relevant to the instant case. Harper's criminal history prior to the incident a his continued violence in prison shows a blatant disregard both for authority as well as for the sanctity of human life. Moreover, if Harper misrepresents his character and his prior criminal history and attempts to portray himself as a person who is a law-abiding citizen, then Defendants should be allowed to impeach him with his criminal history. *See United States v. Cook*, 608 F.2d 1175, 1187 (9th Cir. 1979).

//
//
//
//
//

OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE NO. 1

# V.     CONCLUSION

For all of the foregoing reasons, Defendants respectfully request the Court deny Plaintiffs' Motion in Limine No. 1.

Dated:  March 20, 2025

Respectfully Submitted,

JONES MAYER


By: *s/Denise L. Rocawich*
JAMES R. TOUCHSTONE
DENISE L. ROCAWICH
Attorneys for Defendants City of
Redlands and Officer Koahou

13

## DECLARATION OF DENISE LYNCH ROCAWICH IN SUPPORT OF OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE NO. 1

I, Denise Lynch Rocawich, declare:

1.      I am an attorney licensed to practice law in the State of California. I am a partner in the law firm of Jones & Mayer. I am counsel of record for the City of Fullerton and Officer Koahou. I have personal knowledge of the following facts and, if called as a witness, I would and could competently testify thereto.

2.      Attached hereto as Exhibit "A" are true and correct copies of relevant pages of the Deposition of Plaintiff, Justin Harper which was taken on October 23, 2024 in front of a certified court reporter.

3.      Attached hereto as Exhibit "B" are true and correct copies of relevant pages of the Deposition of Defendant, Officer Koahou which was taken on October 10, 2024 in front of a certified court reporter.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 20th day of March, 2025, at Fullerton, California.

_/s/Denise Lynch Rocawich_____
Denise Lynch Rocawich, Esq.

**EXHIBIT A**

```
 1              UNITED STATES DISTRICT COURT FOR THE

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                            --oOo--

 4

 5    JUSTIN CODY HARPER,              CASE NO.:

                                       5:23-cv-00695 SSS (DTBx)

 6          Plaintiff,

 7    vs.

 8    CITY OF RELANDS, REDLANDS

      POLICE DEPARTMENT, POLICE

 9    OFFICER KOAHOU, and DOES 1

      through 10, Inclusive,

10

              Defendants.

11    _____/

12

13

14

15

16        VIDEOTAPED DEPOSITION OF JUSTIN CODY HARPER

17                  VACAVILLE, CALIFORNIA

18                   OCTOBER 23, 2024

19

20

21

22

23

24    REPORTED BY:  CARI L. GONZAGA, CSR NO. 12401

25    FILE NO.:  6932631
```

                                              Page 1

```
 1              UNITED STATES DISTRICT COURT FOR THE
 2                 CENTRAL DISTRICT OF CALIFORNIA
 3                            --o0o--
 4
 5   JUSTIN CODY HARPER,              CASE NO.:
                                      5:23-cv-00695 SSS (DTBx)
 6           Plaintiff,
 7   vs.
 8   CITY OF RELANDS, REDLANDS
     POLICE DEPARTMENT, POLICE
 9   OFFICER KOAHOU, and DOES 1
     through 10, Inclusive,
10
             Defendants.
11   _____/
12
13
14
15
16
17
18
19
20           Deposition of JUSTIN CODY HARPER, taken on
21   behalf of the Defendants, at California State Prison
22   Solano, 2100 Peabody Road, Vacaville, California 95687,
23   commencing at 10:41 a.m., Wednesday, October 23, 2024,
24   before Cari L. Gonzaga, CSR No. 12401.
25
```

Page 2

```
 1              A P P E A R A N C E S:
 2
      FOR THE PLAINTIFF:
 3
          BY:   JAMES S. TERRELL, ESQ.
 4                LAW OFFICE OF JAMES S. TERRELL
                  15411 Anacapa Road
 5                Victorville, CA 92393
                  760-951-5850
 6                jim@talkterrell.com
 7    FOR THE DEFENDANT:
 8          BY:   DENISE L. ROCAWICH, ESQ.
                  JONES MAYER
 9                3777 North Harbor Boulevard
                  Fullerton, CA 92835
10                714-446-1400
                  dlr@jones-mayer.com
11
12    ALSO PRESENT:   STEPHEN SANTOS, VIDEOGRAPHER
13
14
15
16
17
18
19
20
21
22
23
24
25
```

                                          Page  3

```
 1   you have any alcohol?
 2        A    No.
 3        Q    Had you taken any drugs?
 4        A    Earlier, the night before.
 5        Q    And was that methamphetamine?
 6        A    Yes.
 7        Q    And how was it taken, liked smoked?
 8        A    Smoked.
 9        Q    How much?
10        A    Maybe like ten hits throughout the night.
11        Q    When -- what part of the night was the last
12   hit?
13        A    Four, 4-ish.
14        Q    Four p.m.?
15        A    In the morning.
16        Q    Oh, a.m.?
17        A    Yes.
18        Q    So how many hours before you were shot did you
19   smoke your last bit of meth?
20        A    Maybe like eight hours or more, probably like
21   eight, somewhere in there, from four until like the
22   moment I got shot, so I didn't do nothing.
23        Q    And there was a glass meth pipe found with the
24   Toyota Tundra we'll talk about a little bit later.
25             Was that your pipe?
```

Page 24

Justin Cody Harper
October 23, 2024

```
 1        Q    With both hands?
 2        A    I don't know if it was both or one.  I
 3   remember he was trying to yank me out of the car though.
 4        Q    And what were you doing?
 5        A    Grabbing onto the steering wheel.
 6        Q    Did you ever grab onto the officer?
 7        A    No.
 8        Q    So did you ever grab onto the officer's arm at
 9   any point prior to the shooting?
10        A    I don't think so.  Maybe he was trying to pull
11   me out.  I'm trying to cover myself.  I didn't grab him
12   though.
13        Q    Prior to being tased, did you see the taser?
14        A    No, but in time, I remember that a taser gun
15   hit me.
16        Q    Okay.  And did the officer tell you he was
17   going to tase you?
18        A    Yes.
19        Q    Do you remember how many times he told you he
20   was going to tase you before he actually did?
21        A    No.
22        Q    So before being tased, he warned you he was
23   going to do that, so you knew you might be tased; is
24   that accurate?
25        A    Yes, that's why I tried to surrender.
```

Page 52

Justin Cody Harper
October 23, 2024

```
1        Q      At what point did you try to surrender?
2        A      Once I thought they were going to shoot me, I
3   didn't really know if they were or not.
4        Q      Did you try and surrender before or after you
5   were tased?
6        A      Before.
7        Q      And when you say you tried to surrender, what
8   did you do?
9        A      I told them I was ready to get out of the
10  vehicle.
11       Q      Did you let go of the steering wheel?
12       A      Yes.
13       Q      And where were your hands, at that point, when
14  you let go of the steering wheel and said you're ready
15  to give up and get out of the vehicle?
16       A      I put them up.
17       Q      So when you were tased, you were no longer
18  holding onto the steering wheel, and your hands were up;
19  is that accurate?
20       A      Yes.
21       Q      Do you know at the time you were tased,
22  whether the Honda was in park or drive?
23       A      When I pulled out in reverse, I put it in
24  drive but it wasn't going.
25       Q      Was the emergency brake on?
```

Page 53

```
 1        A     No.

 2        Q     Did you have any marks on any part of your

 3   body besides the obvious?

 4        A     Well, on this side of my body, my leg was

 5   broken, my fingers were shot, so I went through two

 6   surgeries.  It took a while.  I didn't wake up for a

 7   while.

 8        Q     Okay.  So besides the gunshot wounds, did you

 9   have any kind of other wounds to your body?

10        A     I don't know, Miss.  I was in and out --

11              MS. TERRELL:  No more questions.

12              Next question.

13   BY MS. ROCAWICH:

14        Q     So you said you were tased, and then you hit

15   the accelerator; is that correct?

16        A     Yes.

17        Q     And then you were shot after hitting the

18   accelerator; is that correct?

19        A     Yes.

20        Q     Did the car move forward when you hit the

21   accelerator?

22        A     Yes.

23        Q     And where was the cop when that happened?

24        A     On the side of the vehicle.

25        Q     Was he still touching you?
```

Page 55

```
 1        A     When he shot me?
 2        Q     Yes, did he have one hand on you, or did he
 3   have both hands on his gun?
 4        A     Both hands were on the gun, but I know he --
 5   well, actually, they had to have both hands on their
 6   gun, so yeah.
 7        Q     Would you agree that a car can be used to
 8   injure someone?
 9        A     Yes.
10        Q     And then if you get run over by a car, you
11   could be seriously injured?
12        A     Yes.
13        Q     Or maybe even killed?
14        A     Yes.
15        Q     So immediately before you were shot, the
16   officer was being, kind of, dragged along the car as you
17   started driving; is that correct?
18              MS. TERRELL:  Misstates the testimony about
19   being dragged.
20              Go ahead.
21              THE WITNESS:  About what?
22   BY MS. ROCAWICH:
23        Q     Was the officer being dragged?
24        A     No.
25        Q     And you said you never layed hands on the
```

Page 56

```
 1       Q    So even after you weren't still shocked, you
 2  were still pressing the accelerator; is that correct?
 3       A    No, it was driving slowly down the road, and
 4  then it stopped.
 5       Q    So you got tased and then you got shot and
 6  then you said the car was moving slowly towards San
 7  Bernardino?
 8       A    It went fast and hit the court and it crashed
 9  and it started rolling.  It didn't accelerate anymore
10  after that.
11       Q    So when it was going fast, was that after you
12  were shot?
13       A    Yes.
14       Q    And you weren't being shocked anymore by the
15  taser; is that correct?
16            MS. TERRELL:  Do you understand the question?
17            THE WITNESS:  No.
18  BY MS. ROCAWICH:
19       Q    So you were shocked by the taser which you
20  said forced you to accelerate; is that true?
21       A    Yes.
22       Q    And then you continued to accelerate even
23  after you were no longer being tased; is that correct?
24       A    Yes.  Do you know how many houses are on that
25  bluff?
```

Veritext Legal Solutions
calendar-abi@veritext.com 818-551-7300          www.veritext.com

Justin Cody Harper
October 23, 2024

```
 1                    REPORTER'S CERTIFICATE

 2

 3            I, CARI L. GONZAGA, CSR No. 12401, Certified

 4    Shorthand Reporter, certify:

 5            That the foregoing proceedings were taken

 6    before me at the time and place therein set forth, at

 7    which time the witness was put under oath by me;

 8            That the testimony of the witness, the

 9    questions propounded, and all objections and statements

10    made at the time of the examination were recorded

11    stenographically by me and were thereafter transcribed;

12            That the foregoing is a true and correct

13    transcript of my shorthand notes so taken.

14            I further certify that I am not a relative or

15    employee of any attorney of the parties, nor financially

16    interested in the action.

17            I declare under penalty of perjury under the

18    laws of California that the foregoing is true and

19    correct.

20

              Reading and signing was requested.

21

22            Dated this 27th day of November, 2024.

23

24            CARI L. GONZAGA, CSR NO. 12401

25
```

Page 80

```
1    JAMES S. TERRELL, ESQ.

2    jim@talkterrell.com

3                                    12/2/2024

4    RE: Harper, Justin Cody v. City Of Redlands

5    10/23/2024, Justin Cody Harper, (#6932631).

6    The above-referenced transcript has been

7    completed by Veritext Legal Solutions and

8    review of the transcript is being handled as follows:

9    __ Per CA State Code (CCP 2025.520 (a)-(e)) - Contact Veritext

10      to schedule a time to review the original transcript at

11      a Veritext office.

12   __ Per CA State Code (CCP 2025.520 (a)-(e)) - Locked .PDF

13      Transcript - The witness should review the transcript and

14      make any necessary corrections on the errata pages included

15      below, notating the page and line number of the corrections.

16      The witness should then sign and date the errata and penalty

17      of perjury pages and return the completed pages to all

18      appearing counsel within the period of time determined at

19      the deposition or provided by the Code of Civil Procedure.

20      Contact Veritext when the sealed original is required.

21   __ Waiving the CA Code of Civil Procedure per Stipulation of

22      Counsel - Original transcript to be released for signature

23      as determined at the deposition.

24   __ Signature Waived - Reading & Signature was waived at the

25      time of the deposition.
```

Page 82

1    _X_Federal R&S Requested (FRCP 30(e)(1)(B)) - Locked .PDF

2       Transcript - The witness should review the transcript and

3       make any necessary corrections on the errata pages included

4       below, notating the page and line number of the corrections.

5       The witness should then sign and date the errata and penalty

6       of perjury pages and return the completed pages to all

7       appearing counsel within the period of time determined at

8       the deposition or provided by the Federal Rules.

9    __ Federal R&S Not Requested - Reading & Signature was not

10      requested before the completion of the deposition.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 83

# EXHIBIT B

**JUSTIN CODY HARPER vs CITY OF REDLANDS, ET AL.**
**Officer Nicholas Koahou on 10/10/2024**

```
 1                UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4    JUSTIN CODY HARPER,              )
                                      )
 5              Plaintiff,            )
                                      )
 6              vs.                   ) Case No.
                                      ) 5:23-CV-00695-SSS-DTB
 7    CITY OF REDLANDS, REDLANDS POLICE )
      DEPARTMENT, POLICE OFFICER KOAHOU, )
 8    and DOES 1 through 10, inclusive, )
                                      )
 9              Defendants.          )
      _____)
10

11

12

13

14           REMOTE VIDEOCONFERENCE DEPOSITION OF

15               OFFICER NICHOLAS KOAHOU

16              THURSDAY, OCTOBER 10, 2024

17

18

19

20

21

22

23    Reported Stenographically By:

24    Jinna Grace Kim, CSR No. 14151

25    Job No.:  108815
```

**JUSTIN CODY HARPER vs CITY OF REDLANDS, ET AL.**
**Officer Nicholas Koahou on 10/10/2024**

Page 2

```
 1                  UNITED STATES DISTRICT COURT

 2                  CENTRAL DISTRICT OF CALIFORNIA

 3

 4   JUSTIN CODY HARPER,                  )
                                          )
 5                  Plaintiff,            )
                                          )
 6                  vs.                   ) Case No.
                                          ) 5:23-CV-00695-SSS-DTB
 7   CITY OF REDLANDS, REDLANDS POLICE    )
     DEPARTMENT, POLICE OFFICER KOAHOU,   )
 8   and DOES 1 through 10, inclusive,    )
                                          )
 9                  Defendants.           )
     _____ )

10

11

12

13

14          The remote videoconference deposition of OFFICER

15   NICHOLAS KOAHOU, taken on behalf of the Plaintiff, beginning at

16   2:07 p.m., and ending at 3:50 p.m. on Thursday, October 10, 2024,

17   before Jinna Grace Kim, Certified Stenographic Shorthand

18   Reporter No. 14151.

19

20

21

22

23

24

25
```

**JUSTIN CODY HARPER vs CITY OF REDLANDS, ET AL.**
**Officer Nicholas Koahou on 10/10/2024**

Page 3

```
 1     APPEARANCES OF COUNSEL:

 2

       For the Plaintiff:
 3
               LAW OFFICES OF DALE K. GALIPO
 4             BY:  DALE K. GALIPO, ESQ.
               BY:  RENEE V. MASONGSONG, ESQ.
 5             21800 Burbank Boulevard, Suite 310
               Woodland Hills, California 91367
 6             Tel:  818-347-3333
               Fax:  818-347-4118
 7             E-mail:  dalekgalipo@yahoo.com
               E-mail:  rvalentine@galipolaw.com
 8

 9             LAW OFFICE OF SHARON J. BRUNNER
               BY:  SHARON J. BRUNNER, ESQ.
10             14393 Park Avenue, Suite 101
               Victorville, California 92392
11             Tel:  760-243-9997
               Fax:  760-843-8155
12             E-mail:  sharonjbrunner@yahoo.com

13

14

15     For the Defendants:

16             JONES MAYER
               BY:  JAMES R. TOUCHSTONE, ESQ.
17             3777 North Harbor Boulevard
               Fullerton, California 92835
18             E-mail:  jrt@jones-mayer.com

19

20

21

22

23

24

25
```

**JUSTIN CODY HARPER vs CITY OF REDLANDS, ET AL.**
Officer Nicholas Koahou on 10/10/2024

Page 13

1       A.   No.

2       Q.   Did you have any specific information that he was

3    under the influence of drugs or alcohol?

4       A.   No.

5            MR. TOUCHSTONE:  Well, Dale, I'm going to interpose

6    an objection.  Vague as to time.

7            Are you referring throughout the entire incident, or

8    when he first saw him?

9            MR. GALIPO:  When he first saw him.

10           MR. TOUCHSTONE:  Okay.  Go ahead.  I'm sorry.

11           THE WITNESS:  When I first saw him I did not.

12   BY MR. GALIPO:

13       Q.   Did you ever have any information specifically that

14    he was under the influence of drugs or alcohol?

15       A.   I suspected that he was once I deployed the Taser.

16       Q.   Did you shoot him because you thought he was under

17    the influence?

18       A.   No.

19       Q.   What was the general information you had at the time

20    regarding the call in the beginning?

21       A.   The general information was they saw a vehicle had

22    driven through a license plate later in the city.

23       Q.   And did you see this vehicle at some point?

24       A.   Yes, I did.

25       Q.   And what street was the vehicle on when you saw

**JUSTIN CODY HARPER vs CITY OF REDLANDS, ET AL.**
**Officer Nicholas Koahou on 10/10/2024**

Page 40

1      A.    Correct.

2      Q.    And it continued to be in stop all the way up until

3  the time you reached in towards the gear shifter?

4      A.    Correct.

5      Q.    And then almost immediately after that, it merged or

6  started to move forward?

7      A.    Accelerated forward, yes.

8      Q.    Do you know how long it had been stopped for?

9           In other words, had it been stopped for like 30

10  seconds?

11           Do you have any estimate before it moved forward

12  again?

13      A.    My best estimate would be 15 to 20 seconds.

14      Q.    And when you reached in with your right hand, did

15  you grab Mr. Harper's arm or hand?

16      A.    I grabbed his hand.

17      Q.    And which hand of his did you grab?

18      A.    His right.

19      Q.    And was his right hand on the shifter at that

20  point?

21      A.    Yes.

22      Q.    And could you tell if the shifter moved after you

23  grabbed his hand?

24      A.    I just knew that the vehicle started to move

25  forward.

**JUSTIN CODY HARPER vs CITY OF REDLANDS, ET AL.**
**Officer Nicholas Koahou on 10/10/2024**

Page 54

```
 1                          CERTIFICATE

 2                              OF

 3              CERTIFIED STENOGRAPHIC SHORTHAND REPORTER

 4

 5              I, JINNA GRACE KIM, CSR No. 14151, a Certified

 6    Stenographic Shorthand Reporter of the State of California,

 7    do hereby certify:

 8              That the foregoing proceedings were taken before me

 9    at the time and place herein set forth;

10              That any witnesses in the foregoing proceedings,

11    prior to testifying, were placed under oath;

12              That a verbatim record of the proceedings was made

13    by me, using machine shorthand, which was thereafter

14    transcribed under my direction;

15              Further, that the foregoing is an accurate

16    transcription thereof.

17              I further certify that I am neither financially

18    interested in the action, nor a relative or employee of any

19    attorney of any of the parties.

20

21              IN WITNESS WHEREOF, I have subscribed my name, this

22    date:  October 10, 2024.

23                              _____

24                              Jinna Grace Kim, CSR No. 14151

25
```